GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Nathan Reese (SBN 283150)
nreese@grahamhollis.com
3555 Fifth Avenue Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff CARTER POOL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER POOL, in a representative capacity, and on behalf of all similarly situated and aggrieved current and former employees of Defendants in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>AMERIPARK, LLC, a Georgia Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 3:19-cv-01103-LAB-WVG<br><br>[*Assigned to Hon. Larry Alan Burns*]<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; (3) APPROVAL OF THE CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVE; (5) APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND (6) SETTING A FINAL APPROVAL HEARING**<br><br>Date:  March 22, 2021<br>Time: 11:15 a.m.<br>Courtroom: 14A<br><br>Complaint Filed: May 6, 2019<br>Removal Date: June 12, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

I, Graham S.P. Hollis, declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California. I am a shareholder of the law firm GrahamHollis, APC in San Diego, California. Associate Nathan Reese and myself are the primary attorneys from my firm handling this case. I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein. If called as a witness, I could and would competently testify to the information set forth below.

2. I submit this declaration in support of Plaintiff Carter Pool's Motion for Preliminary Approval of Class Action Settlement, which seeks an order: (1) preliminarily approving the proposed Settlement; (2) provisionally certifying the Settlement Class; (3) approving the form and content of the Class Notice and Notice Plan; (4) appointing Class Counsel and the Class Representative; (5) appointing the Settlement Administrator; and (6) scheduling a Final Approval Hearing.

3. A true and correct copy of the fully executed Stipulation of Class Action and PAGA Representative Action Settlement and Release ("Settlement" or "Settlement Agreement" or "SA") is attached hereto as **Exhibit 1**. A true and correct copy of the Notice of Class Action Settlement ("Class Notice") is attached as **Exhibit A** to the Settlement Agreement.

4. A copy of the Settlement Agreement was provided to the State of California Labor and Workforce Development Agency ("LWDA") at the same time Plaintiff's Motion for Preliminary Approval of Class Action Settlement was filed with the Court. A true and accurate copy of the confirmation of said submission is attached as **Exhibit 2**.

5. I am not aware of any class, representative, or other action in any other court in this or any other jurisdiction which asserts claims similar to those asserted in this action on behalf of a class or group of individuals who would also be members of the Class as defined in this action. I made a reasonable inquiry of other members of my law firm and they are not aware of any such similar actions.

///

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## CLASS COUNSEL'S CLASS ACTION EXPERIENCE

6.     I have been a member of the State Bar of California since 1985. I have personally tried many bench and jury trials to verdict in various courts in California and I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

7.     Over the past ten years, my firm has been appointed as class counsel and received adequate and fair settlements in over eighty class action lawsuits in the district and state courts of California with claims similar to those presented here. Additionally, my firm currently serves as plaintiff's counsel for approximately thirty wage and hour class and representative employment law cases. A list of the cases in which my firm has served as class counsel and/or currently serves as counsel for plaintiffs in wage and hour employment actions pending throughout California is attached hereto as **Exhibit 3**.

8.     I have also served as defense counsel in the following class action cases: *Garza, et al. v. SRH Investments LLC, et al.*, Superior Court for the County of Los Angeles; *Avila, et al. v. Gateway Ivey Ranch Associates, et al.,* Superior Court for the County of San Diego; *Cabrera, et al. v. Fieldstone Communities, Inc., et al.,* Superior Court for the County of San Diego; *Cheatwood, et al. v. Greystone Homes, Inc., et al.*, Superior Court for the County of San Bernardino; *Castro, et al. v. Kaufman & Broad of Southern California, Inc. et al.*, Superior Court for the County of San Diego; *Flores, et al. v. Eastlake Trails Co. LLC et al.,* Superior Court for the County of San Diego; *Pacheco, et al. v. WL Coral Gate Associates, et al.*, Superior Court for the County of San Diego; *Garcia, et al. v. Cambridge Homes, et al.,* Superior Court for the County of Riverside; *Harris, et al. v. LNC Properties, LTD, et al.,* Superior Court for the County of San Bernardino; *Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et al.,* Superior Court for the County of Kern; *Rodriguez, et al v. Epic Development Corporation, et al.,* Superior Court for the County of Kern; *Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,* Superior Court for the County of Los Angeles; *Zimmerman, et al. v. West Venture Development, Inc., et al.*, Superior Court for the County of San Bernardino; *Robles, et al. v. Rockfield*

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

*Development Corporation, et al.,* Superior Court for the County of San Bernardino; *Riley, et al. v. So Cal Housing Partners, LLC, et al.,* Superior Court for the County of San Bernardino; *Castillo, et al. v. LNC Properties LTD, et al*., Superior Court for the County of San Bernardino; *Reynoso, et al v. DOES 1-50,* inclusive, Superior Court for the County of San Diego; *Frais v. Forecast Group*, Superior Court for the County of Los Angeles; *Haney v. The Presley Group*, Superior Court for the County of Riverside; *Le Doux v. KB Homes*, Superior Court for the County of Los Angeles; *Long v. West Venture,* Superior Court for the County of Los Angeles; *Manning v. Presley Homes,* Superior Court for the County of Los Angeles; *McLellan v. Stratham Group,* Superior Court for the County of Los Angeles; *Winkler v. West Venture,* Superior Court for the County of Los Angeles.

9. Nathan Reese was admitted to the State Bar of California in 2012. He has represented employees in employment litigation matters, including wage and hour class action litigation. Mr. Reese, along with myself, has obtained settlements and been approved as class counsel in the following Class and PAGA Representative actions: *Milburn v. PetSmart, Inc., United States District Court Eastern District*, settled for $1,350,000 on behalf of approximately a total of 3,491 class members and aggrieved employees, and Judge Drozd approved fees of 33 1/3%; *Dadafshar v. KT Hotels, LLC et al.*, Superior Court County of San Diego, settled for $515,000 on behalf of approximately 892 class members and Judge Pollock awarded 33.33% in fees; *Potter v. Big Tex Trailer Manufacturing Inc. et al.*, United States District Court Central District, settled for $972,391.68 on behalf of 104 class members and Judge Gutierrez approved fees of 33.33%; *Taylor v. Cross Country*, Superior Court County of Los Angeles, settled for $582,000 on behalf of a settlement class of 589 and 1602 aggrieved employees and Judge Nelson approved fees of 33 1/3%; and *Ramirez v. Baker Hughes Oilfield Operations, LLC*, Superior Court County of Santa Barbara, settled for $2,750,000 on behalf of a settlement class of 165 employees, and Judge Anderle approved fees of 33 1/3%; *Cassels v. Select Comfort Retail Corporation*, Superior Court San Diego County, settled for $1,250,000 on behalf of 426 class members and 997 aggrieved employees, and Judge Wohlfeil awarded fees of 33 1/3%.

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

10.   My fellow shareholders, associates and I have considerable experience handling complex wage and hour class action cases with claims similar to those asserted in this action and have successfully represented tens of thousands of employees in state and federal court cases throughout California.

## CASE BACKGROUND AND PROCEDURAL HISTORY

11.   Plaintiff Carter Pool ("Plaintiff") seeks preliminary approval of a non-reversionary $1,750,000.00 class action and Private Attorneys General Act of 2004, California Labor Code § 2698, *et seq*. ("PAGA") representative action settlement entered into by Plaintiff on behalf of himself and other similarly situated and/or aggrieved parking valet employees who worked for Defendant AmeriPark, LLC ("Defendant") in California between May 6, 2015 through the date of preliminary approval (the "Class Period").

12.   Defendant is a Georgia based corporation which operates and manages parking facilities, including facilities in San Diego and throughout California. Defendant also provides parking logistics consulting, valet parking, ambassador and traffic management, shuttle, and trolley services to entertainment complexes, arenas, and retail centers. Defendant's California parking valet accounts include numerous shopping malls, amusement parks, hospitals, and office buildings, among other establishments.

13.   Plaintiff worked for Defendant as a parking valet from November of 2013 to January of 2019, earning minimum wage plus tips. Plaintiff worked at the Fashion Valley Mall in San Diego, California during the relevant time period. Plaintiff generally worked shifts that lasted between five to eight hours, but occasionally worked shifts that exceeded eight hours in a workday. Plaintiff resigned from his employment in January of 2019, at which time he alleged he was constructively wrongfully discharged.

14.   Plaintiff filed the initial Complaint in this action on May 6, 2019 in the Superior Court for the State of California, County of San Diego, Case No. 37-2019-00023222-CU-OE-CTL. Plaintiff filed a First Amended Complaint on May 15, 2019.

15.   On June 12, 2019, Defendant filed a Notice of Removal, thereby removing this case to the United States District Court, Southern District of California, Case No.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

5

19CV1103-BEN-WVG.

16.  Plaintiff filed a Motion to Remand the Litigation to State Court on July 12, 2019, which was later denied by this Court.

17.  The Parties agreed to attend an early mediation, prior to which time Plaintiff identified additional causes of action he sought to add to the operative complaint. Plaintiff informed Defendant of his intention to add causes of action to the operative complaint for failure to provide meal periods, failure to provide minimum wages, and failure to pay all overtime hours worked.

18.  The Parties then participated in a private mediation session with Hon. Carl J. West (Ret.), a highly respected mediator, on August 31, 2020. With the assistance of the mediator, the Parties were able to arrive at a deal in principle to resolve Plaintiff's all individual and representative claims alleged by Plaintiff, including those causes of action he sought to add to the operative complaint.

19.  Plaintiff filed a Second Amended Complaint on October 29, 2020. The Second Amended Complaint included causes of action failure to provide meal periods, failure to provide minimum wages, and failure to pay all overtime hours worked.

20.  The Class is comprised of all current and former non-exempt employees of Defendant who worked in the State of California and who performed parking valet duties during the Class Period.

## PLAINTIFF'S CLASS AND PAGA CLAIMS

### *Plaintiff's Claims for the Failure to Provide Meal and Rest Breaks*

21.  Plaintiff claims that Defendant's failure to provide compliant meal periods and rest periods to Class Members stems from Defendant's policy and practice of requiring parking valets to remain at or near their assigned job site and respond to customer needs throughout the entire workday. Plaintiff alleges that, as a result, parking valets were required to remain on duty at all times throughout their shifts, including during meal and rest periods.

22.  Plaintiff argues that Defendant does not have a procedure for relieving

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

6

employees of their duties so that they can take a compliant meal period or rest period. Instead, Plaintiff argues that Class Members are required to promptly greet customers and attend to their needs. Plaintiff further alleges that even when Class Members are permitted to leave their work area, such as to run to a mall food court to buy some food, they are required to have their mobile device turned on and promptly respond to any calls and texts from their coworkers and supervisors.

23.  Plaintiff further claims that many valet locations also only had one Parking Valet assigned at any given time throughout the workday. As such, there would be no other employees available to relieve Class Members when it was time to take a meal or rest break. Class Members who worked alone were also not permitted to close their valet stand in order to take an uninterrupted meal or rest period. As a result of these policies and practices, Plaintiff alleges that Class Members were never truly relieved of all duties during their breaks.

24.  Plaintiff further alleges that Defendant lacked a written meal break policy that complied with California law, and lacked any written policy permitting rest breaks. In addition, Defendant did not have a written policy that specifically providing for the payment of rest period premium wages.

***Plaintiff's Claims for the Failure to Pay Minimum, Regular, and Overtime Wages***

25.  Plaintiff's claims for the failure to pay minimum, regular, and overtime wages are predominantly based on the fact that Defendant's time clock system does not permit Class Members to clock in immediately at the beginning of a shift. Defendant permits employees to clock in using a mobile phone application on their personal cell phones or on the cell phones which are provided at the locations where Class Members work. In order to clock in for work, Class Members would be required to be within an authorized area at the valet stand to which they were assigned. As a result, Class Members were prevented from clocking in immediately upon arrival at the job location.

26.  Plaintiff's claim is also based on the fact that Class Members performed pre-shift duties prior to clocking in. For example, immediately upon arriving at work, Class

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Members would often find customer waiting for them and would be forced to serve these customers. Due to the aforementioned issues with the time clock, Plaintiff alleges that Class Members would often have to serve these customers before the Class Members had the ability to clock in.

27.   Plaintiff alleges that when Class Members worked the opening shift, they were required to set up the valet area prior to clocking in. This included moving parking cones which delineated the valet area, and retrieving items from other on-site locations, including cell phones, key tags, keys to the valet stand, and other items. Class Members would need to retrieve these items and walk back to their workstation prior to clocking in.

28.   Despite Class Members being suffered or permitted to work prior to clocking in and after clocking out, Plaintiff alleges that Defendant lacked a policy or practice of compensating Class Members for time spent performing pre-shift and post-shift duties.

29.   Plaintiff's unpaid wages claims are further based on the fact that Class Members clocked out for meal breaks even though they remained on duty. Plaintiff alleges that Defendant knowingly permitted employees to clock out for meal breaks and either continue working or remain on duty and ready to respond to customers' needs. Defendant's policies state that Class Members were required to clock out during meals breaks. As a result, Class Members performed a considerable amount of work off the clock during on duty meal breaks.

***Plaintiff's Claims that Defendant's Tip Pooling Practice Systematically Deprived Class Members of all Gratuities Owed***

30.   Defendant had a practice of having Plaintiff and Class Members pool and share their tips using a tip pool. Despite having such a practice, Plaintiff alleges that Defendant instituted no policies, guidelines, or procedures to ensure that tips were fully or fairly distributed to Class Members.

31.   Plaintiff alleges that Defendant permitted unscrupulous supervisors and managers to develop their own methods of distributing tips. For example, at the Fashion Valley Mall, where Plaintiff worked, there were multiple tip pools based on the multiple

8

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

valet stands at the mall. Plaintiff's alleges his supervisor would include himself in multiple tip pools simultaneously, as well as exaggerate his own hours, thereby increasing his portion of the daily tips. As a result, the manager collected tips which were disproportionate to the number of hours he worked.

### Plaintiff's Claims for the Failure to Indemnify for all Necessary Business Expenditures

32.   Plaintiff alleges that he and Class Members frequently used their personal cell phones throughout the work day to make phone calls, send and receive text messages, and otherwise communicate with other Class Members and supervisors. Class Members also clocked in and out using their personal cell phones, especially when the devices provided by Defendant to clock in and out did not work. As such, Plaintiff alleges that Defendant was required to reimburse Class Members for a reasonable percentage of their personal cell phone expenses, and did not do so, nor did Defendant have a written policy regarding reimbursement for these expenses.

### Plaintiff's Claims for the Failure to Provide Suitable Seating when Reasonably Permitted

33.   Plaintiff alleges that Many of the duties performed by Class Members reasonably permitted the use of a seat. For example, Class Members spend a significant amount of time waiting for customers to arrive, and many Class Members spend most of their time checking customers in and out rather than actually retrieving vehicles. Plaintiff alleges that, although the work performed by Plaintiff and Class Members reasonably permitted the use of a seat, Defendant failed to provide suitable seating.

### Plaintiff's Claims for the Failure to Provide Accurate Itemized Wage Statements, Failure to Maintain Accurate Records, and Failure to Timely Pay all Wages

34.   Plaintiff and Class Members were paid on a bi-weekly basis. Plaintiff alleges that Defendant failed in its obligation to provide Plaintiff and Class Members with accurate itemized wage statements because the wage statements did not state the correct total number of hours worked, the correct amounts of gross and net wages, all applicable rates

9

for the hours worked, and all meal and rest period premium wages owed.

35.   Plaintiff alleges that Defendant further failed to maintain accurate time records showing when Plaintiff and Class Members began and ended each shift and each meal period, as well as the total daily number of hours worked. Thus, Plaintiff alleges that Defendant failed to maintain accurate records in compliance with Labor Code section 1174.

36.   Plaintiff alleges that, as a result of Defendant's conduct during the Class Period, Plaintiff alleges that Defendant willfully failed to pay Plaintiff and Class Members all wages due and owing to them within the time required by Labor Code sections 201 and 202.

### *Plaintiff's Individual Claims for Retaliation and Wrongful Constructive Discharge*

37.   Plaintiff also alleged individual claims for retaliation and wrongful constructive discharge in violation of public policy pursuant to California Labor Code section 1102.5.

38.   In the fall of 2018, Plaintiff was assigned to work with a new manager. Plaintiff alleges that the new manager began participating in the tip pool with parking valets even though he did not spend the majority of his time doing the same work as a parking valet. Plaintiff further alleges that the new manager's title was changed from Manager to Valet Lead soon after he started working at the Fashion Valley Mall, even though his position did not otherwise change. As Valet Lead, this individual used his title as a rationale for his participation in the valet tip pool, and also began logging his hours simultaneously in multiple tip pools at the Fashion Valley Mall. Plaintiff asserts that the Valet Lead also exaggerated his hours so that it appeared he worked longer hours that he actually did in order to receive a larger portion of tips.

39.   Plaintiff states he made a complaint to Defendant's Retail Manager, who failed to take any action or investigate the matter any further. Plaintiff alleges that, ultimately, the Retail Manager became aggressive with him, and accused him of making false accusations. Plaintiff states he then took his complaint to Defendant's Human Resources Manager.

40.   Plaintiff alleges that, thereafter, the tone and tenor of Plaintiff's supervisors

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL

became hostile during subsequent interactions. He further alleges that his supervisors and managers became overly critical and double-checked all of Plaintiff's work, while also cutting his hours and days of work. Plaintiff claims his hours and locations of work would be changed without him being notified. Plaintiff states he ultimately ended his employment after deciding that such working conditions and the actions being levied against him for his complaint about the Valet Lead were insufferable.

## CLASS COUNSEL'S INVESTIGATION OF THE CLASS AND PAGA CLAIMS

41. The Settlement was reached only after the Parties conducted extensive investigation into Plaintiff's class and representative claims.

42. Prior to filing the initial Complaint in this action, my firm conducted a thorough investigation into the merits of Plaintiff's claims and the applicable law related thereto, and reviewed numerous documents and records provided by Plaintiff in support of his claims. My firm also requested Plaintiff's employment files from Defendant and spent significant time reviewing these records.

43. Throughout the course of this litigation, Defendant provided Plaintiff with a substantial amount of information and documents, including relevant company policies and class data, such as a sample of time and pay records for Class Members. Defendant also provided Plaintiff with contact information for a sample of the Class Members.

44. The exchange of information and documents was substantial and enabled the Parties to sufficiently assess the strengths and weaknesses of their respective positions during arm's-length negotiations at mediation. My firm conducted a thorough analysis and review of Defendant's employment policies and practices applicable during the Class Period, reviewed thousands of documents and records, including a significant sample of putative Class Members' time and payroll records, and conducted in-depth Class Member interviews prior to participating in private mediation.

45. Class Counsel has conducted a thorough investigation into the facts of this action, including an extensive review and analysis of the documents provided by Defendant, and approximately 35 interviews with Class Members who worked at

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

approximately 20 different locations. Class Counsel is knowledgeable about, and has conducted extensive research with respect to, the applicable law and potential defenses to the claims of the Class Members. Class Counsel has diligently pursued an investigation of the Class's claims against Defendant.

46.  Plaintiff propounded formal discovery regarding his individual, class, and representative claims, but the Parties ultimately agreed to temporarily stay all formal discovery and instead focus their efforts on the informal exchange of documents needed to conduct a productive mediation session.

47.  In preparation for mediation, Defendant agreed to provide copies of its relevant wage and hour policies, a sample of the contact information for 25% of the putative Class Members, and the corresponding time and payroll records for 25% of the putative Class Members. Plaintiff also requested records related to the pooling of tips.

48.  While preparing for mediation, Defendant's counsel indicated that there were instances where Defendant was unable to access time and payroll records which were under the control of an unaffiliate third party. Although Defendant was unable to access particular time and pay records, Plaintiff's counsel had enough information to determine the average number of shifts any particular employee worked during each pay period, and then extrapolated that out through the time period for which records were missing or unavailable, thus allowing Plaintiff's counsel to calculate a close approximation of the potential damage exposure to Defendant.

49.  Based on the information provided by Defendant, my firm prepared a comprehensive mediation brief that outlined that relevant factual and legal issues in this case, contained a detailed analysis of the time and payroll records, and presented a complete breakdown of the liability exposure for Defendant in Plaintiff succeeded on each of his claims at trial.

50.  The Parties then participated in a private mediation session with Hon. Carl J. West (Ret.) on August 31, 2020. During the mediation, the Parties engaged in good-faith, non-collusive, arm's-length negotiations, and exchanged additional information regarding

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

the realistic damage exposure to Defendant. The Parties discussed the relative strengths and weaknesses of Plaintiff's claims, the potential risks and delays associated with further litigation, the current state of the law as it related to Plaintiff's claims, and the potential difficulty Plaintiff may have in obtaining and maintaining class certification for each claim. Each Party was represented at the mediation by experienced counsel with significant experience in wage and hour class action litigation.

51.   With the assistance of the mediator, the Parties discussed the many difficult legal and factual issues of this case. During this process, both sides were required to make reasonable compromises in light of the facts, issues, and risks presented. In particular, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in further litigation. Class Counsel also considered the burdens of proof necessary to establish and maintain class certification, and then to also establish liability against Defendant and defeat all defenses raised by Defendant. All of these considerations indicated that the best interests of the Class Members would be served by a settlement of the action in the manner and upon the terms set forth in the Settlement. Thus, the Parties ultimately reach an agreement at the mediation, which the Parties and their counsel have concluded to be a fair, reasonable, and adequate resolution of this action.

52.   The mediator's participation was extremely helpful to manage the Parties' expectations and provide a useful, neutral analysis of the issues and risks to all Parties. At all times, the Parties' negotiations were hard-fought and conducted at arm's-length between attorneys with substantial wage and hour class action experience, and the Settlement Agreement is evidence of the Parties' substantial efforts to reach a mutually agreement compromise.

## CLASS COUNSEL'S EVALUATION OF THE CLASS AND PAGA CLAIMS FOR SETTLEMENT PURPOSES

53.   I believe the Settlement provides a real and substantial benefit to the 1,025 Class Members, considering the highly disputed nature of the claims. Our determination of a fair value of the settlement was based on a number of factors, including our investigation of

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

the applicable law as it applied to the facts discovered, the suitability of the case for class treatment, Plaintiff's claims and the associated damages, as well as Defendant's potential defenses thereto. After careful consideration of the strength of Plaintiff's claims and Defendant's potential defenses, as well as the expense, complexity, risk, and likely duration of continued litigation, I believe the Settlement is fair, adequate, and reasonable, and I strongly support approval of this Settlement.

54.   I believe the documents and information exchanged and analyzed by the Parties are sufficient to make an informed decision about a fair resolution of this case. The thorough investigation conducted by my firm allowed us to prepare a complete liability analysis and estimate the amount of potential exposure to Defendant if Plaintiff succeeded on all claims at trial, which we then measured against the relative strength of each claim in order to better identify an appropriate range of settlement figures. Our analysis was based on information represented in the records provided by Defendant prior to mediation, as well as facts and information gleaned from Class Member interviews. Based on this and other information exchanged with Defendant, we ascertained there were 1,025 total Class Members and a total of approximately 135,704 shifts during the Class Period.

55.   Using this information, Class Counsel calculated a total maximum recovery of damages payable to the Class of $8,618,283. Defendant, however, hotly contests the violation rates and argues the validity of any of Plaintiff's Class claims. Based on Defendant's potentially viable defenses to many of the claims, Class Counsel greatly reduces its estimates as discussed herein.

56.   The following methodology was used to calculate the amount of damages for Class Members:

  a.   <u>Meal Periods</u>

        135,704              (Number of Shifts)

  x   $12.17              (Average Hourly Rate of Pay)

  x   86%              (Percentage of Shifts Over 5 Hours)

  x   100%              (Estimated Violation Rate)

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

$1,420,305

b.   Rest Periods

135,704                   (Number of Shifts)

x   $12.17                (Average Hourly Rate of Pay)

x   97%                   (Percentage of Shifts Over 3.5 Hours)

x   97%                   (Estimated Violation Rate)

$1,692,199

c.   Unpaid Minimum Wage and Liquidate Damages

135,704                   (Number of Shifts)

x   $10.57                (Average Minimum Wage)

x   0.17                  (Average Estimated Time Off-The-Clock Per Shift)

x   2                     (Multiplier to Accommodate for Liquidated Damages)

x   100%                  (Estimated Violation Rate)

$487,693

d.   Unpaid Overtime

135,704                   (Number of Shifts)

x   $18.25                (Average Overtime Rate of Pay)

x   0.17                  (Average Estimated Time Off-The-Clock)

x   29%                   (Percentage of Shifts Over Eight Hours)

x   100%                  (Estimated Violation Rate)

$122,096

e.   Unreimbursed Cell Phone Expenses

135,704                   (Number of Shifts)

x   $1.00                 (Estimate of Cell Phone Expenses Per Shift)

x   100%                  (Estimated Violation Rate)

$135,704

f.   Wage Statement Violations

145                       (Avg. No. of Employees At Any Given Time Pre-Covid)

15

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

| x | 69 | (Number of Pay Periods) |
| x | $100 | (Penalty Amount Per Pay Period) |
| x | 100% | (Estimated Violation Rate) |
| | $1,000,500 | |

g.  Unpaid Tips

| | 135,704 | (Number of Shifts) |
| x | $11.08 | (Estimate of Unpaid Tips Per Shift) |
| x | 79% | (Estimated Violation Rate) |
| | $1,187,844 | |

g.  Waiting Time Penalties

| | 1,025 | (Total Number of Employees) |
| x | $12.17 | (Average Hourly Rate of Pay) |
| x | 6.87 | (Average Shift Length) |
| x | 30 | (Maximum Number of Penalties) |
| | $2,570,942 | |

**TOTAL DAMAGES FOR CLASS CLAIMS:**   $1,420,305
$1,692,199
$487,693
$122,096
$135,704
$1,000,500
$1,187,844
$2,570,942
**$8,618,283**

57.    The violation rates, estimates of the amount of work performed off-the-clock, and the amount of unpaid tips were each estimated based on interviews with Class Members. The violation rates were hotly disputed by Defendant who argued that the violation rates were much lower, if not altogether nonexistent, based on their investigation. The average hourly rate of pay was calculated using the payroll records obtained from Defendant. There was no disagreement regarding the average hourly rate of pay for the

16

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

Class Members.

58.   During the approximately two years that this litigation has been ongoing, the Parties have engaged in discussions regarding the factual and legal issues presented by the litigation, and Defendant's potential defenses thereto. Defendant vehemently denies any liability or wrongdoing of any kind associated with the alleged claims, and further denies that this action is appropriate for class treatment for any purpose other than this Settlement. Defendant maintains that Class Members had autonomy in the execution of their duties and that their hours worked varied greatly, and claims that such variations would present an obstacle to class certification. Defendant maintains that it complied with all meal and rest period obligations under California law, and that Plaintiff and Class Members were properly provided with the opportunity to take all meal and rest periods to which they were entitled at all times during the Class Period. Defendant maintains that there was always adequate employee coverage, and that there was always relief available when it was time for an employee to take a meal or rest period. Defendant maintains that Class Members were not required to monitor their phones during their meal and rest breaks, and that any Class Member who did acted voluntarily. Defendant maintains that it provided meal period premiums during instances when Class Member did not take meal periods. Defendant claims that its policies were all compliant, and that there were no written policies specifically requiring Class Members to stay on duty, to answer phone calls, or to stay close to their assigned areas at all times. Defendant contends that its timekeeping practices did not deprive Plaintiff or Class Members of any minimum or overtime wages, and that each Class Member was required to accurately record all of his or her own time worked, thereby posing an obstacle to class certification. Defendant vehemently denies that any putative Class Member was ever required to perform work while off the clock, and that Defendant strictly prohibits off-the-clock work. Defendant maintains that if any putative Class Member ever performed work while off the clock, he or she did not without authorization, that Defendant was unaware of it, and that if Defendant were aware it would have provided compensation. Defendant contends that it provided Class Members with a place to clock

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

17

in and out for work so that the Class Members did not have to use their own personal phones. Defendant further contends that Class Members did not need to use their cell phones to communicate as cell phones were not necessary for Class Members to perform their duties of employment. Defendant maintains that it otherwise complied at all times with the California Labor Code, the IWC Wage Orders, and the California Business and Professions Code, and that all written policies were fair and fully compliant with the relevant laws. Further, Defendant argues that Plaintiff's claims are inappropriate for class treatment, because individualized issues exist such that Plaintiff cannot support class-wide claims.

59.   Plaintiff maintains that each of his claims has merit and that class certification is appropriate, but recognizes that his claims are met with plausible defenses. Plaintiff acknowledges that he faces a significant battle in maintaining class certification, proving liability, and proving damages as to all claims. Plaintiff also understands, for example, that it is difficult to prove cases of off-the-clock work, because there are no records identifying the amount of time associated with the off-the-clock work, and the damages therefore had to be calculated based on interviews with Plaintiff and other Class Members. As another example, Plaintiff recognizes that while he contends that he and other Class Members were not provided duty-free, uninterrupted meal periods, many of the time records reflect that a thirty-minute meal period was taken. Moreover, Defendant paid a significant number of meal period premiums to Class Members, including Plaintiff, during the applicable period. As such, Defendant claims that, to extent any meal periods were not provided, it met its obligations to pay meal period premiums, thereby precluding the recovery of meal period premiums as recoverable damages.

60.   In addition, Plaintiff would have faced significant challenges in pursuit of his claims for unlawfully withheld tips. To start, there were no records available to confirm Plaintiff's claims that managers unlawfully included themselves in the tip pool. As such, the damages had to be calculated based on interviews with Plaintiff and other Class Members, which would have presented challenges to Plaintiff in presenting common proof

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

18

of the claims and damages. Further, a small number of the Class Member reported that they worked in positions that did not permit tips, which presenting a potential defense to class-wide treatment in that Defendant would claim that individualized inquiries predominate over common questions of fact. Finally, there appeared to be variation in how the tip pooling practice was implemented at various location, which would have provided a significant challenge to maintaining certification of class claims for unlawfully withheld tips.

61.  Plaintiff's maximum-possible damages exposure the Class assumed that class certification for all of the claims would be granted, assumed the class certification would be maintained through trial, assumed that Plaintiff would prevail on all claims at trial, and recover the full amount of the estimated damages. Accordingly, the estimated value of Plaintiff's claims was premised on an optimistic, "everything goes right" scenario for each claim, for a maximum class-wide damages exposure, of approximately $8,618,283. However, and for the reasons discussed herein, the likelihood of obtaining complete recovery of the estimated damages was far from certain, particularly in light of the relative strength of Defendant's defenses and the existence of potential variations of working conditions.

62.  With respect to the waiting time penalties claim, Defendant contends that their good-faith belief in the use of their timekeeping and payroll practices and their reliance on Class Members to keep accurate records of their hours worked precludes the imposition of any waiting time penalties since Plaintiff will not be able to prove that Defendant's alleged failure to pay all wages at the time of Plaintiff's and Class Members' separation of employment with Defendant was "willful."

63.  It should further be noted that Plaintiff's wage statement claims and waiting penalties are both derivative in nature. Therefore, if Plaintiff was not able to prevail on the substantive underlying claims, he would likewise not be able to recover the waiting time penalties as well. Excluding Plaintiff's derivative claims for wage statement violations and waiting time penalties, Plaintiff's "everything goes right" damages are estimated to be

19

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

$5,045,841.

64.   Based on my experience litigating almost exclusively wage and hour claims I believe for settlement purposes it would be appropriate to discount the value of the Class claims by 40% to represent the risk of being able to maintain class certification and to discount that amount by a further 40% due to the risk of prevailing at trial. This brings the estimated settlement value of the case to $1,816,502.

65.   Given the hotly contested nature of Plaintiff's claims and the inherent difficulties and uncertainties of proof at trial, the $1,750,000.00 settlement is a fair and reasonable compromise of Plaintiff's and the Class Members' claims based on the strengths and weaknesses of the claims, Defendant's formidable defenses, and the avoidance of further risk, time, and expense to pursue further litigation.

66.   In addition to the class action claims, Plaintiff also seeks recovery of civil penalties on behalf of the state of California pursuant to PAGA. The estimated maximum amount of civil penalties recoverable under PAGA totaled $16,359,925, which is derived from Defendant's alleged violations of Labor Code sections 201, 202, 204, 226, 226.7, 1194, 1198 (for the alleged failure to provide suitable seating), 2802, and 1102.5. In determining the potential civil penalties recoverable under Labor Code Sec. 204, 226(a), 226.7, 1194, 1198, and 2802, Plaintiff multiplied the number of employees at any given time, which was determined to be 145 employees, by the number of pay periods during the time for which civil penalties are recoverable pursuant to PAGA.

67.   Plaintiff calculated the penalties using the statutorily provided civil penalty for the initial violation for each pay period work prior to Plaintiff filing his letter with the LWDA and serving said letter on Defendant. For each pay period following service of Plaintiff's LWDA letter, Plaintiff assumed the civil penalty violation rate for a subsequent violation would apply. As such, Plaintiff determined the remaining civil penalties as follows:

a.   Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code sections 201 and 202 totaled approximately $41,800 and was calculated using the

20

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

$100 civil penalty, under Labor Code section 2699(f) for the first violation, and the number of former employees within the PAGA period.

b.  Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 204 totaled $1,771,401, using the civil penalties specified under Labor Code Sec 210, which are $100 per pay period for the initial violation and $200 per period for each subsequent violation.

c.  Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 226 totaled $7,911,908, using the civil penalties provided for under Labor Code Sec 226.7, which are $250 per pay period for the initial violation and $1,000 per period for each subsequent violation.

d.  Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 226.7 totaled $1,718,218, using the civil penalty specified under Labor Code Sec. 2699, subd. (f), which are $100 per pay period for the initial violation and $200 per period for each subsequent violation. Plaintiff then multiplied said amount by the estimated violation rate (97%).

e.  Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 1194 totaled $1,363,942, using the civil penalty specified under Labor Code Sec. 2699, subd. (f), which are $100 per pay period for the initial violation and $200 per period for each subsequent violation. Plaintiff then multiplied said amount by the estimated violation rate (77%).

f.  Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 1198 totaled $1,771,354, using the civil penalty specified under Labor Code Sec. 2699, subd. (f)\, which are $100 per pay period for the initial violation and $200 per period for each subsequent violation.

g.   Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 2802 totaled $1,771,354, using the civil penalty specified under Labor Code Sec. 2699, subd. (f), which are $100 per pay period for the initial violation and $200 per period for each subsequent violation.

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

h. Plaintiff's estimate of the applicable PAGA penalties for violation of Labor Code section 1102.5 totaled $10,000, which is the maximum civil penalty specified in Labor Code Sec. 1102.5.

68. As with the other claims referenced above, however, Plaintiff's estimate of civil penalties was based on violations rates vulnerable to being undercut and/or substantially devalued. Furthermore, as with the imposition of any penalties under PAGA, there was a very real risk that the Court may further reduce Plaintiff's estimated amount under Labor Code section 2699(e)(2), and it was very likely that, given the attenuated nature of some of the claims, the Court would, in its discretion, limit the award because it was unjust, arbitrary and oppressive, or confiscatory. Therefore, the settlement of the claim for penalties under PAGA is reasonable under the circumstances here because the Parties negotiated a good faith amount for PAGA penalties, which was not the result of self-interest at the expense of Class Members.

69. It must further be noted that Defendant has agreed to revise its written policies and practices to address Plaintiff's claims for suitable seating and the failure to pay rest period periods. [SA, at ¶ 5.3.] Given the fact that the change of Defendant's written policies furthers the purpose of PAGA in that it reduces the likelihood for further violations. As such, a reduction in the total amount of civil penalties is further supported.

70. Each Class Member is expected to recover an estimated $7.92 per shift [$1,075,041.67 (Net Settlement Sum) /135,704 (total number of shifts) = $7.92 per shift]. My firm has determined that Class Members worked an approximate average of 3.14 shifts per workweek. Although each Class Member's Individual Settlement Payment is determined by the number of shifts he or she worked, I will also provide the per-workweek value of Class Members' recovery in the event it will assist the Court in its evaluation of this Settlement. Class Members are due to receive an average of $24.87 per workweek, which is an excellent result for the Class, puts this settlement well-within the range of reasonableness, and further favors Court approval of the Settlement.

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## SETTLEMENT TERMS

71.   The term "Class Members" refers to all current and former non-exempt employees of Defendant who worked in the State of California and who performed parking valet duties during the Class Period. [SA, at ¶ 1.4.] The "Class Period" is the period beginning on May 6, 2015, through the date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement. [SA, at ¶ 1.5.]

72.   The "Maximum Settlement Amount" is the maximum amount of one million seven hundred fifty thousand dollars ($1,750,000.00) which Defendant will pay as a result of the Settlement. [SA, at ¶ 1.15.] The Maximum Settlement Amount excludes the employer's share of payroll taxes. [SA, at ¶ 1.15.]

73.   The "Net Settlement Sum" is the Maximum Settlement Amount less the Fee and Expense Award, PAGA Payment, Administration Costs, Service Award, and Labor Code Sec. 1102.5 Award. [SA, at ¶ 1.18.] This amount will be distributed to the Class Members who do not timely request exclusion from the Settlement. [SA, at ¶ 1.18.]

74.   The "Fee and Expense Award" is the award of fees and costs as the Court may authorize which is to be paid to Class Counsel for the services they have rendered and will continue to render to the Class in this action. [SA, at ¶ 1.10.] Class Counsel shall apply to the Court for attorney's fees in an amount up to one-third (1/3) of the Maximum Settlement Amount ($583,333.33), plus the actual costs and expenses incurred in an amount not to exceed $15,000.00. [SA, at ¶ 1.10.]

75.   The "PAGA Payment" is the sum of $87,500.00 which shall be allocated from the Maximum Settlement Amount to penalties under the PAGA. [SA, at ¶ 1.22.] Seventy-five percent (75%) of the PAGA Payment – i.e., $65,625.00 – will be paid to the California Labor and Workforce Development Agency ("LWDA"), and the remaining twenty-five percent (25%) – i.e., $21,875.00 – will be part of the Net Settlement Sum to be distributed to the Class. [SA, at ¶ 1.22.]

76.   The "Administration Costs" are the actual and direct costs reasonably charged by ILYM Group, Inc. (the "Settlement Administrator") for its services in administering the

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL

Settlement, which are currently projected by the Parties not to exceed $16,000.00. [SA, at ¶ 1.2.]

77.   The "Service Award" is the amount of be paid to Plaintiff in recognition of his effort in obtaining the benefits of the Settlement, and also in recognition for his willingness to provide a full and separate general release of any and all claims against Defendant. [SA, at ¶ 1.29.] The Service Payment shall not exceed $5,000.00. [SA, at ¶ 1.29.]

78.   The "Labor Code Sec. 1102.5 Award" is the amount of civil penalties paid to Plaintiff in recognition of his allegations against Defendant pursuant to Labor Code section 1102.5. [SA, at ¶ 1.14.] The Labor Code Sec. 1102.5 Award shall not exceed $5,000.00. [SA, at ¶ 1.14.] Plaintiff is the only employee who is alleged to have suffered a violation of Labor Code section 1102.5 based on his individual claims for retaliation and constructive discharge. Therefore, the civil penalties recoverable under Labor Code section 1102.5 pursuant to PAGA are only shared with Plaintiff, as opposed to the PAGA Payment which is split between the LWDA and all aggrieved employees. Thus, the Parties have agreed to allocate $5,000 of Maximum Settlement Amount to Plaintiff as the Labor Code Sec. 1102.5 Award, subject to Court approval.

79.   Class Members will not have to submit a claim form in order to participate in the Settlement. [SA, at ¶ 5.2(c)(i).] Each Class Member who does not timely submit a Request for Exclusion will be mailed a check representing his or her Individual Settlement Payment. [SA, at ¶ 5.2(c)(ii).]

80.   The Individual Settlement Payments will be allocated on a pro rata basis according to the number of shifts each Class Member worked during the Class Period. [SA, at ¶ 5.2(c)(ii).] In the event time records are missing or unavailable for a particular workweek worked by a Class Member during the Class Period, the Class Member will be presumed to have worked the average number of shifts worked by Class Members during the period in which records are available for that particular week. [SA, at ¶ 5.2(c)(ii).] Thus, participating Class Members shall be allocated a pro-rata share of the Net Settlement Sum based on the ratio of the number of each Class Member's shifts to the total number of shifts

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

for all Class Members, and multiplying this result by the Net Settlement Sum – i.e., Individual Settlement Payment = Net Settlement Amount x (Participating Class Member's Individual Number of Shifts / Total Number of Shifts for all Participating Class Members). [SA, at ¶ 5.2(c)(ii).]

81.   The Individual Settlement Payments shall be allocated 20% to wages, 40% to interest, and 40% to penalties. [SA, at ¶ 5.2(c)(v).] The portion allocated to wages shall be reported on an IRS Form W-2, and the Settlement Administrator shall coordinate with Defendant such that Defendant will pay the employer's portion of payroll taxes, including but not limited to FICA and FUTA, which is not part of the Maximum Settlement Amount. [SA, at ¶ 5.2(c)(v).] Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine or confirm the amount of the payroll tax payment required under this section. [SA, at ¶ 5.2(c)(v).] The portion allocated to interest and/or statutory penalties shall be reported on an IRS Form 1099. [SA, at ¶ 5.2(c)(v).]

82.   The release is carefully tailored to the claims at issue in this case. Upon the Effective Date, as defined by the Settlement, all Class Members who do not opt out of the Settlement will release and discharge the Released Parties from any and all claims, demands, rights, liabilities, causes of action, and factual or legal theories that were pled in the operative complaint, or which reasonably could have been alleged based on the facts and legal theories contained in the operative complaint, including all of the following claims for relief: (i) failure to provide rest periods; (ii) failure to provide meal periods; (iii) failure to pay minimum and regular wages; (iv) failure to pay all overtime wages; (v) failure to provide accurate wage statements; (vi) waiting time penalties; (vii) failure to indemnify employees for necessary expenditures incurred in the discharge of duties; (viii) failure to institute a lawful tip pooling policy; (ix) failure to provide suitable seating; (x) unfair business practices that could have been premised on the claims, causes of action, or legal theories of relief described above or any of the claims, causes of action, or legal theories of relief pleaded in the operative complaint; (xi) all claims under the PAGA which could

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

have been premised on the claims, causes of action, or legal theories described above or any of the claims, causes of action, or legal theories of relief pleaded in the operative complaint; (xii) any other claims or penalties under the wage and hour laws pleaded in the operative complaint; and (xiii) all damages, penalties, interest, and other amount recoverable under said claims, causes of action, or legal theories of relief. [SA, at ¶¶ 1.7, 6.1.]

83. Plaintiff, and only Plaintiff, additionally expressly waives any and all rights and benefits conferred by the provisions of section 1542 of the California Civil Code. [SA, at ¶ 5.2(e)(v).]

84. No unclaimed amounts will revert to Defendant. [SA, at ¶ 5.2(d).] If, after 180 calendar days of mailing, the checks cashed by Class Members total less than 100% of the Net Settlement Sum, the amount remaining will be redistributed among those Class Members who cashed the checks sent to them within the 180 days on a pro rata basis in proportion to their original Individual Settlement Payment, so long as the costs of redistribution are less than the amount left for redistribution. [SA, at ¶ 5.2(d).] If the cost of redistribution is more than the amount to be redistributed, or any unclaimed amounts remain 60 calendar days after the redistribution, the Settlement Administrator shall issue a check of the unpaid residue or unclaimed funds to the Legal Aid Association of California, a nonprofit organization which supports projects that will benefit interests similar to those of the Class Members. [SA, at ¶ 5.2(d)(ii).]

85. Within ten (10) calendar days after entry of the Preliminary Approval Order, Defendant shall provide a list of all Class Members to the Settlement Administrator, which is to include the Class Member's name, Social Security Number, last known address, telephone number, dates of employment, and the total number of shifts worked during the Class Period (the "Class List"). [SA, at ¶ 4.1.] Prior to the initial mailing of the Notice to Class Members ("Class Notice"), the Settlement Administrator will perform both an Accurint (or substantially similar) skip trace search as well as a search on the National Change of Address Database ("NCOA") to attempt to obtain the best possible address for

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

26

each Class Member. [SA, at ¶ 4.2.]

86.   Within fourteen (14) calendar days of receiving the Class List, the Settlement Administrator will mail the Class Notice via first class U.S. Mail to each Class Member. [SA, at ¶ 4.2.] If a Class Notice is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend the Class Notice to that forwarding address along with a brief letter stating that the recipient has until the original deadline set forth in the Class Notice, or ten (10) calendar days after the remailing of the Class Notice (whichever is later), to submit a Request for Exclusion, an Objection, or to dispute the amount of shifts identified. [SA, at ¶ 4.3.]

87.   The Class Notice will state the total number of shifts worked by the Class Member, based on the data provided to the Settlement Administrator. [SA, at ¶ 4.4.] The Class Notice will provide that any Class Member who wishes to exclude himself or herself from the Settlement must submit a Request for Exclusion postmarked by the Objection/Exclusion Deadline, which is forty-five (45) calendar days following the initial mailing of the Class Notice. [SA, at ¶ 4.4.] Any Class Member who properly requests exclusion from the Settlement will not receive any payment from the Settlement and will not be bound by its terms, nor have any right to object, appeal, or comment thereon. [SA, at ¶ 4.4.] If five percent (5%) or more of the Class Members submit a timely and valid Request for Exclusion, Defendant shall have the option of canceling the Settlement and all actions taken in its furtherance will be null and voided. [SA, at ¶ 4.7.]

88.   Any Class Member who disagrees with Defendant's records regarding the number of shifts credited to him or her and/or his or her estimated Individual Settlement Payment must provide documentation and/or an explanation to the Settlement Administrator demonstrating contrary information. [SA, at ¶ 4.5.] The Parties will meet and confer to determine whether an adjustment to the Class member's shifts and/or Individual Settlement Payment is warranted. [SA, at ¶ 4.5.]

89.   Defendant will fund the Settlement within fifteen business days after the Effective Date of the Settlement (the "Payment Obligation Date"). [SA, at ¶¶ 1.24, 4.8.]

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL**

The Settlement Administrator will mail all required payments no later than seven calendar days after the Payment Obligation Date. [SA, at ¶ 4.9.] Individual Settlement Payment checks not cashed within 180 calendar days of mailing will become void. [SA, at ¶ 4.9.]

90.   In addition to payment of the Maximum Settlement Amount, Defendant agrees to implement a California seating policy stating that it will provide one stool per valet stand. Defendant will also implement a written California policy that provides for the payment of a one-hour premium for missed rest periods. [SA, at ¶ 5.3.]

## CLASS NOTICE AND NOTICE PLAN

91.   The proposed Class Notice informs Class members in plain language about the terms of the Settlement and explains the payments to which they are entitled. The proposed notice plan, calling for first-class mailed notice to all Class Members, as well as in-depth skip tracing at the outset and further in-depth skip tracing on Class Notices returned without a forwarding address, is consistent with class notices approved by state and federal courts. Under the circumstances here, I believe the Class Notice and notice plan provide the best notice practicable and the method most likely to reach the greatest number of Class Members.

92.   The Class Notice in this case summarizes the lawsuit, including the contentions and denials of the Parties, the proceedings to date, and the terms and conditions of the Settlement. The Class Notice fully informs Class Members of the Settlement's effect on their rights, of their options as Class Members (i.e., to object, opt out, and/or do nothing), and of the consequences of exercising those options.

93.   The Class Notice also outlines the procedure and deadlines for opting out of the Settlement, for submitting objections to the Settlement, and for receiving a payment – stating clearly that a Class Member need not submit a claim form in order to receive his or her Individual Settlement Payment, thereby encouraging Class Member participation and increasing the likelihood of Class Members obtaining recovery.

94.   The Class Notice states the amount of the proposed Service Award to be paid to Plaintiff; states the amount of the Fee and Expense Award to be paid to Class Counsel;

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

states the amount of Administration Costs to be paid to the Settlement Administrator; states the amount of the PAGA Payment; states the amount of the Labor Code Section 1102.5 Award to be paid to Plaintiff; states the date, time, and place of the Final Approval hearing; and explains how Class Members can obtain additional information.

95.   Furthermore, the Class Notice makes it clear that the Settlement does not constitute an admission of liability by Defendant, that the Court has not ruled on the merits of the action, and that the final settlement approval decision has yet to be made.

96.   The Parties agree to hire ILYM Group, Inc., an experienced third-party administrator, to serve as the Settlement Administrator, subject to Court approval. Prior to selecting ILYM Group, Inc., the Parties obtained competitive bids from other third-party administrators, and determined ILYM Group, Inc. to be the best choice for this case. ILYM Group, Inc. has indicated its fees for the administration of the settlement shall not exceed $14,500.00.

## PROVISIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

97.   For the purpose of settlement only, Defendant does not dispute that provisional certification is appropriate.

### *The Proposed Settlement Class Satisfies Rule 23*

98.   The Class definition is precise, objective, and presently ascertainable, and makes abundantly clear who is a Class Member. In addition, Class Members can be identified easily by way of Defendant's records. According to information provided by Defendant, there are approximately 1,025 Class Members.

99.   Plaintiff and the putative Class Members suffered similar violations pursuant to the same policies and practices, and Defendant's liability can be determined on a class-wide basis using evidence common to the Class. Plaintiff's claims are based on the same facts and legal theories applicable to the rest of the Class Members. Plaintiff contends that according to the company-wide policies and practices instituted by Defendant, all putative Class Members were subject to Defendant's above-described labor and payroll practices, and each Class Member's injury is the result of his or her exposure to the same allegedly

29

unlawful wage and hour practices giving rise to Plaintiff's injuries. Plaintiff maintains that there are no defenses unique to Plaintiff that could not be equally asserted by all Class Members. Moreover, Class Counsel interviewed approximately 35 Class Members who worked as Parking Valets at approximately 20 different locations at different times during the Class Period who reported suffering the same kinds of violations as Plaintiff.

100. Plaintiff has demonstrated his dedication and commitment to the Class and has no known conflicts of interest. Likewise, Class Counsel has worked diligently on behalf of Plaintiff and all Class Members and has no conflicts of interest with any member of the Class. Further, Plaintiff's counsel is well situated to assume the responsibilities of Class Counsel in this case because my firm is experienced in employment and class action litigation similar to that at issue in the present case, and counsel is fully qualified to pursue the interests of the Class.

101. Plaintiff contends that several questions of law and fact are common to his claims and to those claims of the putative Class Members, which provides a justification for handling the dispute on a class and representative basis rather than on an individual basis for settlement purposes. For example, common questions of fact include, but are not limited to, whether Defendant required its Parking Valet employees to monitor their phones during meal and rest breaks; whether Defendant required its Parking Valet employees to remain near their assigned valet location even during meal and rest periods; and whether managers would unlawfully include themselves within the tip pool which rightfully should have been distributed to the Parking Valet employees. Common questions of law include, but are not limited to, whether Defendant's written policy that meal breaks must be taken in a location designated by the employee's manager is illegal because it does not allow for employees to leave the premises during the meal periods, and whether Defendant's rest break policy which did not state that Defendant will pay rest period premium wages for missed rest periods is illegal.

102. Class treatment is also the superior method for resolving all claims in this case, because a class action would (1) accomplish judicial economy by avoiding multiple suits,

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

and (2) protect the rights of persons who might not be able to present claims on an individual basis.

103. Here, Class Members' claims involve the same issues arising from the same factual bases. If Class Members' claims were considered on an individual basis, over one thousand cases would follow a similar trajectory, and each would come to a similar result. Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources. It is also likely that most Class Members would not pursue litigation on an individual basis due to the high costs of pursuing individual claims. Absent class treatment, similarly situated employees with small but nevertheless potentially meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort, and expense required to prosecute an individual action. The interests of the Class Members in individually controlling the litigation are minimal, especially given that the same policies and practices would be at issue. I believe that class treatment is therefore superior to other available methods for the fair and efficient adjudication of this case.

### The Settlement is Fair, Adequate, and Reasonable

104. The Settlement is the result of arm's-length negotiations conducted over the course of nearly two years, including each Party's discovery and investigation of the potential value and exposure in the case, as well as a full day ofwith Hon. Carl J. West, an experienced mediator who has extensive experience in employment matters such as this one. In light of the disagreements as to the merits of Plaintiff's claims, as well as the evaluation from the neutral third-party mediator, both Parties made significant concessions in finding the Settlement to be an adequate resolution. Given the hotly contested nature of Plaintiff's claims, Defendant's formidable defenses thereto, and the inherent difficulties and uncertainties of proof at trial, there is a likelihood that continued litigation would carry with it significant risks and expenses, and be very lengthy in duration. I believe the Settlement is a fair and reasonable compromise by both Parties which avoids these risks.

105. Absent the Settlement, this case would require a significant amount of motion

GrahamHollis APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

practice, including, but not limited to, motions to compel, a motion for class certification, motions to decertify the class, cross motions for summary judgment, motions in limine, and potential several others prior to the trial of this action. Therefore, further litigation could greatly delay resolution of this action and increase expenses. Prior to any judgment, the Parties would have to litigate the issue of class certification, which if granted, would require significant additional discovery, time, and expense prior to the Parties being prepared for trial.

106. Even though the Parties have both conducted significant discovery and investigation into this case, the formal discovery here is still in its early stages, and has been focused only on pre-certification issues. To date, the Parties have not concluded their pre-certification formal discovery, such as written discovery and depositions. As part of the preparation for trial, the Parties would incur significant additional expenses, potentially included the expense of retaining experts to testify at trial.

107. Even if Plaintiff were successful in proving the merits of the class action claims, Defendant would likely submit an appeal. Thus, the Parties will have to engage in expensive and protracted appellate practice. This Settlement avoids all of these risks, as well as the accompanying expenses associated therewith, and instead provides immediate and substantial monetary relief to Plaintiff and the putative Class Members. The Settlement commits Defendant to create a Settlement fund of $1,750,000.00 to compensate Class Members for their alleged damages, and to compensate Class Counsel and the Settlement Administrator for their fees and costs.

108. The Parties here hotly dispute whether the Settlement Class can be validly certified in the absence of the Settlement. Plaintiff anticipates the Parties will have to undergo significant additional litigation before the action is certified, and anticipates that Defendant will file at least one motion seeking to decertify the Class prior to the trial in this action.

109. Here, assuming preliminary approval is granted, the Net Settlement Amount, currently estimated to be approximately $1,075,041.67, will be distributed to the Class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

based on the number of shifts worked during the Class Period. If each of the 1,025 Class Members participates, the average recovery per class member will be approximately $1,048.82. These are substantial sums which adequately recognize Plaintiff's and Class Members' damages, and compensates them appropriately. Moreover, Class Members will be able to receive their payments soon after Final Approval is granted rather than having to wait through years of protracted and uncertain litigation.

110.     While the Settlement does represent a significant discount on Plaintiff's total estimate of $8,618,283 of exposure to Defendant, this reduction represents an extremely reasonable compromise considering Defendant's viable defenses and the substantial risks Plaintiff would face establishing class certification and liability on all claims. The Settlement commits Defendant to create a Settlement fund which will provide Class Members a financial recovery and extinguish the risks attendant to continued litigation, as well as any appeals which would likely be filed following the class certification decision or a judgment in Plaintiff's favor. Indeed, such efforts by Defendant would likely result in a delay of several years before this case could finally be resolved, whereas the Settlement provides Class Members with a significant and timely recovery from the $1,750,000.00 Settlement, making it well within the range of reasonableness.

111. Class Counsel recommends the Settlement and the Settlement was reached after the Parties spent significant time and resources investigating Plaintiff's claims, engaging in the informal exchange of documents and information, meeting and conferring regarding the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, and a full day of mediation before a mediator with a wealth of experience in employment class action matters. The Parties have therefore entered into this Settlement with a strong working knowledge of the relevant facts and law, as well as the strengths and weaknesses of their claims and defenses.

112. The amount allocated to PAGA payments is also reasonable. The settlement of PAGA civil penalties in the sum of $87,500, 75% of which ($65,625) will be paid directly to the LWDA is reasonable and appropriate under the circumstances. The $65,625

33

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

portion to be paid to the LWDA was not the result of self-interest at the expense of other Class Members.

## THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARD IS REASONABLE

113. Plaintiff assisted counsel with the investigation of the claims, assisted counsel with preparation of the complaints, provided relevant documents, and worked with Class Counsel throughout the case. Plaintiff also attended the full day of mediation between the Parties. Plaintiff's participation and input were crucial in the prosecution of this litigation. Plaintiff spent significant hours discussing with Class Counsel the facts related to his employment with Defendant. Plaintiff estimates that he spent approximately 70 hours working with Class Counsel in this litigation, including answering questions from counsel, looking for and providing documents, attending mediation, and reviewing the Settlement documents. In addition, Plaintiff retained counsel with extensive experience in prosecuting complex wage and hour class action cases and who has worked diligently to obtain this Settlement for the Class. This case could not have continued without Plaintiff's efforts and desire to obtain this positive result for the Class.

114. Plaintiff's participation was an essential element which allowed Class Counsel to reach this Settlement. I believe other Class Members would not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiff's contributions. Furthermore, under the terms of the Settlement, Plaintiff will execute a general release of his claims, which is an expansive release that is not required of the other Class Members who will only execute a limited release of their claims.

115. Therefore, I believe the requested Service Award of $5,000.00 is fair and reasonable.

116. In addition, Plaintiff is the only employee who is alleged to have suffered a violation of Labor Code section 1102.5, which provides for a civil penalty of an amount up to $10,000 upon a showing that an employer retaliated against an employee for

34

disclosing information that the employee had reasonable cause to believe that the employer violated a state or federal statute. As a civil penalty, this amount is recoverable through an action pursuant to PAGA. Because the civil penalty is only attributable to Plaintiff's claims—the complaint does not allege a violation of Labor Code section 1102.5 on behalf of any other employee beside Plaintiff—the Parties have agreed to allocate $5,000 of the Maximum Settlement Amount to Plaintiff in recognition of his claims under Labor Code section 1102.5. I believe the requested Labor Code Sec. 1102.5 Award of $5,000.00 is a fair and reasonable allocation of said penalties for claims that only Plaintiff has individually suffered.

## CLASS COUNSEL'S FEES AND COSTS ARE REASONABLE

117. Class Counsel seeks an award of one-third (1/3) of the Maximum Settlement Amount (or approximately $583,333.33) as payment for attorney's fees in connection with the prosecution of this action. [SA, at ¶ 1.10.] Class Counsel also seeks reimbursement of the actual costs and expenses incurred, in an amount not to exceed $15,000.00. [SA, at ¶ 1.10.]

118. My firm has committed significant financial and staffing resources to the representation of Plaintiff and Class Members, diverting resources from other cases. Attorneys and paralegals from my firm have spent significant amounts of time conducting interviews with Class Members, conducting legal research, drafting pleadings and motions, drafting written discovery requests, reviewing documents and information provided by Plaintiff and Defendant's counsel, preparing a comprehensive analysis of Defendant's potential damage exposure, and preparing for and attending the mediation. Plaintiff's fee request will be supported by a detailed explanation of the qualifications of each timekeeper, each timekeeper's hourly rate, and an explanation of the amount of time worked on the various tasks performed on behalf of Plaintiff and the Class. Similarly, the request for costs will be supported at the time of final approval with an explanation of the amount and nature of the costs incurred.

119. Class Counsel's work resulted in the Settlement, which provides significant

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

benefits to Class Members.

120. Given that case law supports a fee award as high as 50% on common settlement funds of less than $10 million [See, e.g., *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting that class counsel fee awards of 30-50% are more typical where the common fund is less than $10 million), Class Counsel's request for an attorney fee award of $583,333.33, representing one-third of the Maximum Settlement Amount, is both reasonable and fair in light of the amount of work performed and the amount of resources and labor employed in the prosecution of this action. Based on my experience and knowledge of the relevant legal market for wage and hour class actions, these amounts accurately reflect the marketplace for similar representation of plaintiffs in wage and hour cases on a contingency basis.

121. Plaintiff will provide details of Class Counsel's fee award request in the Motion for Final Approval and Award of Attorney's Fees and Costs, to be filed in advance of the Final Approval hearing. In making a fee request in a class action such as this, I always analyze the factors that a court must consider in awarding fees. I believe that such circumstances exist here to justify the requested attorney's fee award, including (a) the skilled work involved in achieving such an excellent result for the Class and bringing this hotly contested action to a conclusion, and (b) the associated risks in taking this matter on a contingency basis. In light of these considerations, I believe Class Counsel's requested fee of $583,333.33 is reasonable.

122. In conclusion, it is my opinion that this Settlement is fair, reasonable, and adequate, and in the best interest of the Class. The Settlement is an excellent result considering the formidable arguments Defendant advanced against liability, damages, and class certification. In light of these issues and the fact that the Settlement was the product of protracted, contentious, arm's-length negotiations before an experienced and neutral third-party mediator, I believe that the Settlement should be preliminarily approved.

///

///

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1      I declare under penalty of perjury under the laws of the State of California and the

2  United States that the foregoing is true and correct. Executed this 10th day of February,

3  2021 in San Diego, California.

4

5                                  By: _____

6                                        GRAHAM S.P. HOLLIS
                                      Attorney for Plaintiff

7                                        Carter Pool

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

37

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL**

# EXHIBIT 1

## STIPULATION OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND RELEASE

This Stipulation of Class Action and PAGA Representative Action Settlement and Release ("Stipulation" or "Settlement") is made and entered into by and between Plaintiff Carter Pool, ("Plaintiff") individually and on behalf of all others similarly situated, and Defendant AmeriPark LLC, ("Defendant") with regard to the action pending in the United States District Court, Southern District of California and captioned *Carter Pool v. AmeriPark, LLC et al.*, Case No. 19CV1103-BEN-WVG, subject to the terms and conditions herein and the approval of the Court.

1.    **DEFINITIONS**

1.1    "Action" means the civil action captioned *Carter Pool v. AmeriPark, LLC et al.*, Case No. 19CV1103-BEN-WVG, pending in the United States District Court, Southern District of California, Honorable Larry Alan Burns presiding.

1.2    "Administration Costs" means the actual and direct costs reasonably charged by the Settlement Administrator for its services in administering the Settlement, currently projected by the Parties not to exceed Sixteen Thousand Dollars ($16,000).

1.3    "Class Counsel" means Plaintiff's counsel, Graham S. P. Hollis, Vilmarie Cordero, and Nathan Reese of GrahamHollis A.P.C.

1.4    "Class Members" means all current and former non-exempt employees of Defendant who worked in the State of California and who performed parking valet duties during the Class Period.

1.5    "Class Period" is the period beginning on May 6, 2015 through of date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

1.6    "Class Release Date" means the latest effective date of the release provided by Class Members, which is the date of Preliminary Approval.

1.7    "Class Released Claims" means all causes of action and factual or legal theories that were alleged in the Operative Complaint or reasonably could have been alleged based on the facts and legal theories contained in the Operative Complaint, including all of the following claims for relief: (i) failure to provide rest periods; (ii) failure to provide meal periods; (iii) failure to pay minimum and regular wages; (iv) failure to pay all overtime wages; (v) failure to provide accurate wage statements; (vi) waiting time penalties; (vii) failure to indemnify employees for necessary expenditures incurred in the discharge of duties; (viii) failure to institute a lawful tip pooling policy; (ix) failure to provide suitable seating; (x) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the Operative Complaint; (xi) all claims under the California Labor Code Private Attorneys General Act of 2004 that could have been premised on the claims, causes of action or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the Operative Complaint; (xii) any other claims or penalties under the wage and hour laws pleaded in the

DocuSign Envelope ID: 62C76420-D08F-4581-B1D2-758538BEB837

Operative Complaint; and (xiii) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

     1.8     "Effective Date" means the date on which the Judgment becomes a Final Judgment.

     1.9     "Defendant's Counsel" means Marissa Alguire, Damien Delaney, and Corina Valderrama of Akerman LLP.

     1.10     "Fee and Expense Award" means such award of fees and costs as the Court may authorize to be paid to Class Counsel for the services they have rendered and will render to the Class in the Action. Class Counsel shall apply to the Court for fees in an amount up to one third (1/3) of the Maximum Settlement Amount ($583,333.33) in attorneys' fees plus the actual costs and expenses as supported by declaration. Class Counsel's request for actual costs incurred in the litigation will not exceed Fifteen Thousand dollars ($15,000).

     1.11     "Final Approval" means the final settlement approval order and judgment that will be entered by the Court.

     1.12     "Final Judgment" means the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment. The Parties intend that the Final Approval Order will encompass an order entering Judgment.

     1.13     "Individual Settlement Payment" or "Individual Settlement Allocation" means the portion of the Net Settlement Sum allocable to each participating Class Member.

     1.14     "Labor Code Sec. 1102.5 Award" means the amount of civil penalties paid to Plaintiff Carter Pool in recognition of his individual allegations against Defendant pursuant to California Labor Code Sec. 1102.5. The Labor Code Sec. 1102.5 Award shall not exceed Five Thousand Dollars ($5,000.00).

     1.15     "Maximum Settlement Amount" means the maximum amount of One Million Seven Hundred Fifty Thousand dollars ($1,750,000.00) that Defendant would pay as a result of this Stipulation of Settlement. The Maximum Settlement Amount includes: (1) the Individual Settlement Allocations; (2) the Fee and Expense Award; (3) the Administration Costs; (4) the PAGA Payment; (5) the Service Award; and (6) the Labor Code Sec. 1102.5 Award. The Maximum Settlement Amount excludes the employer's share of payroll taxes, which shall be paid separately by Defendant. All amounts to be paid by Defendant shall be paid to a qualified settlement fund ("Qualified Settlement Fund"), which shall be administered by the Settlement Administrator. All amounts to be paid to anyone pursuant to this Stipulation of Settlement shall be paid out of the Qualified Settlement Fund. The Maximum Settlement Amount shall not increase unless it is determined that the number of actual shifts in the Class Period increases above 134,346 by five percent (5%) or more, as described more fully in paragraph 5.1 below.

     1.16     "Mediator" means Hon. Carl West (Ret.).

     1.17     "Named Plaintiff" or "Class Representative" means Carter Pool.

1.18    "Net Settlement Sum" means the Maximum Settlement Amount less the Fee and Expense Award, the PAGA Payment, Administration Costs, the Service Award, and Labor Code Sec. 1102.5 Award, as approved and awarded by the Court.  This amount will be distributed to the Class Members who do not timely request exclusion from the Settlement.

1.19    "Notice" means the Court-approved form of Notice of Proposed Class Action Settlement, substantially in the same form as **Exhibit A,** attached hereto.

1.20    "Objection/Exclusion Deadline" means the date forty-five (45) calendar days following the date on which the Settlement Administrator first mails the Notice to the Class Members.

1.21    "Operative Complaint" means, collectively, Plaintiff's Complaint, First Amended Complaint, and Second Amended Complaint, which is attached as Exhibit B to this Settlement.

1.22    "PAGA Payment" means the sum of Eighty-Seven Thousand Five Hundred Dollars ($87,500.00), which shall be allocated from the Maximum Settlement Amount to penalties under the Labor Code §2698 *et seq.*, the Private Attorneys General Act ("PAGA"). Of the total PAGA Payment ($87,500.00), seventy five percent (75%) of this sum ($65,625.00) will be paid to the California Labor and Workforce Development Agency ("LWDA"), and the remaining twenty five percent (25%) or $21,875.00 will be added to the Net Settlement Sum to be distributed to the Class.

1.23    "Parties" means Plaintiff and the Class and Defendant, collectively.

1.24    "Payment Obligation Date" means the date which is fifteen (15) business days after Effective Date of the Settlement.

1.25    "Preliminary Approval" means an Order of the Court approving this Settlement, and the exhibits thereto, and setting a hearing for Final Approval of the Settlement, including approval of attorneys' fees and costs.

1.26    "Released Parties" means Defendant, and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

1.27    "Remainder" means the unclaimed funds of the Net Settlement Sum allocated to the Class if fewer than all Class Members cash the Individual Settlement Allocation checks sent to them.

1.28    "Request for Exclusion" means a letter or written request submitted by a Class Member to the Settlement Administrator and postmarked by the Objection/Exclusion Deadline that includes the Class Member's name and signature, the last four digits of his or her Social Security Number and the following statement or something similar to "I request to be excluded from the class action proceedings in the matter of *Carter Pool v. AmeriPark, LLC et.*, Case No. 19CV1103-BEN-WVG, pending in the United Stated District Court, Southern District of California."

1.29    "Service Award" means the sum paid to Plaintiff Carter Pool in recognition of his effort in obtaining the benefits of the Settlement and additionally, in recognition for his willingness to provide

a full and separate general release of any and all claims against Defendant. The Service Payment shall not exceed Five Thousand Dollars ($5,000.00).

1.30    "Settlement" means the terms and conditions set forth in this Stipulation of Class and PAGA Representative Action Settlement and Release.

1.31    "Settlement Administrator" means ILYM Group, Inc., subject to Court approval.

1.32    "Settlement Class" means all Class Members except those who submit a valid and timely request for exclusion.

2.    **GENERAL**

2.1    The following is the procedural history of this Action:

(a)    Plaintiff filed the Complaint on May 16, 2019 and a First Amended Complaint May 15, 2019 in the Superior Court for the County of San Diego, Case No. 37-2019-00023222-CU-OE-CTL, alleging class action and representative PAGA allegations against Defendant on behalf of similarly situated and/or aggrieved employees of Defendant who performed parking valet duties in California. Plaintiff's Complaint further alleged causes of action against Defendant on an individual basis for wrongful constructive discharge and retaliation.

(b)    On June 12, 2019, Defendant filed a Notice of Removal, thereby removing this Action to the United States District Court, Southern District of California, with case No. 19CV1103-BEN-WVG.

(c)    During the course of the litigation, Defendant provided Plaintiff a substantial amount of information and documents, including relevant company policies and class data, including a sample of timekeeping and corresponding payroll data for Plaintiff and the Class Members. Defendant also provided Plaintiff with a sample of the contact information for Class Members. The exchange of information and documents was comprehensive and enabled the parties to sufficiently assess the strength and weaknesses of their respective positions during arms-length negotiations at mediation.

(d)    While investigating the Action, Plaintiff identified additional areas where he sought to amend the operative complaint and bring additional causes of action against Defendant on a class basis. Class Counsel provided Defendant's Counsel a proposed Second Amended Complaint adding these additional causes action and the legal and factual bases supporting them prior to a mediation.

(e)    The Parties participated in a private mediation session with the Mediator on August 31, 2020. The Parties reached an agreement at the mediation, which the Parties and their counsel have concluded to be a fair, reasonable, and adequate resolution of this Action. A fully executed Memorandum of Agreement ("MOA") was signed by the Parties on September 30, 2020.

2.2    Plaintiff's First Amended Complaint alleges eight causes of action, including five class action causes of action for wages and statutory penalties as follows: failure to provide rest periods, failure to provide accurate itemized wage statements, failure to timely pay wages due upon separation

of employment, failure to indemnify all necessary work expenses, and violation of the Business and Professions Code § 17200, *et seq*. In addition, the First Amended Complaint alleged causes of action on an individual basis for wrongful constructive termination and retaliation. The First Amended Complaint further alleges representative claims under the Labor Code Private Attorney General Act (PAGA).

2.3     On October 29, 2020, Plaintiff filed a Second Amended Complaint, for purposes of the settlement, to add three additional causes of action for: (1) failure to provide meal periods, (2) failure to pay minimum and regular wages, and (3) failure to pay all overtime wages. These additional causes of action shall relate back to the date of the filing of Plaintiff's original Complaint commencing the Action. Should, for whatever reason, the settlement set forth herein not become final, the Second Amended Complaint shall be deemed stricken, null and void, with the previously-filed First Amended Complaint in the Action remaining the operative pleading; however, Plaintiff will have the right to seek permission from the Court to file an amended complaint, and Defendant will have the right to contest that request.

2.4     Defendant denies any liability and wrongdoing of any kind associated with the claims alleged in the Action, and further denies that the Action is appropriate for class and/or representative treatment for any purpose other than this Settlement.  Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff and/or the Class Members, or "aggrieved" employees," individually or collectively, all such liability being expressly denied. Defendant contends that it has complied at all times with the California Labor Code, the Wage Orders and the California Business and Professions Code.

2.5     Plaintiff believes that the Action is meritorious and that class certification is appropriate.

2.6     The Parties have engaged in substantial litigation and have thoroughly investigated Plaintiff's causes of action.

2.7     Class Counsel has conducted a thorough investigation into the facts of the Action, including pre-trial motions, an extensive review and analysis of Defendant's documents, and interviewed key witnesses including Class Members. Class Counsel is knowledgeable about and has done extensive research with respect to the applicable law and potential defenses to the claims of the Class Members. Class Counsel has diligently pursued an investigation of the Class Members' claims against Defendant. Based on the forgoing data and on its own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, the various defenses asserted by Defendant, and the numerous potential appellate issues.  Further, Plaintiff has carefully evaluated the terms of the Settlement, and, based upon that review, has determined that it is fair and reasonable.

2.8     Defendant and its counsel believe that the claims asserted in the Action are without merit. Thus, Defendant has denied, and continues to deny, specifically and generally, each and every claim asserted in the Action and any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Action. Defendant makes no concessions or admissions

of wrongdoing or liability of any kind whatsoever. Defendant maintains that for any purpose other than settlement, the Action is neither suitable nor appropriate for treatment as a class or representative action. Although Defendant has vigorously contested the allegations in the Action to date and denies that it committed any wrongful action or violation of law, Defendant believes that further litigation with respect to the Plaintiff's claims would be protracted, expensive, and contrary to its best interests. Substantial amounts of time, energy, and other resources have been, and, absent settlement, will continue to be devoted to Defendant's defense against Plaintiff's claims. In light of these realities, Defendant believes that settlement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures. Defendant thus agrees the Settlement is fair, reasonable and adequate.

2.9    The Parties stipulate and agree to the conditional certification of the Class for purposes of this Settlement only.  Should, for whatever reason, the Court not grant Final Approval, the Parties' stipulation to class certification as part of the Settlement shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.  Defendant expressly reserves its rights and declare that it intends to oppose class certification and any form of representative action vigorously should this Settlement not be granted Final Approval.

2.10    The Parties acknowledge that factual and legal issues have not yet been resolved and that if this litigation were to proceed, the Court would specifically need to resolve, among other issues, whether Plaintiff and the Class Members: (1) were denied meal periods required by California law without being paid a premium as required by California Labor Code § 226.7; (2) were denied rest periods required by California law without being paid a premium as required by California Labor Code § 226.7; (3) worked hours for which they were not properly compensated with appropriate minimum, hourly, and/or overtime wages as required by the California Labor Code and/or applicable Industrial Welfare Commission Wage Order(s); (4) were provided with inaccurate itemized wage statements in violation of California Labor Code § 226; (5) were timely paid final wages upon the termination of their employment from Defendant as required by California Labor Code §§ 201 and/or 202 and/or were owed waiting time penalties under California Labor Code § 203; (6) incurred reasonable and necessary business expenses for which they were not reimbursed as required by California Labor Code § 2802; (7) were deprived of all gratuities owed to them under Defendant's tip pooling practices; (8) were denied suitable seating; and/or (9) suffered any unfair business practices in violation of California Business & Professions Code § 17200 et seq., and/or (10) were entitled to penalties under the California Labor Code Private Attorneys General Act of 2004.

3.    **PRELIMINARY APPROVAL**

3.1    The Parties agree to fully cooperate with each other to accomplish the terms of this Stipulation of Settlement, including but not limited to, execution of such documents and to take such other actions as may reasonably be necessary to implement the terms of this Stipulation.

3.2    Class Counsel shall request a hearing before the Court to seek Preliminary Approval of the Settlement on a mutually available date as soon as reasonably practicable. Further, Plaintiff's counsel shall file Plaintiff's Motion for Preliminary Approval of Settlement within twenty-one (21) days of execution of this Settlement. In conjunction with such hearing, Class Counsel shall submit this

Stipulation of Settlement, together with the exhibits attached hereto, and any other documents necessary to implement the Settlement.

3.3     Plaintiff's Counsel shall provide a copy of the motion for preliminary approval to Defendant's Counsel for review before filing it with the Court. Defendant agrees not to oppose Plaintiff's motion for preliminary approval unless the motion is inconsistent with the terms set forth in this Settlement or requests any relief they believe is unreasonable.

4.     **NOTICE AND CLAIM PROCESS**

4.1     **Class Information**. Within ten (10) calendar days after entry of the order granting Preliminary Approval, Defendant shall provide to the Settlement Administrator a list of all Class Members, including their name, Social Security number, last-known address, telephone number, dates of employment, and the total number of shifts worked for each Class Member during the Class Period. In the event any Defendant's timekeeping data is unavailable and Defendant is unable to identify the number of shifts worked by Class Members for any workweeks during the Class Period, Defendant shall also identify for the Settlement Administrator any such instances, including the dates during which Defendant is unable to identify the shifts worked by Class Members.  At no time during the settlement process will any Class Member's address, telephone number or Social Security number be filed with the Court, except under seal as may be ordered by the Court.  The Settlement Administrator will ensure that the Class Notice and any other communications to Class Members will not include the Class Members' Social Security numbers, except for the last four digits.  Class Members may, however, be required to submit a Form W-4 or W-9 as required by the Settlement Administrator for tax reporting purposes.

4.2     **Notice by First Class U.S. Mail**. Prior to the mailing of the Notice to the Class Members, the Settlement Administrator will run one Accurint (or substantially similar) skip trace as well as perform one basic search on the National Change of Address Database to attempt to obtain the best possible address for the Class Members before it mails the notices to the Class Members. Within fourteen (14) calendar days after receiving the Class Member list from Defendant, the Settlement Administrator shall send the Notice via first class mail, to the Class Members after it has followed the procedure in this Paragraph 4.2.

4.3     **Undeliverable Notices**. If a Notice is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend the Notice to that forwarding address along with a brief letter stating that the recipient of the Notice has until the original deadline set forth on the Notice, or ten (10) calendar days after the re-mailing of the Notice (whichever is later), to submit a Request for Exclusion, objection to the settlement, or to dispute the amount of shifts identified.

4.4     **Objection/ Exclusion**. The Class Notice shall state the total number of shifts worked based on the data provided to the Settlement Administrator. The Notice shall provide that Class Members who wish to exclude themselves from the Settlement of Class Released Claims must submit a Request for Exclusion postmarked by the Objection/Exclusion Deadline. The Objection/Exclusion Deadline is forty-five (45) calendar days following the initial mailing of the Notice. Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Settlement

and will not be bound by the Stipulation of Settlement or have any right to object, appeal or comment thereon. Class Members who do not submit a valid and timely Request for Exclusion shall be bound by all terms of the Stipulation of Settlement and any judgment entered in the Actions once the Settlement is approved by the Court.

4.5 **Disputes Regarding Individual Settlement Allocations**. Class Members who disagree with Defendant's records regarding their number of shifts credited to him or her and/or estimated Individual Settlement Payment must provide documentation and/or an explanation showing contrary information directly to the Settlement Administrator by the Response Deadline. The dispute must: (1) contain the case number and number of the Action; (2) contain the Class Member's full name, address, telephone number, and last four digits of his or her Social Security number, (3) contain a clear statement explaining that the Class Member wishes to dispute the number of shifts credited to him or her and also stating the number of shifts that he or she contends is correct; and (4) attach documentation demonstrating that the Class Member was not credited with the correct number of shifts. The Settlement Administrator will in turn provide any such submissions by Class Members to the Parties. The Parties will meet and confer to determine whether adjustments to the Class Member's shifts and/or Individual Settlement Allocation are warranted. If the Parties are unable to reach an agreement as to a dispute, the Court will decide the outstanding issue. The Court's determination of the eligibility for and amount of any Individual Settlement Allocation will be binding upon the Class Member and the Parties. In the absence of circumstances indicating fraud, manipulation, negligence, or destruction, Defendant's records will be given a rebuttable presumption of accuracy.

4.6 **Declaration of Due Diligence**. At least thirty-five (35) calendar days prior to the final approval hearing, the Settlement Administrator will provide a declaration of due diligence and proof of mailing with regard to the mailing of the Notice to counsel for all Parties. Further, in order to permit Class Counsel to file its Motion to Approve Class Counsel's Fee and Expense Award prior to the Objection/Exclusion Deadline, the Settlement Administrator shall also provide a preliminary declaration of due diligence and proof of mailing with regard to the status of the mailing of the Notice to counsel for all Parties at least ten (10) calendar days prior to the Objection/Exclusion Deadline.

4.7 If five percent (5%) or more of the Class Members submit a timely and valid Request for Exclusion, Defendant shall have the option of canceling the Settlement and all actions taken in its furtherance will be null and void. Defendant must exercise this right within five (5) business days after the Settlement Administrator notifies the Parties of the number of valid and timely Request for Exclusion letters received, which the Settlement Administrator must do within seven (7) calendar days after the Objection/Exclusion Deadline. If Defendant exercises its option to cancel the settlement, Defendant will retain the entirety of the Maximum Settlement Amount, except for the administration costs incurred to that date. The Parties and their counsel agree not to take any action to encourage any Class Members to opt into or out of or to object to the settlement.

4.8 Defendant will provide the Settlement Administrator with sufficient funds to make all payments due to Plaintiff, Class Counsel, the LWDA, the Settlement Administrator, and the Class Members, plus any owed Payroll Taxes, no later than the Payment Obligation Date.

---

4.9     The Settlement Administrator will mail all required payments no later than seven (7) calendar days after the Payment Obligation Date. Individual Settlement Allocation checks not cashed within 180 calendar days of mailing will become void. If a Class Member's check is returned to the Settlement Administrator, with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend the check to that Class Member.

4.10     No person shall have any claim against Defendant, Defendant's Counsel, Plaintiff, the Class, Class Counsel or the Settlement Administrator based on mailings, distributions and payments made in accordance with this Stipulation of Settlement.

4.11     The following is a summary of the proposed timeline related to this Settlement:

| EVENT | DEADLINE |
|---|---|
| Preliminary Approval of the Settlement by the Court | TBD |
| Defendant to provide Settlement Administrator with list of Class Members, including their name, Social Security number, last-known address, telephone number, dates of employment, and the total number of shift worked, if available, for each Class Member during the Class Period. | 10 calendar days after entry of the order granting Preliminary Approval |
| Settlement Administrator to the parties of actual number of shifts in the Class Period. | 10 calendar days after receiving Class Member List |
| Settlement Administrator to mail Notice to Class Members | 14 calendar days after receiving Class Member List |
| Objections/Exclusion Deadline | 45 calendar days after mailing of Notice |
| Settlement Administrator to provide a preliminary declaration of due diligence and proof of mailing with regard to the mailing of the Notice to counsel for all Parties. | 10 calendar days prior to the Objection/Exclusion Deadline. |
| Settlement Administrator to notify Parties of the number of valid and timely request for exclusion letters received | 7 calendar days after Objections/Exclusion Deadline |
| Deadline for Defendant to exercise its option to cancel the settlement if 5% or more of the Class Members submit a timely and valid request for exclusion | 5 business days after Settlement Administrator notifies the Parties of the number of valid and timely requests for exclusion |

| Settlement Administrator to provide declaration of due diligence | 35 calendar days prior to Final Approval Hearing |
| --- | --- |
| Final Approval Hearing | TBD |
| Effective Date of the Settlement | Date the Court signs the Final Approval Order and Judgment, if no objections to the Settlement. |
| Payment Obligation Date | 15 business days after Effective Date of the Settlement |
| Settlement Administrator to mail Individual Settlement Payments | 7 business days after the Defendant makes all the necessary payments into the Qualified Settlement Fund |
| Uncashed Checks Become Void | 180 calendar days after mailing of the Individual Settlement Payment Checks and the funds are redistributed to Class Members whose checks were not returned |
| Redistribution of Unclaimed Funds | Within 30 calendar days after the 180-day check cashing deadline |

## 5.    SETTLEMENT COMPONENTS

5.1     This Settlement is based on the number of shifts in the Class Period, which is currently estimated to be 134,346. Within ten (10) days after receipt of the Class Member data from Defendant, the Settlement Administrator shall provide the Parties the total number of shifts in the Class Period. In determining the number of shifts in the Class Period, the Settlement Administrator shall use the method described in paragraph 5.2(c)(ii) below. If the number of shifts in the Class Period increases above 134,346 by 5% or more (i.e. exceeds 141,188 shifts): (i) the Maximum Settlement Amount shall be increased pro-rata by the amount of the increase in shifts over 134,346, or (ii) Plaintiff shall have the option to terminate the Settlement.

5.2     The Settlement shall have six components: (1) the Individual Settlement Allocations; (2) the Fee and Expense Award; (3) the Administration Costs; (4) the PAGA Payment; (5) the Service Award; and (6) the Labor Code Sec. 1102.5 Award.  All of these components are included in the Maximum Settlement Amount.

(a)     **Payroll Taxes:** The Maximum Settlement Sum does not include the Payroll Taxes, which shall be paid by Defendant separate and apart from the Maximum Settlement Amount. The Payroll Taxes will be computed by the Settlement Administrator based on the amounts paid to the participating Class Members. The Settlement Administrator shall be responsible for making all necessary payments and government filings in connection with such payments.

(b)     **Circular 230 Disclaimer**: Each Party (for purposes of this section, the "acknowledging party" and each Party to this Stipulation of Settlement other than the acknowledging party, an "other party", acknowledges and agrees that (i) no provision of this Stipulation of Settlement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of the United States Treasure Department circular 230 (31 C.F.R. part 10, as amended); (ii) the acknowledging party (a) has relied exclusively upon his, her, or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Stipulation of Settlement, (b) has not entered into this Stipulation of Settlement based upon the recommendation of any other party or any attorney to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging part, and (iii) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or structure of any transaction, including any transaction contemplated by this Agreement.

(c)     **Individual Settlement Payments:** Administrator shall have the authority and obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in this Stipulation of Settlement and orders of the Court.  The Parties agree that the formula for the Individual Settlement Payments to Class Members provided herein is reasonable and that the payments provided herein are designed to provide a fair settlement to such persons, in light of the uncertainties of the damages and penalties alleged to be owed to the Class and the calculation of such amounts.

(i)     The parties agree that Class Members will not have to submit a claim form in order to participate in the Settlement.  Each Class Member who does not timely submit a Request for Exclusion will be mailed a check representing his or her Individual Settlement Payment for Class Released Claims.

(ii)     **Distribution Formula for Settlement Class**. The Parties agree that one hundred percent (100%) of the Net Settlement Sum will be allocated to Settlement Class. The Individual Settlement Payments be allocated on a pro rata basis according to the number of shifts each Class Members worked during the Class Period. In the event time records are missing or unavailable for a particular workweek worked by a Class Member during the Class Period, the Class Member will be presumed, for the workweek during which he or she worked and the records are missing or unavailable, to have worked the average number of shifts worked by Class Members during the period in which records are available. Thus, participating Class Members shall be allocated a pro-rata share of the Net Settlement Sum based on the ratio of the number of each Class Member's shifts to the total number of shifts for all Class Members and multiplying this result by the Net Settlement Sum: **Individual Settlement Payment = Net Settlement Amount x (Participating Class Member's Individual Number of Shifts/Total Number of Shifts For All Participating Class Members**).

(iii)     Each Class Member mailed an Individual Settlement Payment will have 180 calendar days from the date of the mailing of the Settlement Payment check to cash the check. Failure to cash the check within 180 calendar days will result in the Class Member foregoing all eligibility to receive any payment from the Settlement, but the Settlement Class Member shall remain

bound by the Settlement and its Class Released Claims. The checks will state they are void if not cashed within 180 calendar days of mailing.

(iv)     The right of any Class Member to receive any settlement payment shall be conditioned upon his or her cashing the settlement check by the end of the 180th day after the Settlement Administrator mails any settlement check to the Class Member. Checks sent to Class Members and not cashed shall be null and void after 180 calendar days of mailing and the recipient Class Members shall thereafter have no right of any kind to receive payment. No Class Member or his or her heirs or estate shall acquire any interest in any settlement check that the Class Member does not cash by the end of the 180th day after the Settlement Administrator mails it.

(v)     **Allocation of The Individual Settlement Payments.** The Parties recognize that the Individual Settlement Payments to be paid to Class Members reflect settlement of a dispute over claimed wages, interest, and penalties. The Individual Settlement Payments to the Settlement Class shall be allocated 20% to wages, 40% to interest and 40% to penalties. The portion allocated to wages shall be reported on an IRS Form W-2, and the Settlement Administrator shall coordinate with Defendant, such that Defendant will pay the employer's portion of payroll taxes, including but not limited to FICA and FUTA, which is not part of the Maximum Settlement Amount. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine or confirm the amount of the payroll tax payment required under this Section. The portion allocated to interest and/or statutory penalties shall be reported on an IRS Form 1099.

(vi)     It shall be the responsibility of the Settlement Administrator to timely and properly withhold from Individual Settlement Payments payable to Class Members all applicable payroll and employment taxes, including all federal, state, and local income taxes, and to prepare and deliver the necessary tax documentation and, thereafter, to cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.

(vii)     Each Class Member's share of all applicable payroll and employment taxes withheld and deposited with the applicable governmental authorities in accordance with this Stipulation of Settlement shall be a part of, and paid out of, the Individual Settlement Payment to each Class Member. Each Class Member will be responsible for paying all applicable state, local, and federal income taxes on all amounts the Class Member receives pursuant to this Stipulation of Settlement.

(viii)     **No Effect on Employee Benefits**: Individual Settlement Payments provided for in this Stipulation of Settlement are the sole payments to be made to the Class Members, and the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

(d)     **Allocation of the Remainder of The Net Settlement Sum.** This is a non-reversionary "all-in" settlement. No unclaimed amounts will revert to Defendant. If after 180 calendar days of mailing, the checks cashed by Class Members total less than 100% of the Net Settlement Sum, the amount remaining will be redistributed among those Class Members who cashed the checks sent to them within the 180 days (the "Redistribution"), on a pro-rata basis in proportion to their original

Individual Settlement Payment, as long as the costs of Redistribution are less than the amount left for Redistribution.

(i)    If the costs of Redistribution are less than the amount left for re-distribution, the Redistribution will take place within 30 calendar days after the 180-day check cashing deadline.  The Settlement Administrator shall be paid the costs of Redistribution from the amount left for Redistribution.  The checks sent as part of the Redistribution must be cashed within 60 calendar days of mailing.

(ii)    If the costs of Redistribution are more than the amount to be redistributed, or any unclaimed amounts remain 60 calendar days after the Redistribution, the Settlement Administrator shall issue a check of the unpaid residue or unclaimed or abandoned Class Members' funds to the *cy pres* beneficiary selected by the Parties:  The Legal Aid Association of California, a nonprofit organization that support projects that will benefit of Class Members. Class Members who do not timely cash their Individual Settlement Payments and whose checks are cancelled shall nevertheless be bound by all of the terms of the Settlement, including without limitation, including the applicable releases set forth herein.

(e)    **1.28    Service Award, Labor Code Sec. 1102.5 Award, and General Release by Named Plaintiff:** Defendant agrees not to challenge Class Counsel's request for the Service Award and Labor Code Sec. 1102.5 Award to the Plaintiff.  The Service Award and Labor Code Sec. 1102.5 Award will be paid in addition to Plaintiff's Individual Settlement Payment.

(i)    The Service Award will, subject to Court approval, be in the amount of Five Thousand Dollars ($5,000). Should the Service Payment approved by the Court be less than the amount sought, the difference shall revert to the Net Settlement Sum.

(ii)    The Labor Code Sec. 1102.5 Award will, subject to Court approval, be in the amount of Five Thousand Dollars ($5,000). Should the Labor Code Sec. 1102.5 Award approved by the Court be less than the amount sought, the difference shall revert to the Net Settlement Sum.

(iii)    The Service Award is for the Class Representative services and assistance to the Class throughout the over a year of litigation, and additionally, in recognition for his willingness to provide a full and separate general release of any and all claims against Defendant regardless of whether such claims are known and unknown, suspected or unsuspected. Notwithstanding this release, the Parties agree that Plaintiff shall separately execute an individual settlement agreement related to his individual claims. Plaintiff's release, as described herein, shall neither conflict with nor bar Plaintiff from obtaining settlement for his individual claims for (1) wrongful constructive termination and (2) unlawful retaliation, as described in Plaintiff's Second Amended Complaint, attached as Exhibit B. Nothing in this Paragraph shall be construed as a waiver or limitation of Defendant's affirmative defenses.

(iv)    Except as to Named Plaintiff's individual claims for (1) wrongful constructive termination and (2) unlawful retaliation, which are subject to a separate Individual Settlement Agreement, Named Plaintiff hereby releases, on behalf of himself and each of his family members, heirs, representatives, attorneys, and assigns, all federal and state statutory claims, and federal and state common law claims. Named Plaintiff expressly waives the protections of California

Civil Code Section 1542. Named Plaintiff understands and agrees that claims or facts in addition to or different from those which are now known or believed by him to exist may hereafter be discovered.  It is his intention to settle fully and release all of the claims he now has against the Released Parties, whether known or unknown, suspected or unsuspected. The Service Payment shall be paid to Named Plaintiff specifically in exchange for the general release of the Released Parties from all claims, including those specified in this paragraph, but excluding those claims for (1) wrongful constructive termination and (2) unlawful retaliation, which are subject to a separate Individual Settlement Agreement.

       (v)    Named Plaintiff acknowledges he is expressly waiving any and all rights and benefits conferred by the provisions of Section 1542 of the California Civil Code, which provides:

       **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

       (vi)    Named Plaintiff promises never to sue nor participate in any lawsuit against the Released Parties in any forum or for any reason related to the laws or theories covered by the release set forth herein. Named Plaintiff expressly waives any rights or potential rights of recovery that he may have in a potential class, collective, or representative settlement in any actions related to the claims released herein.

       (vii)    The Labor Code Sec. 1102.5 Award is made to Named Plaintiff in recognition of the civil penalties recoverable under the PAGA pursuant to California Labor Code Sec. 1102.5, which provides for civil penalties. The Parties have allocated five thousand dollars ($5,000.00) to cover these civil penalties, and, for settlement purposes only, agree that this allocation is fair and reasonable and aligned with the stated purpose of the PAGA.

       (viii)    Because the Service Award represents payment to the Class Representative for services to the Class Members, and not wages, taxes will not be withheld from the Named Plaintiff Service Award. Because the Labor Code Sec. 1102.5 Award represents the payment of civil penalties, and not wages, taxes will not be withheld from the Labor Code Sec. 1102.5 Award. No party has made any representation to Named Plaintiff as to the taxability of the Service Award or Labor Code Sec. 1102.5 Award. The Settlement Administrator will report the Service Award and Labor Code Sec. 1102.5 Award on a Form 1099, which it will provide to the Named Plaintiff and to the pertinent taxing authorities as required by law.

       (ix)    The Named Plaintiff assumes full responsibility for paying all taxes and penalties, if any, federal and state, due as a result of the Service Award and Labor Code Sec. 1102.5 Award.

---

(f)    **Class Counsel's Fees and Expense Award:** Defendant agrees not to challenge Class Counsel's request for its Fee and Expense Award up to the maximum amount of $ 583,333.33, plus an award of reasonable litigation expenses actually and necessarily incurred in the Action.  Should the Fee and Expense Award approved by the Court be less than the amount sought, the difference shall be added to the Net Settlement Sum. Payment of the Fee and Expense Award to Class Counsel shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Actions, and shall relieve Defendant and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of Plaintiffs and/or the Class.

5.3    In addition to payment of the Maximum Settlement Amount, Defendant agrees to implement a California seating policy stating that it will provide one stool per valet stand. Defendant will also implement a written California policy that provides for the payment of a one-hour premium for missed rest periods. Defendant shall provide Class Counsel a copy of these written policy changes.

6.    **RELEASE BY THE CLASS**

6.1    Upon the Effective Date, all Settlement Class Members who do not opt out of the Settlement will release and discharge Released Parties from any and all claims, demands, rights, liabilities, and causes of action that were pled in the Operative Complaint, or which could have been pled in the Operative Complaint based on the factual allegations therein, with respect to the Class Released Claims defined above. The *res judicata* effect of the Judgment will be the same as that of the Class Released Claims.

7.    **VOIDING THE AGREEMENT**

7.1    In the event of any of the following: (i) the Court does not approve the scope of the Class Released Claims; (ii) the Court finds the Maximum Settlement Sum is insufficient to warrant approval; or (iii) five percent (5%) or more of the Class Members submit a timely and valid Request for Exclusion, Defendant may elect to reject this Settlement and the Settlement shall be null and void. In such case, the Class Members and Defendant shall be returned to their respective statuses as of the date immediately prior to the execution of this Settlement.  In the event an appeal is filed from the Final Approval Order and Judgment, or any other appellate review is sought prior to the Payment Obligation and Class Release Date, administration of the Settlement, including disbursement of any payments of any settlement amounts, shall be stayed pending final resolution of the appeal or other appellate review.

8.    **PARTIES' AUTHORITY**

8.1    The signatories hereto represent that they are fully authorized to enter into this Settlement and bind the Parties to the terms and conditions hereof.

9.    **MUTUAL FULL COOPERATION**

9.1    The Parties and their counsel agree to fully cooperate with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and to take such

other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement and the terms set forth herein. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Settlement, the Parties shall seek the assistance of the Court or the Mediator to resolve such disagreement.

10.     **NO ADMISSION**

10.1     Nothing contained herein, nor the consummation of this Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties. Each of the Parties hereto has entered into this Settlement with the intention of avoiding further disputes and litigation with the attendant risk, inconvenience and expenses. This Settlement is a settlement document and shall, pursuant to California Evidence Code section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, be inadmissible as evidence in any proceeding, except an action or proceeding to approve the settlement, and/or interpret or enforce this Settlement.

11.     **CONFIDENTIALITY/PUBLICITY**

11.1     Plaintiff and Plaintiff's Counsel agree not to disclose or publicize the settlement in a matter that would identify Defendant, including the fact of the settlement, its terms or contents, and the negotiations underlying the settlement, in any manner or form, directly or indirectly, that to any person or entity, except potential class members and as shall be contractually required to effectuate the terms of the settlement. For the avoidance of doubt, this section means Plaintiff and Plaintiff's Counsel agree not to issue press releases, communicate with, or respond to any media or publication entities, publish information in manner or form, whether printed or electronic, on any medium or otherwise communicate, whether by print, video, recording or any other medium, with any person or entity concerning the settlement, including the fact of the settlement, its terms or contents and the negotiations underlying the settlement, except as shall be contractually required to effectuate the terms of the settlement. However, for the limited purpose of allowing Plaintiff's Counsel to prove adequacy as class counsel or submit fee requests in other actions, Plaintiff's Counsel may disclose the name of the Parties in this action, the venue/case number of this action, and the amount of attorney's fee granted (but not any other settlement details) for such purposes.

12.     **OTHER CLAIMS**

12.1     Plaintiff and Plaintiff's Counsel represent that they are not currently aware of any: (a) unalleged claims in addition to, or different from, those which are finally and forever settled and released against the Released Parties by this settlement; and (b) unalleged facts or legal theories upon which any claims or causes of action could be brought against Defendant, except such facts and theories specifically alleged in the Operative Complaint. Plaintiff and Plaintiff's Counsel further represent that, other than the instant Action, they have no current intention of asserting any other claims against Defendant in any judicial or administrative forum. Plaintiff and Plaintiff's Counsel further represent that they do not currently know of or represent any persons who have expressed any interest

DocuSign Envelope ID: 62C76420-D88F-4531-B102-7585388EB837

in pursuing litigation or seeking any recovery against Defendant. The Parties acknowledge, understand, and agree that the representations described in this paragraph are essential to the Agreement and that this Agreement would not have been entered into were it not for this representation.

13. **CONSTRUCTION**

13.1    The Parties hereto agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms' length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any of the Parties by reason of the extent to which any Party or his or its counsel participated in the drafting of this Settlement.

14. **JURISDICTION OF THE COURT**

14.1    Except for those matters to be resolved by the Mediator or the Settlement Administrator as expressly stated, any dispute regarding the interpretation or validity or otherwise arising out of this Settlement, or relating to the Actions or the Class Released Claims, shall be subject to the exclusive jurisdiction of the Court, and the Plaintiff, Class Members and Defendant agree to submit to the personal and exclusive jurisdiction of the Court. The Court shall retain jurisdiction solely with respect to the interpretation, implementation and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Settlement and all orders and judgments entered in connection therewith.

15. **CALIFORNIA LAW GOVERNS**

15.1    All terms of this Settlement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California, regardless of its conflict of laws.

16. **INVALIDITY OF ANY PROVISION**

16.1    The Parties request that before declaring any provision of this Stipulation of Settlement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents.

17. **AMENDMENT OR MODIFICATION**

17.1    This Settlement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

18. **ENTIRE AGREEMENT**

18.1    This Settlement, including Exhibits attached hereto, contains the entire agreement between the Parties. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, including the Memorandum of Agreement between the Parties, are merged herein.

---

19.    **INTERIM STAY OF PROCEEDINGS**

19.1    The Parties agree to hold in abeyance all proceedings in the Actions, except such proceedings necessary to implement and complete the Settlement, pending the final approval hearing to be conducted by the Court.

20.    **COUNTERPARTS**

20.1    This Settlement may be executed in counterparts, and when each of the Parties has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully signed Settlement, which shall be binding upon and effective as to all Parties.

**IT IS SO AGREED.**

Dated:  1/13/2021 _____

**PLAINTIFF**:

_Carter Pool_
305E8C86B329499
CARTER POOL

Dated: _____

**DEFENDANT:**

By: _____
Title: _____
        on behalf of AMERIPARK, LLC

**APPROVED AS TO CONTENT ONLY:**

Dated:  1/13/2021 _____

**GRAHAMHOLLIS APC**
Attorneys for Plaintiff Carter Pool

By: _____
        Graham Hollis, Esq.
        Nathan Reese, Esq.

Dated: _____

**AKERMAN LLP**
Attorneys for Defendant AmeriPark, LLC

By: _____
        Marissa Alguire, Esq.
        Damien Delaney, Esq.
        Corina Valderrama, Esq.

STIPULATION OF SETTLEMENT                                      Page 18
55297801;4

19.    **INTERIM STAY OF PROCEEDINGS**

19.1    The Parties agree to hold in abeyance all proceedings in the Actions, except such proceedings necessary to implement and complete the Settlement, pending the final approval hearing to be conducted by the Court.

20.    **COUNTERPARTS**

20.1    This Settlement may be executed in counterparts, and when each of the Parties has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully signed Settlement, which shall be binding upon and effective as to all Parties.

**IT IS SO AGREED.**

Dated: _____          **PLAINTIFF:**

_____
CARTER POOL

Dated:   1/19/2021                **DEFENDANT:**
_____

By: _____
Title:  General Counsel and Secretary
on behalf of AMERIPARK, LLC

**APPROVED AS TO CONTENT ONLY:**

Dated: _____          **GRAHAMHOLLIS APC**
Attorneys for Plaintiff Carter Pool

By: _____
Graham Hollis, Esq.
Nathan Reese, Esq.

Dated:  January 19, 2021             **AKERMAN LLP**
Attorneys for Defendant AmeriPark, LLC

By: _____
Marissa Alguire, Esq.
Damien Delaney, Esq.
Corina Valderrama, Esq.

# EXHIBIT A

# *Pool v. AmeriPark, LLC*

United States District Court, Southern District of California, Case 19CV1103-BEN-WVG

**PLEASE READ THIS NOTICE CAREFULLY. YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR NOT.**

*The Court authorized this notice. This is not a solicitation from a lawyer.*

A proposed class action settlement ("Settlement") has been reached between the Parties in the above-entitled action and preliminarily approved by the Court as described below. You have received this notice because AmeriPark's records indicate that you are a current or former non-exempt employee of AmeriPark, LLC who worked in the State of California and who performed parking valet duties from any time between May 6, 2015 and [insert date of preliminary approval] (the "Class").

Dear [CLASS MEMBER NAME]:

> **You are eligible to receive an Individual Settlement Amount, estimated to be approximately $ [_____].**

This settlement relates only to the time period May 6, 2015 - [date of preliminary approval] (the "Class Period"), the qualifying time period for this Settlement, and may not reflect all of your employment dates with AmeriPark, LLC.

## 1.    WHY SHOULD I READ THIS NOTICE?

You should read this notice because you may be entitled to payment from the Settlement in the above-entitled action and because your legal rights may be affected even if you do nothing. The Plaintiff and AmeriPark have entered into a Joint Stipulation of Settlement and Release ("Settlement Agreement") that will, if finally approved by the Court, fully resolve the claims alleged against AmeriPark in this case, as described in Section 2. The Settlement Agreement sets forth the details of the settlement. You may obtain a copy of the Settlement Agreement from either the Claims Administrator or Class Counsel. The proposed Settlement Agreement has been submitted to the Court, and has been preliminarily approved for settlement purposes. The Court also preliminarily appointed Plaintiff as a representative of the Class ("Class Representative") and has preliminarily appointed the following Plaintiff's counsel as counsel for the Class ("Class Counsel"):

GRAHAM**HOLLIS** APC
Graham S. P. Hollis (ghollis@grahamhollis.com)
Vilmarie Cordero (vcordero@grahamhollis.com)
Nathan J. Reese (nreese@grahamahollis.com)
3555 Fifth Avenue, Ste 200
San Diego, CA 92103Telephone: (619) 344-8696

As a member of the Class, you are entitled to share in the funds available for settlement of this class action. You are <u>not</u> being sued and you will not be individually responsible for any of the attorney's fees or expenses of the litigation, as the settlement requires those amounts to be paid by

AmeriPark. Your rights will be affected by the Settlement described in this Notice whether you act or not.

The Court must finally approve the terms of the settlement described below as fair and reasonable to the Settlement Class, before it will take effect. If approved, the settlement will affect all Class Members who do not exclude themselves from the Settlement Class. An administrator that has been appointed by the Court will make all approved settlement payments after the Court orders them.

## 2.      WHAT IS THIS CASE ABOUT?

Carter Pool ("Plaintiff") is a former employee of AmeriPark who held the position of Parking Valet in California. Plaintiff filed a class action and representative action lawsuit which is now pending in the United States District Court for the Southern District of California located in San Diego. The Plaintiff alleges that he and the other employees performing parking valet duties ("Class Members") were not paid for all of their hours worked, including minimum, regular, and overtime wages. Plaintiff also alleges that he and Class Members were not provided with all required meal and rest breaks, reimbursement for necessary expenditures they incurred as a result of their employment with AmeriPark, or suitable seating while working for AmeriPark. Plaintiff further alleges that Defendant's tip pooling practices deprived them of receipt of all of their gratuities.

There has been no Court ruling or determination on the merits of the claims alleged by Plaintiff or of AmeriPark's defenses, and as such, the Court has found no liability in this Action. AmeriPark denies all of the allegations in the lawsuit or that it violated any law and contends that at all times it has complied with the law.

The Parties participated in mediation with a respected class action mediator, and as a result of mediation, the Parties reached a settlement as described below.

## 3.      WHO IS INCLUDED IN THE SETTLEMENT CLASS?

This settlement includes all current and former non-exempt employees of Defendant who worked in the State of California and who performed parking valet duties between May 6, 2015 and [insert date of preliminary approval]

## 4.      WHAT ARE THE TERMS OF THE SETTLEMENT AND HOW MUCH CAN I EXPECT TO RECEIVE?

### a. Summary of Settlement Terms

AmeriPark will pay $1,750,000.00 to settle this case (the "Maximum Settlement Amount"). From that amount, payments will be made to Class Counsel for court-approved attorney's fees and costs, to the Claims Administrator for administration costs, to the California Labor and Workforce Development Agency for penalties, and to the Plaintiff as a service award for his representation of the Class and for civil penalties pursuant to the Labor Code. After deduction of these amounts, the remainder – the "Net Settlement Sum" – of approximately $1,060,000.00 will

be distributed to participating Settlement Class Members on a pro rata basis according to the number of shifts they worked during the Class Period (May 6, 2015 through [==insert date of preliminary approval==]).

The Individual Settlement Payments Made to Class Members Shall Be Calculated as Follows:

> The Individual Settlement Payments be allocated on a pro rata basis according to the number of shifts each Class Members worked during the Class Period. In the event time records are missing or unavailable for a particular workweek worked by a Class Member during the Class Period, the Class Member will be presumed, for the workweek during which he or she worked and the records are missing or unavailable, to have worked the average number of shifts worked by Class Members during the period in which records are available.

Your Settlement Payment (i.e. the amount you will receive if you do not submit a Request for Exclusion) will be calculated using the formulas described above. However, the actual Settlement Payment may vary depending on the number of Class Members that exclude themselves from the Settlement.

**b.     Who will receive settlement payments?**

Any Class Member who does not submit a timely Request for Exclusion.

**c.     When will I receive my settlement payment?**

Distributions of Settlement Payments to Participating Settlement Class Members shall occur no later than twenty-two (22) business days after the Court approves the settlement at a Final Fairness Hearing and enters Judgment in accordance with the terms of the Settlement. **To ensure that you receive your settlement payment check you must notify the Settlement Administrator if you change your mailing address.**

**e.     How much can I expect to receive?**

The estimated payment on this Notice states the estimated total amount you can expect to receive if you participate in the settlement. This amount is based on AmeriPark's records of your total number of shifts worked during the Class Period.

The estimated payment amount may be reduced or increased, however, based on the number of participating Settlement Class Members, the number of Requests for Exclusion submitted, whether additional class members are identified or come forward, the potential reallocation of some of the unclaimed funds to participating Settlement Class Members, and the terms of the Court's final approval order.

Unclaimed Amounts/Uncashed Checks

Participating Settlement Class Members shall have one hundred and eighty (180) calendar days after the mailing of each Settlement Payment check by the Settlement Administrator to cash their Settlement Payment checks. If after 180 calendar days of mailing, the checks cashed by Class Members total less than 100% of the Net Settlement Sum, the amount remaining will be redistributed among those Class Members who cashed the checks sent to them within the 180 days, on a pro-rata basis in proportion to their original Individual Settlement Payment, as long as the costs of  Redistribution are less than the amount left for Redistribution. If the costs of Redistribution are more than the amount to be redistributed, or any unclaimed amounts remain

60 calendar days after the Redistribution, the Settlement Administrator shall issue a check of the unpaid residue or unclaimed or abandoned Class Members' funds to The Legal Aid Association of California.

### C. SETTLEMENT ADMINISTRATION COSTS

Costs incurred by the Settlement Administrator in connection with providing Notice to the Class, receiving and determining challenges to estimated settlement payment amounts, receiving and forwarding to the Court and the parties Requests for Exclusion and objection letters received, if any, and calculating and distributing payments due to participating Settlement Class Members and others entitled to settlement payment under the terms of the Settlement Agreement as approved by the Court, will be paid from the Maximum Settlement Amount. These costs are estimated not to exceed $16,000.00.

The Claims Administrator is:

> ILYM Group, Inc.
>
> [INSERT contact information]

### D. ATTORNEYS' FEES AND COSTS

All payments for Class Counsel's attorney's fees and costs will be deducted from the Maximum Settlement Amount. Class Counsel will apply to the Court for final approval of their attorney's fees and costs. The attorneys for the Class will ask for reimbursement of their costs actually incurred in litigating this case and for fees of up to $583,333.33. The amount of fees and costs awarded will be determined by the Court, and will be paid from the Maximum Settlement Amount paid by Defendant.

### E. SERVICE AWARDS PAYABLE TO PLAINTIFF

The Court has also preliminarily approved a payment of $5,000.00 to Plaintiff as a service award. The service award is to compensate Plaintiff for his risk incurred and time and efforts in assisting with the prosecution of the Action on behalf of the Class Members and in return for executing a General Release of all Claims against AmeriPark and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers, ("Released Parties") which is broader than the release applicable to the Settlement Class Members who are not a named plaintiff. The Court has further approved the additional payment of $5,000.00 to Plaintiff as an award for his individual claims under Labor Code Sec. 1102.5. These awards will be paid from the Maximum Settlement Amount.

### F. PAYMENT TO THE LABOR AND WORKFORCE DEVELOPMENT AGENCY

$87,500.00 of the Total Settlement Sum will be allocated as penalties authorized by the Private Attorneys General Act, of which $65,625.00 will be paid to the California Labor and

Workforce Development Agency and $21,875.00 will be paid to participating Settlement Class Members by including that amount in the settlement payments made to the participating Class Members as described in this notice.

### G. <u>TAX TREATMENT OF INDIVIDUAL SETTLEMENT AMOUNTS</u>

Settlement Payments to participating Settlement Class Members are allocated as follows:  (a) 20% as wages; (b) 40% as penalties; and (c) 40% as interest. Participating Settlement Class Members will be responsible for the tax consequences of all payments received by them, for filing returns and reporting all income received to state and federal taxing authorities, and for payment of any other applicable taxes due. The parties to the case cannot provide and will not provide any advice regarding tax obligations. You should seek tax advice as to any amounts you receive pursuant to the Settlement from your own tax advisor. That portion of each Class Member's Individual Settlement Payment representing wages will be subject to normal employment tax withholdings and an IRS Form W-2 will be provided to each Settlement Class Member. That portion of each Class Member's Individual Settlement Payment constituting interest and penalties will be reported on an IRS Form 1099 provided to each Settlement Class Member, with required copies of the IRS Form 1099s provided to the Internal Revenue Service.

### 5. WHAT DO I NEED TO DO TO COLLECT MONEY?

If you want to participate in the settlement, **you need not take any action to receive a settlement payment** as this will occur automatically. All you need to do is make sure the Settlement Administrator is aware of your correct mailing address.

### 6. WHAT IF I DO NOTHING?

If you decide to do nothing and the Settlement is approved by the Court, you will receive an Individual Settlement Payment. You will, however, also be bound by the terms of the Settlement Agreement. Specifically, unless you affirmatively exclude yourself from the Settlement, you will be bound by the terms of the release as described in #9 below and therefore be barred from pursuing any state wage law claims against AmeriPark that were alleged in this lawsuit.

### 7. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

If you do <u>not</u> wish to participate in the Settlement, you may exclude yourself ("opt out") by sending a Request for Exclusion to the Claims Administrator listing your name, address, and phone number, and the last four digits of your social security number along with the following statement:

> **"I request to be excluded from the class action proceedings in the matter of Carter Pool v. AmeriPark, LLC et., Case No. 19CV1103-BEN-WVG, pending in the United Stated District Court, Southern District of California."**

The Request for Exclusion must be completed, signed, dated, and returned to the Claims Administrator. **THE REQUEST FOR EXCLUSION MUST BE MAILED VIA FIRST-**

**CLASS MAIL AND POSTMARKED NO LATER THAN [INSERT DATE 45 DAYS AFTER MAILING].**

Any person who submits a timely Request for Exclusion shall, upon receipt, no longer be a member of the Settlement Class, shall be barred from participating in any portion of the Settlement, and shall receive no money from the Settlement. Any such person, at his/her own expense, may pursue any claims he/she may have against AmeriPark. However, there are deadlines to pursuing such claims, known as statutes of limitation. Please consult an attorney of your choice to ensure you are not forever barred from pursuing a claim if you decide to opt out of this Settlement.

**8.     HOW DO I OBJECT TO THE SETTLEMENT?**

You may object to the terms of the Settlement before final approval. If you choose to object to the Settlement, you may represent yourself or hire your own attorney. If you wish to object to the settlement, you must file a written objection.

You must file these documents, along with any briefs, exhibits, and/or other material that you wish the Court to consider, with the United States District Court Clerk, Southern District of California at James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, Courtroom 14A (14th floor), San Diego, CA 92101. In addition, you must send copies to Class Counsel and Defendant's Counsel identified in Number 10 below. Copies of any documents filed with the Court in this Litigation should be sent to the Settlement Administrator listed below.

Any written objections should state each specific reason for your objection and any legal support for each objection. Your objection must also state your full name, address, and the dates of your employment by AmeriPark in California. To be valid and effective, any objections to the proposed Settlement must be filed with the Clerk of the Court and served upon each of the above-listed attorneys no later than [INSERT DATE 45 DAYS AFTER MAILING].

**IF THE COURT REJECTS YOUR OBJECTION AND APPROVES THE SETTLEMENT, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT.**

**9.     WHAT CLAIMS DO I RELEASE IF I PARTICIPATE IN THE SETTLEMENT?**

Upon the final approval of the Settlement by the Court, all Class Members who do not opt out of the Settlement will release and discharge Released Parties, as defined above, from any and all claims, demands, rights, liabilities, and causes of action that were pled in the Complaint/First Amended Complaint/Second Amended Complaint (altogether, the Operative Complaint), or which could have been pled in the Operative Complaint based on the factual allegations therein, including all of the following claims for relief: (i) failure to provide rest periods; (ii) failure to provide meal periods; (iii) failure to pay minimum and regular wages; (iv) failure to pay all overtime wages; (v) failure to provide accurate wage statements; (vi) waiting time penalties; (vii) failure to indemnify employees for necessary expenditures incurred in the discharge of duties; (viii) failure to institute a lawful tip pooling policy; (ix) failure to provide suitable seating; (x) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief

pleaded in the Operative Complaint; (xi) all claims under the California Labor Code Private Attorneys General Act of 2004 that could have been premised on the claims, causes of action or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the Operative Complaint; (xii) any other claims or penalties under the wage and hour laws pleaded in the Operative Complaint; and (xiii) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief. This period covered by this release includes May 6, 2015 through [insert date of preliminary approval].

## 10.  WHO ARE THE LAWYERS REPRESENTING THE PARTIES?

Attorneys for Plaintiffs & the Class are:
GRAHAM**HOLLIS** APC
Graham S. P. Hollis
ghollis@grahamhollis.com
Vilmarie Cordero
vcordero@grahamhollis.com
Nathan J. Reese
nreese@grahamahollis.com
3555 Fifth Avenue, Ste 200
San Diego, CA 92103
Telephone: (619) 344-8696

Attorneys for AmeriPark, LLC are:
AKERMAN, LLP
Marissa Alguire
marissa.alguire@akerman.com
Damien DeLaney
damien.delaney@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, CA 90071

Copies of any documents filed with the Court in this Litigation should be sent to the above-listed counsel.

## 11.  WHO IS THE SETTLEMENT ADMINISTRATOR?

ILYM Group, Inc.
[ADDRESS]
[PHONE#]

**If you move after receiving this notice, or if it was incorrectly addressed, please provide your correct address to the Settlement Administrator.**

## 12.  FINAL SETTLEMENT APPROVAL HEARING.

The Court will hold a hearing to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. This hearing will take place at United States District Court Clerk, Southern District of California at James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, Courtroom 14A (14th floor), San Diego, CA 92101 at [time] on [date]. The Court also will be asked to approve Class Counsel's request for attorneys' fees and reimbursement of costs and expenses and the service awards to be paid to Plaintiff. The hearing may be continued without further notice to the Settlement Class. It is not necessary for you to appear at this hearing. For up to date information regarding appearing remotely during the Covid-19 Pandemic, please visit: https://www.casd.uscourts.gov/covid19.aspx.

## 13.  ADDITIONAL INFORMATION.

The above is a summary of the basic terms of the Settlement. A complete copy of the Settlement Agreement may be obtained from the Settlement Administrator or Class Counsel.

**PLEASE DO NOT TELEPHONE OR WRITE THE COURT, AMERIPARK OR ITS ATTORNEYS FOR INFORMATION REGARDING THIS SETTLEMENT. ALL QUESTIONS REGARDING THE SETTLEMENT SHOULD BE DIRECTED TO THE SETTLEMENT ADMINISTRATOR OR CLASS COUNSEL.**

55297802;5

EXHIBIT B

1  GRAHAM**HOLLIS** APC
   Graham Hollis (SBN 120577)
2  ghollis@grahamhollis.com
   Vilmarie Cordero (SBN 268860)
3  vcordero@grahamhollis.com
   Nathan Reese (SBN 283150)
4  nreese@grahamhollis.com
   3555 Fifth Avenue Suite 200
5  San Diego, California 92103
   Telephone: 619.692.0800
6  Facsimile: 619.692.0822

7  Attorneys for Plaintiff CARTER POOL

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10 CARTER POOL, in a representative        Case No.: 3:19-cv-01103-LAB-WVG
   capacity, and on behalf of all similarly
11 situated and aggrieved current and former  [*Assigned to Hon. Larry Alan Burns*]
   employees of DEFENDANTS in the
12 State of California,                     **SECOND AMENDED INDIVIDUAL
                                            AND CLASS ACTION COMPLAINT**
13             Plaintiff,                   **[Cal. Code Civ. Proc. § 382]**
                                            **[IMAGED FILE]**
14        v.

15 AMERIPARK, LLC, a Georgia Limited        1. Failure to Provide Rest Periods;
   Liability Company; and DOES 1-50,        2. Failure to Provide Meal Periods;
16 inclusive,                               3. Failure to Pay Minimum and
                                               Regular Wages;
17             Defendants.                  4. Failure to Pay All Overtime Wages;
                                            5. Failure to Provide Accurate
18                                             Itemized Wage Statements;
                                            6. Failure to Timely Pay All Wages
19                                             Due Upon Separation of
                                               Employment;
20                                          7. Failure to Indemnify Necessary
                                               Business Expenses;
21                                          8. Violation of Business & Professions
                                               Code §17200, *et seq.*;
22                                          9. Wrongful Constructive
                                               Termination;
23                                          10. Unlawful Retaliation; and

24                                          **REPRESENTATIVE ACTION FOR
25                                            PAGA PENALTIES**

26                                          11. Violation of the Private Attorneys
                                               General Act of 2004, Labor Code §§
27                                             2698, *et seq.*

28                                          **– JURY TRIAL DEMANDED -**

                                        1
              **FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Plaintiff CARTER POOL (hereinafter "Plaintiff"), on behalf of himself and all other similarly situated and aggrieved employees of Defendants AMERIPARK, LLC, and DOES 1 THROUGH 50, inclusive, (hereinafter "Defendants"), alleges as follows:

## I.

## INTRODUCTION

1.     Plaintiff brings this putative class and individual action against Defendants AMERIPARK, LLC, and DOES 1 THROUGH 50, for engaging in a pattern of wage and hour violations under the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders, all of which have contributed to Defendants' deliberate unfair competition.

2.     Plaintiff brings this action on behalf of all current and former non-exempt employees who worked for Defendants in the State of California and who performed parking valet duties during the applicable relevant time period, (hereinafter "similarly situated employees").

3.     Plaintiff also brings this representative action pursuant to the Private Attorneys General Act of 2004, California Labor Code § 2698, *et seq*. ("PAGA") against Defendants for engaging in a pattern of wage and hour violations under the California Labor Code and the applicable IWC Wage Order. Plaintiff brings this action on behalf of all other current and former non-exempt employees of Defendants in the State of California who have suffered at least one of the Labor Code violations described herein during the applicable relevant time period (hereinafter "aggrieved employees").

4.     Plaintiff is informed and believes, and on that basis alleges, that Defendants decreased its employment-related costs by systematically violating California wage and hour laws and engaging in unlawful and unfair business practices.

5.     Defendants' systematic pattern of wage and hour and IWC Wage Order violations toward Plaintiff and other similarly situated and aggrieved employees in California include, *inter alia*:

a.     Failure to provide compliant meal and rest periods;

2

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

b.   Failure to provide compensation for all hours worked, including minimum wage, regular, and overtime wage;

c.   Failure to provide accurate itemized wage statements;

d.   Failure to timely pay wages due during and upon separation of employment;

e.   Failure to institute a lawful tip pooling policy that did not deprive employees of all gratuities due to them;

f.   Failure to provide suitable seats; and

g.   Failure to reimburse for all business expenses.

6.   Plaintiff also brings an individual action against Defendants for constructive wrongful termination and retaliation as a result of his making complaints about wages and working conditions and perceived unlawful activity.

7.   Plaintiff brings this lawsuit seeking restitution, injunctive relief, and monetary relief against Defendants, on behalf of himself and all other similarly-situated and/or aggrieved employees in California, to recover, among other things, unpaid wages, benefits, expenses, interest, attorney's fees, damages, liquidated damages, penalties, and costs pursuant to Labor Code §§ 201, 202, 203, 204, 210, 226.3, 226.7, 351, 558, 558.1, 510. 512, 1102.5, 1194, 1197.1, 1198, 2802, the Private Attorney General Act, California Labor Code § 2698, *et seq*.; the Business and Professions Code §§17200, et seq., and the provisions of the applicable IWC Wage Order. Plaintiff also brings an individual action seeking any and all remedies for Plaintiff's constructive wrongful termination of his employment in violation of public policy and retaliation, including, monetary relief, punitive damages, attorney's fees and costs, and civil penalties that are required pursuant to California Labor Code section 1102.5.

8.   Plaintiff reserves the right to name additional representatives throughout the State of California.

## II.

## PARTIES, JURISDICTION AND VENUE

3

9. Plaintiff is an individual who worked for Defendants as a parking valet. He was primarily engaged in administrative duties, and the majority of the work he performed was non-managerial in nature. Plaintiff was not primarily engaged in work directly related to management policies or general business operations of the Defendants. Plaintiff was not permitted to exercise discretion or independent judgment and could not hire or fire employees. At all times, Plaintiff was a non-exempt employee and should have received the protections afforded by the California Labor Code and the applicable Industrial Welfare Commission ("IWC") Wage Order.

10. Defendant AMERIPARK, LLC, is organized under the laws of the State of Georgia and has its principal place of business in Marietta, Georgia.

11. Defendants operates several businesses and locations throughout California, including in San Diego, California.

12. Plaintiff and all other current and former similarly situated and aggrieved employees are and were employees of Defendants within the meanings set forth in the Labor Code and IWC Wage Order at all times during the applicable statutory period.

13. Defendants' wrongful conduct, as herein alleged, occurred in the County of San Diego and in various counties throughout the State of California. Plaintiff is informed and believes, and thereon alleges, that Defendants are, and at all relevant times were, authorized to do business and did business in the State of California, and were Plaintiff's and similarly situated and aggrieved employees' "employers" as defined in and subject to the California Labor Code and Industrial Welfare Commission Wage Orders.

14. The true names and capacities of the Defendants named as DOES 1 THROUGH 50, inclusive, are presently unknown to Plaintiff. Plaintiff will amend this Complaint, setting forth the true names and capacities of these fictitiously named Defendants when their true names are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitious Defendants have participated in the acts alleged in this Complaint.

15. Plaintiff and all other similarly situated and aggrieved employees are, and at

4

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

all relevant times were, employees of each Defendant, including DOES 1 THROUGH 50, within the meanings set forth in the California Labor Code and applicable Industrial Welfare Commission Wage Order.

16. At all relevant times, each Defendant, whether named or fictitious, was the agent, employee or other person acting on behalf of each other Defendant, and, in participating in the acts alleged in this Complaint, acted within the scope of such agency or employment and ratified the acts of the other.

17. Plaintiff's injuries as herein alleged were proximately caused by said Defendants. Wherever it is alleged herein that any act or omission was done or committed by any specially named Defendant or Defendants, Plaintiff intends thereby to allege and does allege that the same act or omission was also done and committed by each and every Defendant named as a DOE, both separately and in concert or conspiracy with the named Defendant.

18. Each Defendant, whether named or fictitious, exercised control over Plaintiff's wages, working hours, and/or working conditions.

19. Each Defendant, whether named or fictitious, acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy, and the acts of each Defendant are legally attributable to the other Defendants.

20. Each Defendant, whether named or fictitious, was the alter ego of each of the other Defendants at all relevant times herein.

21. On information and belief, a unity of interest and ownership between each Defendant, whether named or fictitious, exists such that all Defendants acted as a single employer of Plaintiff and all other aggrieved employees.

22. Defendants, including DOES 1 THROUGH 50, were Plaintiff's employers or persons acting on behalf of Plaintiff's employer, within the meaning of California Labor Code section 558, who violated or caused to be violated, a section of Part 2, Chapter 1 of the California Labor Code or any provision regulating hours and days of work in any order of the Industrial Welfare Commission and, as such, are subject to civil penalties for each

underpaid employee, as set forth in Labor Code section 558, at all relevant times.

23.  Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because a substantial part of the events or omissions giving rise to the claims alleged occurred within the San Diego County in the Southern District of California. Defendants maintain offices, transact business, and/or have an agent in San Diego County and Defendants are otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein arose in San Diego County and have a direct effect on Plaintiff and other similarly situated employees within the State of California and San Diego County. Defendants employ numerous individuals throughout San Diego County and the State of California.

### III.
### GENERAL ALLEGATIONS

24.  AMERIPARK, LLC, (hereinafter "AMERIPARK") is a full-service parking company providing valet and parking management services within numerous markets across the United States, including California. AMERIPARK employed Plaintiff and other similarly situated and/or aggrieved employees to perform valet parking services.

25.  Plaintiff was employed by Defendants as a parking valet at its location in Fashion Valley Mall in San Diego, California. Plaintiff worked for Defendants from on or around November 11, 2013 until January 25, 2019.  At the end of his employment, Plaintiff was paid $11.50 an hour. Plaintiff typically worked between 5 and 8 hours per workday, however, his schedule and workdays have varied throughout his employment and based on Defendants' seasonal needs. There were occasions when Plaintiff worked in excess of 8 hours in a workday or 40 hours in a workweek.

26.  At no time during Plaintiff's employment as a parking valet was he primarily engaged in administrative duties, and the majority of the work he performed was non-managerial in nature. Furthermore, Plaintiff was not primarily engaged in work directly related to management policies or general business operations of the Defendants. Plaintiff was not permitted to exercise discretion or independent judgment and could not hire or fire

6

employees. At all times, Plaintiff was non-exempt employee and should have been received the protections afforded by the California Labor Code and the applicable Industrial Welfare Commission IWC Wage Order.

27. On information and belief, Plaintiff and other similarly situated and/or aggrieved employees of Defendants were subject to the same policies, practices, and procedures governing the control and payment of wages and hours worked and were denied specific rights afforded to them under the California Labor Code and applicable IWC Wage Order.

28. Plaintiff and other similarly situated and/or aggrieved employees of Defendants regularly worked shifts at least three and a half hours long and Defendants failed to authorize and permit them to take duty-free rest periods of at least 10 minutes for every four-hour work period, or major fraction thereof.

29. Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees were scheduled to work at posts where they were the only parking valet working at the time. Defendants required Plaintiff and the other similarly situated and/or aggrieved employees to remain at that post and be available to park and retrieve cars and perform other services. No one was available to relieve Plaintiff and other similarly situated and/or aggrieved employees for rest breaks when they were scheduled to work alone. When Plaintiff and other similarly situated and/or aggrieved employees were stationed at posts with other employees, they too were required to remain at or near their posts and respond to all customer needs as they arose throughout the workday. As such, they remained on-duty during the entirety of their shifts and were not authorized or permitted to take rest breaks.

30. For the same reasons that Plaintiff and other similarly situated and/or aggrieved employees were not authorized or permitted to take legally compliant rest breaks, they were not provided legally compliant meal breaks. Plaintiff and other similarly situated and/or aggrieved employees were required to remain at or near their posts and respond to all customer needs at all times during their shifts, including meal breaks. In

7

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

addition, during instances when Plaintiff and other similarly situated and/or aggrieved employees were stationed at a post alone, there were no other employees available to relieve them during breaks.

31.     On information and belief, Defendants did not have a valid written meal or rest period policy applicable to Plaintiff and other similarly situated and/or aggrieved employees. Further, due to the scheduling of parking valets and Defendants' requirements, Plaintiff and other similarly situated and/or aggrieved employees were required to forego meal and rest periods.

32.     Defendants failed to pay Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees a premium wage equivalent to one hour of pay at their regular rate of pay for all the times that Defendants failed to authorize and permit them to take duty-free rest periods in accordance with the Rest Periods section of the applicable IWC Wage Order and Labor Code section 226.7. Defendants also failed to pay Plaintiff and other similarly situated and/or aggrieved employees a premium wage equivalent to one hour of pay at their regular rate of pay for all the times that Defendants failed to provide them duty-free meal periods in accordance with the Meal Periods section of the applicable IWC Wage Order and Labor Code sections 512 and 226.7.

33.     Defendants had the policy, pattern and practice of not compensating Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees for meal and rest period premiums when meal and rest periods were not provided as required under Labor Code section 226.7.

34.     Plaintiff and similarly situated and/or aggrieved employees were required to perform duties either before clocking out at the beginning of their shift or after clocking out at the end of their shift. For example, Plaintiff and similarly situated and/or aggrieved employees would not be able to clock in for work until after they had already begun performing duties. Plaintiff and similarly situated and/or aggrieved employees would clock in for work using a mobile phone application. However, very often the mobile application did not work, and they were not permitted to clock in at the time they started working.

8

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Plaintiff and similarly situated and/or aggrieved employees would further arrive at the worksite and find customers waiting for them when they arrived. They were then required to greet the customers and check them in before they had the opportunity to clock for work. In addition, Plaintiff and similarly situated and/or aggrieved employees would be required to set up the workstations prior to clocking in. Plaintiff and similarly situated and/or aggrieved employees would arrive at the job site, greet and assist any customers that were waiting for them, clear the parking lanes for the valet parking area, obtain keys, tags, and cell phone devices used for checking in customers all before clocking in for work. As a result, Plaintiff and similarly situated and/or aggrieved employees would frequently be required to perform duties for several minutes prior to clocking in.

35.     As previously mentioned, Plaintiff and similarly situated and/or aggrieved employees were required to remain on-duty during their meal breaks, because they were required to remain at or near their posts and respond to all customer needs at all times during their shifts. As such, the meal periods of Plaintiff and similarly situated and/or aggrieved employees was compensable hours worked. Nevertheless, Plaintiff and similarly situated and/or aggrieved employees would clock out during their on-duty meal breaks. Therefore, Plaintiff and similarly situated and/or aggrieved employees performed duties off-the-clock for which they should have been compensated but were not.

36.     As a result of the foregoing, Plaintiff and similarly situated employees and/or aggrieved employees did not receive the statutory minimum wage for all time they were suffered or permitted to work because they were not properly compensated at minimum wage for all hours worked. Plaintiff and, on information and belief, similarly situated and/or aggrieved employees worked in excess of eight hours in a workday or forty hours in a workweek. As such, Defendants further failed to provide them with overtime compensation for all hours worked.

37.     As a direct result of Defendants' illegal policies and procedures, Defendants failed to maintain accurate records reflecting all of Plaintiff's and other similarly situated employees' time worked and wages paid, in violation of California law.

9

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

38. As a direct result of the Defendants' illegal policies and procedures, Defendants intentionally and knowingly failed to provide Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees with accurate itemized wage statements as required by Labor Code section 226. Defendants failed to maintain accurate records reflecting all of Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees' correct total regular and overtime hours worked, the correct amount of gross and net wages earned, and meal and rest period premiums owed. Therefore, the wage statements issued by Defendants did not include the correct amount of gross and net wages earned as required under Labor Code section 226.

39. In addition, Defendants failed to provide Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees with suitable seats even though the nature of the work reasonably permitted the use of seats. The duties of a parking valet permits permitted them to use a seat; nonetheless, Defendants failed to provide such seating as required under Labor Code section 1198 and section 14 of Applicable IWC Wage Order.

40. Plaintiff asserts that Defendants had, and continue to have a policy, practice, procedure, guideline and/or culture of instituting a tip pool. Defendants did not have a written tip pool agreement, and Plaintiff further alleges that Defendants did not distribute tips in a fair and reasonable manner.

41. Plaintiff also asserts that Defendants' tip pool policy, practice, procedure, guideline and/or culture is unlawful and improper because Defendants improperly share tips earned by valets with owners, managers, agents, and/or supervisors of Defendants in violation of Labor Code section 351. As a result of Defendants' unlawful and improper tip pooling policy, practice, procedure, guideline and/or culture, Plaintiff and other similarly situated and/or aggrieved employees, were not timely paid all gratuities given to them by patrons.

42. Plaintiff further alleges that Defendants did not, and do not have a policy, practice, procedure, guideline and/or culture of maintaining accurate records of all gratuities received in violation of California law.

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

43. Plaintiff and other similarly situated and/or aggrieved employees were stationed at a valet stand. Their duties included checking customers in/out, inputting data, waiting for customers to arrive, and parking and retrieving cars. The tasks performed by parking valets at the valet stand reasonably permitted the use of seats. Plaintiff and other similarly situated and/or aggrieved employees purchased a chair for the valet stand with their own money after Defendants failed to provide suitable seating. Defendants, however, removed that chair and refused to allow Plaintiff and other similarly situated and/or aggrieved employees to use a seat, in violation of the California Labor Code and the applicable IWC Wage Order.

44. Defendants maintained a pattern and practice of failing to timely pay Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees' wages due and owing, as required by Labor Code sections 201 and 202. Defendants failed to pay Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees' wages due and owing at the time of separation of employment because Defendants willfully failed to pay Plaintiff and, on information and belief, other similarly situated and/or aggrieved employees for all hours worked and all meal and rest period premium wages owed upon their separation of employment.

45. Plaintiff is informed and believes that Defendants maintained a pattern and practice of failing to pay Plaintiff and other similarly situated and/or aggrieved employees all wages due and owing during their employment within the time specified by Labor Code section 204 because Defendants failed to pay Plaintiff and other aggrieved employees all meal and rest period premium wages.

46. Defendants engaged in retaliation against Plaintiff and wrongfully took adverse employment action against him in violation of Labor Code section 1102.5. On information and belief, Defendants collected, took, or received gratuity or a part thereof that was paid, given to, or left for Plaintiff and other similarly situated and/or aggrieved employees by patrons. Plaintiff and other similarly situated and/or aggrieved employees pooled tips, which were later distributed to all parking valets working during that shift

11

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

based on the total number of hours they worked during the shift. Defendants employed a manager at the parking location where Plaintiff worked by the name of Josh Baker. After Baker began working as a manager, he began participating in the tip pool with the parking valets he managed. On information and belief, at no time did Baker spend the majority of his time doing the same work as parking valets, and most of his time was spent on administrative tasks. Nonetheless, Baker's title was changed from manager to valet lead, even though his position did not otherwise change, as an excuse to justify Baker's participation in the tip pool. On information and belief, Baker would exaggerate the hours he worked performing duties as a parking valet, in order to receive a higher portion of the tip pool. Baker would further, on information and belief, record that he worked at multiple locations at the same time or at locations where he was not working, so that he could participate in multiple tip pools at the same time.

47.     Plaintiff brought his concerns regarding his belief that Baker was unlawfully stealing tips to multiple management level employees. Plaintiff initially made his first complaint to one of Defendants' regional managers. The regional manager failed to take any action to investigate the matter and instead accused Plaintiff of making false accusations. Plaintiff then spoke to the regional manager's supervisor and the head of Defendants' Human Resources in order to share the same complaints. After complaining about what Plaintiff believed was the unlawful theft of tips, Defendants then began swiftly retaliating against him in several ways.

48.     After complaining about what Plaintiff believed was his manager's theft of tips, and as a direct and proximate result of said complaints, Defendants immediately retaliated against Plaintiff. For example, the tone and tenor of Plaintiff's supervisors became hostile during subsequent interactions. Baker began overseeing Plaintiff's work intensively by double checking everything he did, and Baker was overly critical of everything Plaintiff did. Defendants began to reduce Plaintiff's schedule by cutting his hours and the days he worked. Baker began switching the location where Plaintiff worked and the days he was scheduled to work without informing Plaintiff of the change.

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

49.     Furthermore, Defendants began writing up Plaintiff and suspended him without pay for pretextual offenses. For example, Plaintiff was written up and suspended without pay for switching his shift with another employee, when such conduct was common place and expressly permitted by Defendants. The work conditions, including the lack of suitable seating, were so intolerable that Plaintiff had no alternative but to resign.

50.     Due to the foregoing Labor Code violations, Defendants denied Plaintiff and other similarly situated and/or aggrieved employees certain rights afforded them under the California Labor Code and IWC Wage Orders. Plaintiff makes these claims against Defendants on behalf of himself and all other current and former similarly situated and/or aggrieved employees of the Defendants in California.

## IV.

## PRIVATE ATTORNEYS GENERAL ACT ("PAGA") REPRESENTATIVE ACTION DESIGNATION

51.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

52.     The Causes of Action alleged herein are appropriately suited for a Labor Code Private Attorneys General Act of 2004 ("PAGA") action because:

a) Pursuant to California Labor Code  § 2699(a), any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of the California Labor Code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and all other current or former employees pursuant to the procedures specified in § 2699;

b) This action involves allegations of violations of provisions of the California Labor Code that provide or do not provide for a civil penalty to be assessed and collected by the LWDA or any departments,

13

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

divisions, commissions, boards, agencies or employees;

c) Plaintiff is an "aggrieved employee" because he was employed by the alleged violators and had one or more of the alleged violations committed against him;

d) On February 28, 2019, Plaintiff satisfied the procedural requirements of § 2699.3 by serving the LWDA electronically and Defendants AMERIPARK, LLC via Certified Mail with the notice for wage and hour violations and penalties, including the facts and theories to support each violation. A true and correct copy of Plaintiff's notice and proof of service is attached as **Exhibit A**; and

e) More than 65 days have passed since Plaintiff served notice via Certified Mail to the LWDA and his employer. Therefore, Plaintiff satisfied all the administrative requirements to pursue civil penalties against Defendants pursuant to Labor Code § 2698, *et seq*.

53. Plaintiff files this action pursuant to Labor Code § 2699(a) and (f), on behalf of himself and all other aggrieved employees of Defendants to recover civil penalties, including unpaid wages, which are to be paid to the affected employees pursuant to Labor Code §§ 558 and 1197.1.

54. Defendants were Plaintiff's and aggrieved employees' employer or person acting on behalf of Plaintiff's employer, within the meaning of California Labor Code § 558, who violated or caused to be violated, a section of Part 2, Chapter 1 of the California Labor Code or any provision regulating hours and days of work in any order of the Industrial Welfare Commission and, as such, is subject to civil penalties for each underpaid employee, as set forth in Labor Code § 558, at all relevant times.

55. Plaintiff seeks to recover all applicable civil penalties under PAGA on behalf on himself and all other aggrieved employees of Defendants in California, including, but not limited to, all unpaid and/or underpaid wages pursuant to Labor Code § 558.

## V. CLASS ACTION DESIGNATION

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

56.     Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

57.     Plaintiff brings Causes of Action One through Eight as a Class Action pursuant to Federal Rules of Civil Procedure, Rule 23 on behalf of himself and all current and former similarly situated employees of Defendants.

58.     Plaintiff seeks to represent the following Class, which is defined as:

**The Parking Valet Class**:

"All current and former non-exempt employees who worked for Defendants in the State of California and who performed parking valet duties at any time from four years prior to the filing of this Complaint through the present."

59.     Plaintiff also seeks to represent the following Subclass, which is defined as:

**The Waiting Time Penalties Subclass:**

"All members of the Parking Valet Class, whose employment with Defendants ended at any time from three year priors to the filing of this Complaint through the present."

60.     **Reservation of Rights**: Plaintiff reserves the right to amend or modify the class definitions with greater specificity, by further division into subclasses, and/or limitation to particular issues.

61.     Causes of Action One through Eight are appropriately suited for a class action pursuant to § 382 of the Code of Civil Procedure because the following requirements are met:

**A.     Numerosity**

The members of the Class and Subclasses are sufficiently numerous to render the joinder of all their members impracticable.  While Plaintiff has not yet determined the precise number of members of the Class and Subclasses, Plaintiff is informed and believes that the Class and Subclasses likely consist of over 25 individuals.  Although the exact number is currently unknown to Plaintiff, this information is easily ascertainable from

15

Defendants' time and payroll records and other personnel records.

**B.** **Commonality and Predominance**

Common questions of law and fact exist as to all class members and predominate over any questions affecting only individual members of the Class or Subclasses. The common questions of law and fact that predominate include, but are not limited to:

a. Whether Defendants failed to permit Class members to take off-duty meal periods of at least 30 minutes for every five hours worked;

b. Whether Defendants failed to permit Class members to take off-duty rest periods of at least 10 minutes for every four hours worked, or major fraction thereof;

c. Whether Defendants failed to pay one additional hour of pay at the employees' regular rate of compensation to Class members when they were not provided with compliant and timely off-duty meal and rest periods;

d. Whether Defendants failed to provide Class members with accurate itemized wage statements showing, among other things, the number of hours worked and the correct amount of gross and net wages earned;

e. Whether Defendants failed to provide compensation to Class members for all time worked, including all minimum, regular, and overtime wages;

f. Whether Defendants failed to pay Waiting Time Penalties Subclass members all of their wages owed within the required time frames upon separation of employment;

g. Whether Defendants' tip pooling policies and practice deprived Class Members of all gratuities to which they were entitled; and

h. Whether Defendants failed to indemnify Class members for necessary business expenses incurred in direct consequence of the discharge of their duties.

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

**C.  Typicality**

Plaintiff's claims are typical of the claims of all class members because Plaintiff and all class members' claims arise from the same event, practice and/or course of conduct of Defendants.  Plaintiff and all class members sustained injuries and damages as a result of Defendants' illegal policies, practices and/or common course of conduct in violation of California wage and hour laws and/or illegal, unfair, or fraudulent business practices.

Furthermore, Plaintiff's claims under the Labor Code and the applicable IWC Wage Order are typical of the Class and Subclasses because Defendants' failure to comply with the provisions of California's wage and hour laws entitles Plaintiff and each class member to similar pay, benefits, and other relief.  Accordingly, the legal theories underlying each cause of action are the same and the remedies sought by Plaintiff and all class members are the same.

**D.  Adequacy of Representation**

Plaintiff has no fundamental conflict of interest with the Class or Subclasses he seeks to represent.  Plaintiff will adequately protect the interests of all class members because it is in Plaintiff's best interest to prosecute the claims alleged herein to obtain full compensation and penalties due to him and putative class members.

Plaintiff retained attorneys who are experienced employment law litigators with significant wage and hour and class action experience.

**E.  Superiority of Class Action**

Plaintiff believes a class action is a superior method of litigation for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is not practicable.  Class action treatment will allow similarly situated employees to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

Plaintiff knows of no difficulty that might be encountered in the management of this suit, which would preclude maintenance as a class action.

**VI.  CAUSES OF ACTION**

17

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

# FIRST CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

(Violation of Labor Code sections 226.7, 558, and 1198 and

the "Rest Periods" section of the Applicable IWC Wage Order)

(Alleged by Plaintiff Individually and On Behalf of The Parking Valet Class Against

Defendants)

62.     Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

63.     Plaintiff and Parking Valet Class members were and are non-exempt employees of Defendants in California within the meaning of the Labor Code and the applicable IWC Wage Order.

64.     Labor Code section 226.7 requires employers, including Defendants, to provide to their non-exempt employees, including Plaintiff, paid rest periods as mandated by the IWC Wage Orders.

65.     Labor Code section 1198 states that the "maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

66.     The "Rest Periods" section of the applicable IWC Wage Order states, "[e]very employer shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  … The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  It further states, "[r]est periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work.  However, the employer shall make up the missed rest period within the same workday or compensate the employee for the missed ten (10) minutes of rest time at his/her regular rate of pay within the same pay period."

18

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Furthermore, "[i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

67.    On information and belief, Plaintiff and the Parking Valet Class were subject to the same policies, practices, and procedures governing the provision and scheduling of rest periods.

68.    Plaintiff and, on information and belief, the Parking Valet Class were not authorized and permitted to take compliant rest periods because they were scheduled to work at posts where they were the only parking valet working at the time. Defendants required Plaintiff and Parking Valet Class members to remain at that post and be available to park or retrieve cars. No one was available to relieve Plaintiff and Parking Valet Class members for rest breaks when they were scheduled to work alone. As such, they remained on-duty during the entirety of their shifts and were not authorized or permitted to take rest breaks. Thus, as a result of Defendants' policies, Plaintiff's and Parking Valet Class members' rest periods were on-duty.

69.    Labor Code section 226.7(c) states, "[i]f an employer fails to provide an employee a … rest … period in accordance with a state law… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the …. rest … period is not provided."

70.    Even though Plaintiff and, on information and belief, Parking Valet Class members were not authorized and permitted to take off-duty rest periods, Defendants did not pay Plaintiff and the Parking Valet Class appropriate rest period premium wages for each day in which Defendants did not authorize and permit Plaintiff and the Parking Valet Class to take compliant rest periods, in violation of Labor Code section 226.7 and the applicable IWC Wage Order.

71.    On information and belief, Defendants have a common policy, pattern, and practice of failing to compensate Plaintiff and the Parking Valet Class with an hour of pay

19

at their regular rate of pay for the times that Plaintiff and the Parking Valet Class were not authorized to take rest periods of at least 10 minutes for each four-hour work period, or major fraction thereof.

72.     Plaintiff and the Parking Valet Class suffered and continue to suffer losses related to Defendants' failure to pay an additional hour of pay for each day a rest period was not provided and the associated use and enjoyment of compensation due and owing to them as a direct result of Defendants' Labor Code and IWC Wage Order violations.

73.     Plaintiff seeks all available remedies for Defendants' violations including, but not limited to any and all wages due, monies, and interest, to the extent permitted by law.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL PERIODS

(Violation of Labor Code §§ 226.7, 512, and 1198 and the "Meal Periods" section of the Applicable IWC Wage Order)

(Alleged By Plaintiff Individually and On Behalf of the Parking Valet Class Against Defendants)

74.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

75.     Labor Code § 512(a) provides, in part, that employers, including Defendants, "may not employ an employee for a work period of more than five hours per day without providing an employee with a meal period of not less than 30 minutes" and "may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

76.     Labor Code § 226.7 requires that employers, including Defendants, provide their employees with meal periods as mandated by the applicable Wage Order of the Industrial Welfare Commission, and prohibits employers from requiring any employee "to work during any meal … period mandated by an applicable order of the Industrial Welfare Commission."   Labor Code § 226.7(c) states, "[i]f an employer fails to provide an

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

employee a meal … period in accordance with a state law… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal … period is not provided."

77.     Labor Code § 1198 states that the "maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

78.     The "Meal Periods" section of the applicable IWC Wage Order states, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." It further states, "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of employer and employee only if the first meal period was not waived."

79.     The "Meal Periods" section of the applicable IWC Wage Order further states, "[u]nless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.  An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

80.     The "Meal Periods" section of the applicable IWC Wage Order also states, "[i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period

21

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

is not provided."

81. On information and belief, Plaintiff and the Parking Valet Class were subject to the same policies, practices, and procedures governing the provision and scheduling of meal periods.

82. On information and belief, Defendants have a pattern and practice of not providing Plaintiff and the Parking Valet Class with legally compliant 30-minute off-duty meal periods during their shifts, even though they work more than six (6) hours during their workday.

83. Plaintiff and, on information and belief, the Parking Valet Class members did not sign a valid on-duty meal period agreement at any point during their employment with Defendants.

84. Plaintiff and, on information and belief, the Parking Valet Class worked more than six (6) hours per day and do not properly waive any of their meal periods.

85. Plaintiff and, on information and belief, the Parking Valet Class were unable to take compliant meal periods because they were regularly required to remain on-duty and continue working though their meal periods. Although the nature of Plaintiff's and, on information and belief, Parking Valet Class members' work does not require them to take on-duty meal periods, Defendants' work requirements make it so that they are not relieved of all duties.

86. Therefore, as a result of Defendants' conduct, including the conduct alleged herein, Defendants violate Labor Code §§ 226.7, 512, and 1198, as well as the applicable IWC Wage Order when Defendants fail to provide Plaintiff and the Parking Valet Class members a 30-minute, duty-free meal period before the commencement of their sixth hour of work.

87. Consequently, pursuant to Labor Code § 226.7(b) and the "Meal Periods" section of the Wage Order, Defendants are required to pay Plaintiff and the Parking Valet Class one additional hour of pay at their regular rate of compensation for each day that Defendants do not provide Plaintiff and the Parking Valet Class with a 30-minute, duty-

free meal period before the commencement of their sixth hour of work.

88. Despite this obligation, Defendants do not always pay Plaintiff and, on information and belief, the Parking Valet Class one additional hour of pay at each employee's regular rate of compensation for each day that Defendants do not provide Plaintiff and the Parking Valet Class with a 30-minute, duty-free meal period before the commencement of their sixth hour of work.

89. Instead, on information and belief, Defendants had a common policy and practice of failing to compensate Plaintiff and the Parking Valet Class with an hour of pay at their regular rate of pay for the times that Defendants do not provide Plaintiff and the Parking Valet Class with a 30-minute, duty-free meal period before the commencement of their sixth hour of work, as required by Labor Code § 226.7(b) and the IWC Wage Order.

90. Thus, on information and belief, Defendants intentionally refuse to perform their obligations to provide meal periods and further fail to compensate Plaintiff and the Parking Valet Class with all owed meal premium wages as set forth by Labor Code § 226.7(b) and the IWC Wage Order.

91. Plaintiff and the Parking Valet Class suffered and continue to suffer losses related to Defendants' failure to pay an additional hour of pay for each day a legally compliant meal period is not provided and the associated use and enjoyment of compensation due and owing to them as a direct result of Defendants' Labor Code and IWC Wage Order violations.

92. Plaintiff seeks all available remedies for Defendants' violations, including, but not limited to, all wages due, monies, and interest to the extent permitted by law.

WHEREFORE, Plaintiff pray for relief as hereinafter requested.

## **THIRD CAUSE OF ACTION**

### **FAILURE TO PAY MINIMUM AND REGULAR WAGES**

(Violation of Labor Code §§ 1194, 1197, and 1198 and the "Minimum Wages" section of the

Applicable IWC Wage Order)

23

(Alleged by Plaintiff Individually and on Behalf of the Parking Valet Class Against Defendants)

93.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

94.    Labor Code § 1197 provides, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum wage so fixed is unlawful."

95.    The "Minimum Wages" section of the applicable IWC Wage Order provides that an employer may not pay employees less than the applicable minimum for all hours worked.

96.    The applicable IWC Wage Order defines the term "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

97.    Furthermore, pursuant to Labor Code § 1198, "[t]he maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

98.    Defendants failed to pay Plaintiff and, on information and belief, the Parking Valet Class at least minimum wage for all the time spent working and under the control of Defendants.

99.    Labor Code § 1194 provides, in part, that any employee receiving less than the legal minimum wage is entitled to recover in a civil action the unpaid balance of the minimum wage, including interest thereon, reasonable attorney's fees, and costs of suit.

100.   Labor Code § 1194.2 allows an employee to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon for any action under Labor Code § 1194.

101.   Plaintiff and the Parking Valet Class suffered and continue to suffer losses

24

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

related to the use and enjoyment of compensation due and owing to them as a direct result of Defendants' unlawful acts and Labor Code violations in an amount to be shown according to proof at trial and within the jurisdictional limitations of this Court.

102.   Plaintiff seeks all available remedies for Defendants' violations including, but not limited to, any and all wages due, monies, interest, liquidated damages, attorney's fees, and costs to the extent permitted by law.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## **FOURTH CAUSE OF ACTION**

### **FAILURE TO PAY ALL OVERTIME WAGES**

(Violation of Labor Code §§ 510, 1194, and 1198, and the "Hours and Days of Work" section of the Applicable IWC Wage Order)

(Alleged by Plaintiff Individually and on Behalf of the Parking Valet Class Against Defendants)

103.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

104.   Labor Code § 510 provides, "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."  The "Hours and Days of Work" section of the applicable IWC Wage Order mandate the same requirements.

105.   Labor Code § 1194 provides that any employee receiving less than the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

106.   Furthermore, pursuant to Labor Code § 1198, "[t]he maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

107.   The applicable IWC Wage Order defines the term "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

108.   In California, overtime is computed based on the regular rate of pay.  The regular rate of pay includes all different types of remuneration, including hourly earnings, salary, piecework earnings, commissions, and non-discretionary bonuses, and the value of meals and lodging.

109.   Plaintiff and, on information and belief, the Parking Valet Class regularly worked over eight hours per day and 40 hours per week while employed by Defendants. Plaintiff and, on information and belief, the Parking Valet Class did not receive all overtime compensation owed for all overtime hours worked over eight hours per day and/or 40 hours per week, and/or for every hour worked during the seventh day of work, at the applicable overtime rate during their employment with Defendants.

110.   Defendants failed to pay Plaintiff and, on information and belief, the Parking Valet Class at the proper overtime rate for all the time spent working and under the control of Defendants. Defendants failed to include all forms of compensation when calculating the regular rate of pay for purposes of calculating overtime. Defendants also failed to pay overtime compensation for all overtime hours worked over eight hours per day and/or 40 hours per week.

111.   Plaintiff and the Parking Valet Class suffered and continue to suffer losses related to the use and enjoyment of compensation due and owing to them as a direct result of Defendants' unlawful acts and Labor Code violations in an amount to be shown according to proof at trial and within the jurisdictional limitations of this Court.

112.   In addition, Defendants' failed to include all different types of remuneration when computing the rate of overtime compensation.

113.   Plaintiff seeks all available remedies for Defendants' violations including, but not limited to any and all wages due, monies, interest, attorney's fees, and costs to the extent permitted by law.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## FIFTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

(Violation of Labor Code sections 226 and 1198 and

the "Records" section of the Applicable IWC Wage Order)

(Alleged by Plaintiff Individually and On Behalf of The Parking Valet Class Against

Defendants)

114.   Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

115.   Plaintiff and Parking Valet Class members were and are non-exempt employees of Defendants in California within the meaning of the Labor Code and the applicable IWC Wage Order.

116.   Labor Code section 226(a) requires that employers, including Defendants, furnish their employees with each wage payment an accurate and itemized writing that shows gross wages earned, total hours worked, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and the portion of his or her social security number or his or her employee identification number, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

117.   Labor Code section 226(e), in part, permits employees suffering injury to collect the greater of all actual damages or the amount specified in Labor Code section 226 per violation.

27

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

118.   Labor Code section 226(e)(2)(B) states, in pertinent part, "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following: (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a)."

119.   Labor Code section 226(h) states, "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

120.   Because of the Defendants' illegal policies and procedures, Defendants failed to provide Plaintiff and Parking Valet Class members with accurate itemized wage statements that comply with the requirements of the Labor Code because the wage statements issued did not include the correct amount of gross and net wages earned as required under Labor Code section 226.

121.   Defendants knowingly and intentionally failed to provide Plaintiff and Parking Valet Class members an accurate itemized wage statement with each wage payment as required by Labor Code section 226(a). Defendants knowingly and intentionally failed to provide Plaintiff and members of the Parking Valet Class with each wage payment an accurate wage statement showing, among other things, the gross and net wages earned.

122.   Defendants' failure to provide accurate wage statements deprived Plaintiff and members of the Parking Valet Class of the ability to promptly and easily understand and question the calculation and rate of pay and hours used to calculate the wages paid by Defendants. Plaintiff and members of the Parking Valet Class, therefore, had no way to dispute any error in the payment or calculation of their wages, all of which resulted in an unjustified economic enrichment to Defendants, and Plaintiff and members of the Parking

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Valet Class suffered actual damages as a result.

123. Defendants' failure to provide accurate itemized wage statements constitutes an injury as defined under Labor Code section 226(e)(2)(B). Therefore, Plaintiff and members of the Parking Valet Class have suffered an injury for purposes of Labor Code section 226 and are entitled to recover the greater of all actual damages or the amount specified in section 226 per violation.

124. Plaintiff and Parking Valet Class members suffered and continue to suffer injuries, losses and actual damages as a direct result of Defendants' Labor Code violations, including lost interest on such wages, and expenses and attorney's fees in seeking to compel Defendants to fully perform their obligations, in an amount to be shown according to proof at trial.

125. Plaintiff seeks to recover all available remedies including, but not limited to damages, penalties, attorney's fees, costs, and injunctive relief to the fullest extent permitted by law.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## SIXTH CAUSE OF ACTION

## FAILURE TO TIMELY PAY ALL WAGES DUE UPON SEPARATION OF EMPLOYMENT

(Violations of Labor Code sections 201, 201, 203, 226.7, 510, 512, 1194, 1198, and the "Meal Periods" and "Rest Periods" section of the Applicable IWC Wage Order)

(Alleged by Plaintiff Individually and On Behalf of The Waiting Time Penalties Subclass Against Defendants)

126. Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

127. Plaintiff and Waiting Time Penalties Subclass members were and are non-exempt employees of Defendants in California within the meaning of the Labor Code and the applicable IWC Wage Order.

128. The "Rest Periods" section of the applicable IWC Wage Order states that "If

29

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided."

129. The "Meal Periods" section of the applicable IWC Wage Order also states, "[i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

130. Labor Code section 201 requires Defendants to immediately pay any wages, without abatement or reduction, to any employee who is discharged. Labor Code section 202 requires Defendants to pay any and all wages due and owing to an employee not having a written contract for a definite period, who quits his or her employment, within 72 hours of the employee quitting his or her employment, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

131. Labor Code section 203(a) states, in pertinent part, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

132. For violation of Labor Code sections 201 and 202, Labor Code section 203 causes the unpaid wages of an employee to continue as a penalty from the due date thereof, at the same rate until paid or until an action is commenced, but the wages shall not continue for more than 30 days.

133. As a result of Defendants' conduct during the applicable statutory period, Defendants willfully failed to pay Plaintiff and, on information and belief, the Waiting

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Time Penalties Subclass all wages due and owing to them, including all rest period premiums owed within the time required by Labor Code sections 201 and 202, as applicable.

134.   To date, Plaintiff has not yet received all wages due and payable, including but not limited to, rest period premium wages owed to him.  On information and belief, members of the Waiting Time Penalties Subclass have not yet received all rest premium wages due and owed to them.

135.   As a direct result of Defendants' violations alleged herein, Plaintiff and the Waiting Time Penalties Subclass members suffered and continue to suffer losses related to the use and enjoyment of wages due and owing to them, all to their respective damage in an amount to be shown according to proof at trial and within the jurisdictional limitations of this Court.

136.   Plaintiff seeks all available remedies for Defendants' violations to the fullest extent permissible.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## SEVENTH CAUSE OF ACTION

## FAILURE TO INDEMNIFY NECESSARY BUSINESS EXPENSES

(Violation of Labor Code section 2802)

(Alleged by Plaintiff Individually and On Behalf of The Parking Valet Class Against Defendants)

137.   Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

138.   Labor Code section 2802 requires an employer to indemnify their employees for all necessary expenditures or losses incurred by an employee in direct consequence of the discharge of his or her duties of employment.

139.   Labor Code section 2802(b) states, "[a]ll awards made by a court … for reimbursement of necessary expenditures" shall carry interest, at the same rate as judgments in civil actions, and said interest will accrue from the date on which the

31

employee incurred the necessary expenditure including, but not limited to, reasonable costs and attorney's fees incurred by the employee in enforcing their rights granted pursuant to Labor Code section 2802. The exact amount of the necessary expenditures or losses is in an amount to be proven at time of trial.

140. Furthermore, Labor Code section 2802(c) states, "[f]or the purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

141. Plaintiff and, on information and belief, members of the Parking Valet Class incurred business expenses in direct consequence of their job duties through the use of their personal cell phones. On information and belief, Plaintiff and the Parking Valet Class were required to use their personal cell phone to clock in and clock out for work. Despite Defendants' knowledge that Plaintiff and members of the Parking Valet Class were using their personal cell phones for work related purposes, Defendants failed to provide appropriate reimbursement for these expenses, in violation of Labor Code section 2802.

142. As a direct result of Defendants' violations alleged herein, Plaintiff and members of the Parking Valet Class suffered and continue to suffer, substantial losses related to Defendants' failure to indemnify them for the expenses and losses, including the use and enjoyment of such monies, lost interest on such monies and expenses, and attorney's fees and costs in seeking to compel Defendants to fully perform their obligations under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

143. Plaintiff seeks to recover in a civil action to the fullest extent permissible all available remedies including but not limited to the unpaid balance of the indemnification from Defendants' violations, interest thereon permitted by Labor Code section 2802(b), reasonable attorney's fees and costs of suit, declaratory relief, and any other permitted remedies including those permitted pursuant to Labor Code sections 2802. The exact amount of reimbursements, interest, costs and attorney's fees will be in an amount to be

proved at time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.*

(Alleged by Plaintiff Individually and On Behalf of The Parking Valet Class Against Defendants)

144.   Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

145.   California Business & Professions Code section 17200, *et seq.*, prohibits acts of unfair competition, which includes any "unlawful, unfair or fraudulent business act or practice..."

146.   Defendants' Labor Code and IWC Wage Order violations alleged herein constitute "unlawful, unfair or fraudulent business act or practices," which are prohibited by Business and Professions Code sections 17200-17208 and include, but are not limited to: (i) failure to provide proper meal and rest periods and pay Plaintiff and the Parking Valet Class premium wages for failure to provide compliant meal and rest periods; (ii) failure to compensate Plaintiff and the Parking Valet Class for hours worked, thereby failing to compensate them for all minimum, regular, and overtime wages due; (iii) failure to indemnify Plaintiff and the Parking Valet Class for necessary business expenses incurred in direct consequence of the discharge of their duties and under the direction of Defendants; (iv) failure to provide Plaintiff and the Parking Valet Class with accurate itemized wage statements; (v) maintaining a tip pooling policy and practice that unlawfully and improperly shared tips earned by Plaintiff and the Parking Valet Class with Defendants' owners, managers, and supervisors; (vi) failure to maintain accurate records of all gratuities received by Plaintiff and the Parking Valet Class; and (vii) failure to timely pay Plaintiff and members of the Waiting Time Penalties Subclass all wages owed upon separation of their employment with Defendants.

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

147. California Labor Code section 353 provides, "Every employer shall keep accurate records of all gratuities received by him, whether received directly from the employee or indirectly by means of deductions from the wages of the employee or otherwise."

148. California Labor Code section 351 provides, "Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for."

149. California Labor Code section 351 further provides, "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity..."

150. Plaintiff asserts that Defendants had, and continue to have a policy, practice, procedure, guideline and/or culture of instituting a tip pool. Defendants did not have a written tip pool agreement, and Plaintiff further alleges that Defendants did not distribute tips in a fair and reasonable manner.

151. Plaintiff also asserts that Defendants' tip pool policy, practice, procedure, guideline and/or culture is unlawful and improper because Defendants improperly share tips earned by valets with owners, managers, agents, and/or supervisors of Defendants. As a result of Defendants' unlawful and improper tip pooling policy, practice, procedure, guideline and/or culture, Plaintiff and other similarly situated and/or aggrieved employees, were not timely paid all gratuities given to them by patrons.

152. Plaintiff further alleges that Defendants did not, and do not have a policy, practice, procedure, guideline and/or culture of maintaining accurate records of all gratuities received in violation of California law.

153. Defendants intentionally avoided paying Plaintiff and the Parking Valet Class all wages and/or monies, and other financial obligations attached thereto, to create for Defendants an artificially lower cost of doing business, and thus, undercut its competitors.

154. Defendants lowered the costs of doing business by paying Plaintiff and the

34

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

Parking Valet Class an amount less than what is required by the California Labor Code and the applicable Wage Order of the Industrial Welfare Commission, thereby unfairly forcing Plaintiff and other similarly situated employees to perform work without fair compensation and benefits.

155.   Defendants held themselves out to Plaintiff and the Parking Valet Class as being knowledgeable about, and adhering to, the employment laws of California at all times relevant herein.  Plaintiff and the Parking Valet Class relied on and believed in Defendants' representation concerning Defendants' adherence to the California laws, all to their detriment.

156.   Defendants' scheme to lower their payroll and operation costs and thus profit, by withholding money owed to the class and withholding wages, tips, compensation and benefits, which are all the property of Plaintiff and the Parking Valet Class, in violation of the California Labor Code and the IWC Wage Orders, as alleged herein, constitutes an "unlawful, unfair or fraudulent business act or practice," under California Business and Professions Code section 17200, *et seq.*  As a result of Defendants' unfair competition, Plaintiff and the Parking Valet Class suffered injury in fact by losing money and/or property.

157.  Business and Professions Code section 17204, states, in relevant part, "[a]ctions for relief pursuant to this chapter shall be prosecuted…by…a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

158.   Defendants acquired money and property owed to Plaintiff and the Parking Valet Class by means of an unlawful practice that constitutes unfair competition as defined by Business and Professions Code section 17200, *et seq.*

159.   Plaintiff and the Parking Valet Class are persons in interest under Business and Professions Code section 17203 to whom money and property should be restored. Business and Professions Code section 17203 states, in relevant part, that "any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204."

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

160.    Plaintiff is a person who suffered injury in fact and lost money, wages, tips, compensation, and benefits, as a result of Defendants' unfair competition.  Thus, pursuant to Business and Professions Code sections 17203 and 17204, Plaintiff may pursue representative claims and relief on behalf of himself and the putative classes.

161.    Pursuant to Business and Professions Code section 17203, "[t]he court may make such orders or judgments, as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

162.    Defendants reaped unfair benefits and illegal profits at the expense of Plaintiff and the Parking Valet Class by committing the unlawful acts alleged herein.   Thus, Defendants must make restitution and/or be subject to other equitable relief pursuant to Business & Professions Code section 17203, and restore all unpaid wages to Plaintiff and the Parking Valet Class.

163.    Plaintiff and the Parking Valet Class suffered and continue to suffer loss of wages and monies, all in an amount to be shown according to proof at trial and within the jurisdiction of this Court.

164.    Plaintiff seeks all available remedies on behalf of himself and on behalf of the Parking Valet Class, including, but not limited to, restitution of all wages and all monies owed, all in an amount to be shown according to proof at trial.  All such remedies are cumulative of relief available under other laws, pursuant to Business & Professions Code section 17205.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## NINTH CAUSE OF ACTION

## WRONGFUL CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

(Violation of Labor Code § 1102.5)

(Alleged By Plaintiff Individually Against Defendants)

165.    Plaintiff hereby incorporates by reference all preceding paragraphs set forth

36

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

above as though fully set forth herein.

166.    The misconduct of Defendants in causing the constructive termination of Plaintiff on the basis of Plaintiff's reporting what he believed to be the violations of tip pooling law and his supervisor's theft of tips violated the public policy of the State of California embodied in:

    a.    *Tameny v Atlantic Richfield Co*. (1980) 27 Cal 3d 167;

    b.    The public policies set forth in the California Labor Code section 1102.5, prohibiting any person, including Defendants, from retaliating against an employee for disclosing information to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of or noncompliance with a local, state, or federal rule or regulation.

    c.    California Business and Professions Code §17200, *et seq*., which prohibits any unlawful, unfair or fraudulent business act or practice; and

    d.    All other state and federal statutes, regulations, administrative orders and ordinances which effect society at large and which discovery will reveal were violated by all Defendants.

167.    Plaintiff reported to Defendants what he reasonably believed to be unlawful activities. Said unlawful activities include:

    a)    His supervisor's theft of tips through his supervisor's participation in valet tip pool; and

    b)    His supervisor's theft of tips through his supervisor's participation in multiple tips pools and/or for hours that his supervisor did not work, which had the effect of diluting the tip pool and allowing his supervisor to take additional tips in a manner that was disproportionate to other employees.

168.    Plaintiff's complaints regarding this belief that his supervisor violated the tip pooling laws and stole tips were a substantial motivating reason for Defendants' actions.

37

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

These actions by Defendants included, but are not limited to, treating Plaintiff in a hostile manner during subsequent interactions and intensively, double checking everything Plaintiff did in an overly critical manner. Defendants further reduced Plaintiff's schedule by cutting his hours and the days he worked. Defendants began switching the location where Plaintiff worked and the days he was scheduled to work without informing Plaintiff of the change. Furthermore, Defendants began writing up Plaintiff and suspended him without pay for pretextual offenses.

169.  As a result of the Defendant's retaliatory conduct, including suspending Plaintiff without pay, and the lack of suitable seating, the working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign.

170.  Defendant intentionally created or knowingly permitted these working conditions.

171.  Plaintiff resigned because of these working conditions.

172.  As a legal (proximate) result of Defendants' actions against Plaintiff, Plaintiff has been harmed in that he has suffered the loss of wages, salary, benefits, raises, retirement, and additional amounts of money Plaintiff would have received had Plaintiff been retained in Plaintiff's position. Plaintiff has been damaged according to proof at trial.

173.  On information and belief, Defendants' conduct was malicious, fraudulent and/or oppressive and done with reckless disregard for Plaintiff's rights.

174.  Defendants' conduct in confirming, ratifying and approving the conduct of its management employees was done with the knowledge that it would cause Plaintiff severe emotional distress and hardship and was done with a wanton and reckless disregard of the consequences to Plaintiff.

175.  As a further legal (proximate) result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered the intangible loss of employment-related opportunities and experience in the position which Plaintiff would have garnered. Plaintiff has been damaged according to proof at trial.

176.    As a further legal (proximate) result of Defendants' conduct, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered and continues to suffer humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body. Plaintiff has been damaged in an amount according to proof at trial.

177.    As a result of Defendants actions, Plaintiff suffered special and general damages.

178.    In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff and Plaintiff is therefore entitled to punitive damages according to proof at the time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

## TENTH CAUSE OF ACTION
## UNLAWFUL RETALIATION

(Violation of Labor Code § 1102.5)

(Alleged By Plaintiff Individually Against Defendants)

179.    Plaintiff hereby incorporates by reference all preceding paragraphs set forth above as though fully set forth herein.

180.    Labor Code § 1102.5 provides that any employer, or any person acting on behalf of the employer shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discovery, or correct the violation or noncompliance. An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a person with authority over the employee or another employee who has the authority to investigate, discovery, or correct the violation, if the employee has reasonable cause to believe that the information discloses a violation of state of federal statute, regardless of whether disclosing the information is part of the employee's job duties.

181.    Plaintiff is informed and believes, and thereon alleges, Defendants retaliated

39

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

against Plaintiff for reporting what he reasonably believed to be unlawful activity. Said unlawful activity includes:

    a) His supervisor's theft of tips through his supervisor's participation in valet tip pool; and

    b) His supervisor's theft of tips through his supervisor's participation in multiple tips pools and/or for hours that his supervisor did not work, which had the effect of diluting the tip pool and allowing his supervisor to take additional tips in a manner that was disproportionate to other employees.

182. Defendants retaliated against Plaintiff by initially treating Plaintiff in a hostile manner during subsequent interactions and intensively, double checking everything Plaintiff did in an overly critical manner. Defendants further reduced Plaintiff's schedule by cutting his hours and the days he worked. Defendants began switching the location where Plaintiff worked and the days he was scheduled to work without informing Plaintiff of the change. Furthermore, Defendants began writing up Plaintiff and suspended him without pay for pretextual offenses.

183. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred general and special damages, the full extent of which are uncertain at this time, but which are within the jurisdiction of this court.

184. As a direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, equity and other employment benefits and has incurred other economic losses.

185. As a further direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all adding to the Plaintiff's damages in an amount to be proven at time of trial.

186. In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff, and Plaintiff is therefore entitled to punitive damages according to proof at the time of trial.

WHEREFORE, Plaintiff prays for relief as hereinafter requested.

# ELEVENTH CAUSE OF ACTION

# PRIVATE ATTORNEYS GENERAL ACT OF 2004 CLAIM FOR CIVIL PENALTIES

(Violation of Labor Code §§ 2698 *et seq.*)

(Alleged By Plaintiff On Behalf of All Aggrieved Employees of Defendants Against All Defendants)

187.   Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above, as though fully set forth herein.

188.   Pursuant to Labor Code § 2699(a), any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Labor Code § 2699.3.

189.   This cause of action involves allegations of violations of Labor Code §§ 201, 202, 203, 204, 210, 226.3, 226.7, 351, 558, 558.1, 1102.5, 1194, 1198, and 2802, which, pursuant to Labor Code § 2699.5, provide for a civil penalty to be assessed and collected by the LWDA or recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Labor Code § 2699.3.

190.   Defendants employed Plaintiff and Plaintiff had one or more of the alleged violations committed against him. Therefore, Plaintiff is an "aggrieved employee" under PAGA because the alleged violator employed him and he had one or more of the alleged violations committed against him. As such, Plaintiff is properly suited to represent the interests of other aggrieved employees in a PAGA Representative action.

191.   Plaintiff seeks to recover civil penalties, including underpaid wages pursuant to Labor Code § 558, on behalf of himself and other aggrieved employees for Defendants' violations of the Labor Code, including but not limited to Defendants' violations of Labor

41

Code §226.7.

192. For all provisions of the Labor Code for which a civil penalty is not specifically provided, Labor Code § 2699(f) imposes upon Defendants, and each of them, a penalty of one hundred dollars ($100.00) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation.

193. Defendants violated Labor Code §§ 226.7 and 1198 by failing to authorize and permit Plaintiff and aggrieved employees to take duty-free meal and rest periods and by failing to pay them meal and rest period premium wages for each day a meal and/or rest period was not provided. Under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code §§ 226.7 and 1198, and $200 for each aggrieved employee per pay period for each subsequent violation.

194. Defendants violated Labor Code §§ 201, 202, and 1198 by not paying Plaintiff and aggrieved employees all meal and rest premium wages owed by the time set forth by law upon their separation of employment, as alleged herein. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code §§ 201, 202, and 1198, and $200 for each aggrieved employee per pay period for each subsequent violation.

195. Defendants violated Labor Code §§ 204 and 1198 by not paying Plaintiff and aggrieved employees all meal and rest premium wages owed by the time set forth by law during their employment, as alleged herein. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code §§ 204 and 1198, and $200 for each aggrieved employee per pay period for each subsequent violation.

196. Under Labor Code § 210(a), Defendants, in addition to, and entirely independent and apart from any other penalty, is subject to a civil penalty for failing to pay the wages of each aggrieved employee as provided in Labor Code § 204, as follows: (1)

42

For any initial violation, one hundred dollars ($100) for each failure to pay each aggrieved employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each aggrieved employee, plus 25 percent of the amount unlawfully withheld. This amount shall be recovered on behalf of the Labor Commissioner.

197. Defendants violated Labor Code §§ 226(a) by knowingly and intentionally failing to maintain and provide Plaintiff and other aggrieved employees of Defendants with wage statements itemizing accurately all information required by Labor Code § 226(a), as alleged herein, because the wage statements not include the correct amount of gross and net wages earned. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code §§ 226(a) and 1198, and $200 for each aggrieved employee per pay period for each subsequent violation.

198. Alternatively, Labor Code § 226.3 provides for a civil penalty in the amount of $250 per violation in an initial citation and $1,000 for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of § 226.

199. Defendants are and were Plaintiff's and other aggrieved employees' employers, or persons acting on their behalf, within the meaning of Labor Code § 558, who violated or caused to be violated, a section of Part 2, Chapter 1 of the Labor Code or any provision regulating hours and days of work in any IWC Wage Order and, as such, is subject to civil penalties for each underpaid employee as set forth in Labor Code § 558.

200. Labor Code § 558 also imposes upon Defendants for each initial violation of the Hours and Days of Work section of the applicable IWC Wage Order a civil penalty of $50.00 for each aggrieved employee for each pay period for which the aggrieved employee was not provided with a paid uninterrupted 10-minute rest period and/or required to work off the clock, as alleged herein. Furthermore, Labor Code § 558 imposes upon Defendants for each subsequent violation of the Hours and Days of Work section of the applicable

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

IWC Wage Order a civil penalty of $100.00 for each aggrieved employee for each pay period for which the aggrieved employee was not provided with a paid uninterrupted 10-minute rest period and/or required to work off the clock, as alleged herein. As set forth in *Thurman v. Bayshore Transit Management*, 203 Cal.App.4th 1112, 1153 (2012), the Hours and Days of Work section of the Wage Order also covers failure to provide rest periods and Plaintiff may therefore recover civil penalties, including the underpaid wages, under Labor Code § 558 for each such violation.

201. Section 14 of the applicable IWC Wage Order states: "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. When the employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

202. Defendants violated Labor Code section 1198 and section 14 of the applicable IWC Wage Order because Plaintiff and other aggrieved employees were not provided with suitable seats during their workday, even if they were not engaged in active duties and when the use of seats would not interfere with the performance of their job duties.

203. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of section 14 of the applicable IWC Wage Order and Labor Code § 1198, and $200 for each aggrieved employee per pay period for each subsequent violation.

204. Labor Code section 351 makes it unlawful for an employer to collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron.

205. Defendants violated Labor Code section 351 because Defendants improperly shared tips earned by valets with owners, managers, agents, and/or supervisors of Defendants. As a result of Defendants' unlawful and improper tip pooling policy, practice, procedure, guideline and/or culture, Plaintiff and other similarly situated and/or aggrieved

44

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

employees, were not timely paid all gratuities given to them by patrons.

206. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code section 351, and $200 for each aggrieved employee per pay period for each subsequent violation.

207. Defendants violated Labor Code § 2802 because Defendant required Plaintiff and other aggrieved employees to use their personal cells to clock in and out for work. Nevertheless, Defendant failed to reimburse Plaintiff and aggrieved employees for this expense.

208. Thus, under Labor Code § 2699(f)(2), Defendants are subject to a civil penalty of $100 for each aggrieved employee per pay period for the initial violation of Labor Code §2802, and $200 for each aggrieved employee per pay period for each subsequent violation.

209. Defendants violated Labor Code section 1102.5 when it retaliated against Plaintiff for disclosing information to a person with authority over Plaintiff or another employee who has the authority to investigate, discover, or correct the violation or noncompliance when Plaintiff had a reasonable cause to believe that his supervisor violated local, state, or federal law, rules or regulations.

210. Thus, Defendants are subject to a civil penalty of up to $10,000 for it violation of Labor Code section 1102.5.

211. For bringing this action, Plaintiff is additionally entitled to attorney's fees and costs incurred herein.

212. Plaintiff seeks to recover civil penalties on behalf of himself and other aggrieved employees for Defendants' violations of the Labor Code, including but not limited to Defendants' violations of Labor Code §§ 201, 202, 203, 204, 210, 226.3, 226.7, 351, 558, 558.1, 1102.5, 1194, 1198, and 2802, pursuant to Labor Code § 2698, *et seq*. The exact amount of the applicable penalties is in an amount to be shown according to proof at trial and within the jurisdictional limitations of this Court.

## **PRAYER FOR RELIEF**

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

WHEREFORE**,** Plaintiff prays for judgment against Defendants as follows:

    a.    For general damages;

    b.    For special damages;

    c.    For punitive damages;

    d.    For actual damages pursuant to Labor Code § 226(e);

    e.    For reasonable attorneys' fees, costs of suit, and interest to the extent permitted by law, including pursuant to Code of Civil Procedure § 1021, Labor Code §§ 226, 2802, and 2698, *et seq.*

    f.    For civil and statutory penalties to the extent permitted by law, including those pursuant to the Labor Code, the Private Attorney General Act, and the Orders of the Industrial Welfare Commission;

    g.    For penalties for each initial and subsequent violation for each underpaid employee for each pay period for which the employee was underpaid, and an amount sufficient to recover the underpaid wages pursuant to Labor Code §§ 226.7 and 558;

    h.    For injunctive relief as provided by the Labor Code including but not limited to § 226(g) of the Labor Code, and Business and Professions Code §17200 *et seq.*;

    i.    For restitution as provided by Business and Professions Code §17200 *et seq.*;

    j.    For an order requiring Defendants to restore and disgorge all funds to Plaintiff acquired by means of any act or practice declared by this Court to be unlawful, unfair or fraudulent and, therefore, constituting unfair competition under Business and Professions Code §17200 *et seq*;

    k.    For an award of damages in the amount of unpaid compensation and monies including, but not limited to actual damages, unpaid wages, waiting time penalties and other penalties according to proof, including interest thereon;

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

l.    For an award of an additional hour of pay at the regular rate of compensation pursuant to Labor Code §226.7(b) for each rest period not in accordance with an applicable Order of the Industrial Welfare Commission;

m.    For penalties for each initial and subsequent violation for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover the underpaid wages pursuant to Labor Code §558;

n.    For waiting time penalties pursuant to Labor Code §203;

o.    For an order imposing a constructive trust upon the Defendants to compel them to transfer wages that have been wrongfully obtained and held by Defendants to unpaid employees;

p.    For an accounting to determine all money wrongfully obtained and held by Defendants;

q.    For indemnification of all losses incurred as a result of employment with Defendants, with interest;

r.    For a declaratory judgment that Defendants have violated Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7, 226.8, 351, 510, 512, 1194, 1197, 1198, and 2802, and the "Hours and Days of Work," "Rest Periods," and "Seats" sections of the Wage Order of the Industrial Welfare Commission;

s.    For pre and post-judgment interest; and

t.    For such other relief as the Court deems just and proper.

Dated: October 29, 2020             GRAHAM**HOLLIS** APC


By:  /s/ Nathan Reese
          GRAHAM HOLLIS
          NATHAN REESE
          Attorneys for Plaintiff
          CARTER POOL

**FIRST AMENDED CLASS ACTION AND PAGA COMPLAINT**

GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Nathan Reese (SBN 283150)
nreese@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff CARTER POOL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER POOL, in a representative capacity, and on behalf of all similarly situated and aggrieved current and former employees of Defendants in the State of California, <br><br> Plaintiff, <br><br> v. <br><br> AMERIPARK, LLC, a Georgia Limited Liability Company; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 3:19-cv-01103-LAB-WVG <br><br> **CERTIFICATE OF SERVICE** |

///

///

///

///

///

///

///

///

///

///

# CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

I am employed in the State of California, County of San Diego. I am over the age of 18 and not a party to the within suit: my business address is 3555 Fifth Avenue, Suite 200, San Diego, California 92103.

On October 29, 2020, I served the documents described as:

## 1. SECOND AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT

on the interested parties in this action by sending on the interested parties in this action [ ] the original [or] [ X ] a true copy thereof [X ] to interested parties as follows:

**AKERMAN LLP**
MARISSA H. ALGUIRE
marissa.alguire@akerman.com
DAMIEN P. DELANEY
Damien.delaney@akerman.com
CORINA VALDERRAMA
Corina.valderrama@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

☒ **BY ECF:** I hereby certify that this document was served by San Diego, California, by ECF delivery on the parties listed herein at their more recent known email addresses or e-mail of record in this action.

☒ **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

☐ **(BY MAIL):** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of GRAHAMHOLLIS APC's practice for collecting and processing correspondence for mailing. On the same day that correspondence is place for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of October, 2020, at San Diego, California.

_____
Maggie Valdez

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE
SAN DIEGO, CALIFORNIA 92103

# EXHIBIT 2

## Magdalena Valdez

**From:**        FormAssembly <no-reply@formassembly.com> on behalf of DIR PAGA Unit
                     <lwdadonotreply@dir.ca.gov>
**Sent:**          Tuesday, February 09, 2021 4:36 PM
**To:**            Magdalena Valdez
**Subject:**       Thank you for your Proposed Settlement Submission

02/09/2021 04:35:55 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

# EXHIBIT 3



**Appointed as Class Counsel[1] for the following wage and hour employment law cases:**

**United States District Court - Central District**:

- *Corral v. Lifecare Solutions* settled for $3 million on behalf of approximately 270 class members, and Judge Olguin awarded 30% in fees.

- *Ellis v. Pacific Bell Telephone Co.* settled for $3.1 million on behalf of approximately 84 class members, and Judge Carney awarded 33.3% in fees.

- *Green v. Lawrence Service Co.* settled for $60,000 on behalf of approximately 295 class members, and Judge Kronstadt awarded $141,659.07 in fees.

- *Madera v. Universal Alloy Corporation* settled for $4.75 million on behalf of approximately 744 class members, and Judge Selna awarded 25% in fees.

- *Potter v. Big Tex Trailer Manufacturing, Inc.,* settled for $972,391.68 on behalf of approximately 104 class members, and Judge Gutierrez awarded 33% in fees.

- *Rodriguez v. Old Dominion Freight Line, Inc.,* settled for $3.4 million on behalf of approximately 76 class members, and Judge Fischer awarded 27.5% in fees.

- *Weaver v. Hallmark Marketing Corp.* settled for $5.625 million on behalf of approximately 3,846 class members, and Judge Fairbanks awarded 33% in fees.

**United States District Court – Eastern District**:

- *Milburn v. Petsmart, Inc.* settled for $1,350,000 on behalf of approximately 2,984 class members, and Judge Drozd awarded 33% in fees.

- *Osegueda v. Northern California Inalliance* settled for $225,000 on behalf of approximately 271 class members, and Judge Shubb awarded 33.33% in fees.

**United States District Court – Northern District**:

- *Aston v. United Parcel Services, Inc.,* settled for $490,000 on behalf of approximately 2,000 class members, and Judge White awarded 33.33% in fees.

- *Delatorre v. Johnson Controls, Inc.,* settled for $2.8 million on behalf of approximately 1,441 class members, and Judge Grewal awarded 25% in fees.

---

[1] List includes cases filed by Graham Hollis, A.P.C., as well as its predecessor entities.  It also includes cases where other law firms were appointed as co-class counsel.



- *Fong v. Regis Corporation* settled for $5,750,000, on behalf of approximately 5,573 class members, and Judge Chhabria awarded 33% in fees.

- *Jimenez v. Menzies Aviation* settled for $1,250,000 on behalf of 5,175 class members, and Judge Orrick awarded 33% in fees.

- *Moore v. Petsmart, Inc.,* settled for $10 million on behalf of approximately 19,701 class members, and Judge Davila awarded 27% in fees.

<u>**United States District Court – Southern District**</u>:

- *Birch v. Office Depot, Inc.,* settled for $14 million on behalf of approximately 16,722 class members, and Judge Sabraw awarded 40% in fees.

- *Cook v. Tiffany and Company* settled for $4,148,270 on behalf of approximately 1,584 class members, and Judge Lorenz awarded 24.8% in fees.

- *Ferguson v. Winston Retail Solutions* settled for $750,000 on behalf of approximately 660 class members, and Judge Battaglia awarded 33.33% in fees.

- *Lopez v. GAT Airline Ground Support, Inc.,* settled for $600,000 on behalf of approximately 1,394 class members, and Judge Battaglia awarded 25% in fees.

- *Singer v. Becton Dickinson and Co.* settled for $1 million on behalf of approximately 266 class members, and Judge Gonzalez awarded 33.33% in fees.

<u>**Superior Court for the County of Alameda:**</u>

- *Hobdy v. Landmark Event Staffing Services, Inc.,* settled for $245,100 on behalf of approximately 3,671 class members, and Judge Hernandez, Jr., awarded 33.33% in fees.

- *Roberson v. Center for the Elders' Independence* is an ongoing case and has been conditionally approved by Judge Smith.

<u>**Superior Court for the County of Contra Costa**</u>:

- *Stevenson v. Falcon Critical Care Transport* settled for $233,853 on behalf of approximately 46 class members, and Judge Goode awarded 29% in fees.

<u>**Superior Court for the County of Fresno**</u>:

- *Drake v. Midvalley Disposal, LLC* before Judge Snauffer, settled for $150,000 on behalf of approximately 315 class members, and Judge McGuire awarded 33.33% in fees.



- *Kenner v. Oak Harbor Freight Lines, Inc.,* settled for $1,850,000 on behalf of approximately 216 class members, and Judge Snauffer awarded 27% in fees.

- *Parmelee v. Driveline Retail Merchandising, Inc.,* settled for $1,000,000 on behalf of approximately 1,261 class members, and Judge Kapetan awarded 33.33% in fees.

**Superior Court for the County of Kern**:

- *McGough v. Love's Travel Stops & Country Stores, Inc.,* settled for $3,000,000 on behalf of approximately 1,638 class members, and Judge Schuett awarded 33.33% in fees.

**Superior Court for the County of Los Angeles**:

- *Agredano v. Southwest Water Company* settled for $1,220,000 on behalf of approximately 125 class members, and Judge Nelson awarded 33.33% in fees.

- *Calhoun v. General Petroleum Corp.* settled for $950,000 on behalf of approximately 300 class members, and Judge Dunn awarded 40% in fees.

- *Frugard v. Unified Protective Services, Inc.,* is an ongoing case which has been certified as a class action by Judge Johnson.

- *Garcia v. Menzies Aviation, Inc.,* settled for $1,000,000 on behalf of approximately 1,800 class members, and Judge Rosenblatt awarded 33.33% in fees.

- *Gordon v. Accountable Healthcare Staffing, Inc.,* settled for $900,000 on behalf of approximately 560 class members, and Judge Buckley awarded 33.33% in fees.

- *Iskandaryan v. Casual Male Retail Group, Inc.,* settled for $950,000 on behalf of approximately 716 class members, and Judge Stern awarded 33.33% in fees.

- *Lucarini v. Dresser, Inc.,* settled for $1.024 million on behalf of approximately 78 class members, and Judge Mohr awarded 39.55% in fees.

- *Magana-Mead v. LKQ Corporation* was settled for $1,150,000 on behalf of 303 class members, and Judge Nelson awarded 33% in fees.

- *Mahoney v AT&T Corp.* settled for $13,894,098.62 on behalf of approximately 719 class members, and Judge Elias awarded 33.33% in fees.

- *Solaberrieta v. Baker Hughes Oilfield Operations* settled for $3.5 million on behalf of approximately 295 class members, and Judge Wiley awarded 33.33% in fees.

- *Taylor v. Cross Country Support Services* settled for $582,000.00 on behalf of 581 class members, and Judge Nelson awarded 33.33% in fees.



- *Williams v. One Legacy* settled for $1.2 million on behalf of approximately 145 class members, and Judge Johnson awarded 33% in fees.

- *Wright v. AMF Bowling Centers, Inc.,* settled for $6.35 million on behalf of approximately 4,914 class members, and Judge Duffy-Lewis awarded 28% in fees.

- *Wright v. Menzies Aviation, Inc.,* was certified as a class action by Judge Weintrob and was consolidated with *Jimenez v. Menzies Aviation, Inc.* for settlement purposes.

**Superior Court for the County of Orange**:

- *Collins v. The Stephouse Recovery, Inc.,* settled for $1,200,000 on behalf of approximately 150 class members, and Judge Claster awarded 35% in fees.

- *Duarte v. Rainbow Disposal Co., Inc.,* settled for $1.6 million on behalf of approximately 110 class members, and Judge Andler awarded 40% in fees.

- *Flannery v. AGR Group California* settled for $1,324,937 on behalf of approximately 5,182 class members, and Judge Andler awarded 33% in fees.

- *Jenkins v. The Mentor Network, Inc.,* settled for $1,625,000 on behalf of approximately 1050 class members, and Judge Perkins awarded 33% in fees.

- *Payton v. Atlantic Aviation Investors, Inc.,* settled for $1 million on behalf of approximately 162 class members, and Judge Stock awarded 40% in fees.

- *Parnell v. Hart-Hanks Shoppers, Inc.,* settled for $600,000, on behalf of approximately 169 class members, and Judge Andler awarded 33.33% in fees.

- *Sheehan v. Applied Medical Products,* Judge Claster approved the settlement of $2,750,000 on behalf of approximately 2,012 class members.

- *Valenzuela v. Enver Solar, Inc.,* settled for $575,000 on behalf of approximately 1,440 class members, and Judge Sanders awarded 35% in fees.

**Superior Court for the County of Riverside**:

- *Digiacomo v. Castelli's Ristorante* settled for $225,000 on behalf of approximately 35 class members, and Judge Waters awarded 33% in fees.

- *Leonard v. ABTTC, Inc.,* settled for $2.5 million on behalf of approximately 336 class members, and Judge Riemer awarded 33% in fees.

- *Loudon v. DHSE, Inc.,* (Representative Action) settled for $650,000 on behalf of approximately 860 employees, and Judge Waters awarded 33.33% in fees.



- *Vest v. Scher Tire, Inc.,* settled for $3,363,396 on behalf of approximately 795 class members, and Judge Waters awarded 33.33% in fees.

**Superior Court for the County of San Bernardino**:

- *Alvarez v. Core States, Inc.,* settled for $530,000 on behalf of approximately 45 class members, and Judge Garza awarded 40% in fees.

- *Booher v. The Poma Companies* settled for $650,000 on behalf of approximately 75 class members, and Judge Plotkin awarded 44% in fees.

- *Bracy v. Speedy Cash* settled for $237,320 on behalf of approximately 222 class members, and Judge Kayashima awarded 22.69% in fees.

- *Jeffries v. Praxair Services, Inc.,* settled for $373,000 on behalf of approximately 23 class members, and Judge Garza awarded 35% in fees.

- *Malone v. Praxair, Inc.,* settled for $900,000 on behalf of approximately 57 class members, and Judge Davis awarded 40% in fees.

- *Scaglione v. M.O. Dion & Sons, Inc.,* settled for $585,000 on behalf of approximately 123 class members, and Judge Garza awarded 30% in fees.

**Superior Court for the County of San Diego**:

- *Arriaga v. International Coffee & Tea* settled for $1,250,000 on behalf of 479 class members, and Judge Bacal awarded 33.33% in fees.

- *Barron v Green Farms, Inc.,* settled for $650,000 on behalf of approximately 154 class members, and Judge Pollak awarded 33.33% in fees.

- *Bergman v. BJS&T Enterprises, Inc.*, is an ongoing case and has been conditionally approved by Judge Frazier

- *Chavez v. Real Time Staffing Services, Inc.,* settled for $1.9 million on behalf of approximately 3,120 class members, and Judge Medel awarded 35% in fees.

- *Clancy v. Scripps Health* settled for $6.4 million on behalf of approximately 124 class members, and Judge Meyer awarded 33% in fees.

- *Costa v. Altman Specialty Plants, Inc.,* settled for $2,400,000 on behalf of approximately 4,414 class members, and Judge Hayes awarded 33.33% in fees.

- *Dadafshar v. KT Hotels, LLC, dba Pendry Hotel* settled for $515,000 on behalf of 892 class members, and Judge Pollack awarded 33.3% in fees.



- *De La Rosa v. Quten Research Institute, LLC,* settled for $450,000 on behalf of approximately 402 class members, and Judge Meyer awarded 33.33% in fees.

- *Demers v. Hotcakes No. 3, Inc.,* settled for $150,000 on behalf of approximately 300 class members, and Judge Nevitt awarded 33% in fees.

- *Downey v. Sears Roebuck and Co.* (Representative Action) settled for $875,000 on behalf of approximately 1,200 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Escoto-Miranda v. Evans Tire & Service Centers, Inc.,* settled for $800,000 on behalf of approximately 450 class members, and Judge Strauss awarded 33% in fees.

- *Falcon v. Flight Suits, Inc.,* settled for $450,000 on behalf of approximately 101 class members, and Judge Denton awarded 33.33% in fees.

- *Fay v Cement Cutting, Inc.,* settled for $720,000 on behalf of approximately 376 class members, and Judge Bacal awarded 33.33% in fees.

- *Fennessey v. Round Table Pizza, Inc.,* settled for $2,125,000 on behalf of approximately 16,333 class members, and Judge Lewis awarded 28% in fees.

- *Frayre v. United Parcel Services Supply Chain Services, Inc.,* settled for $494,000 on behalf of approximately 55 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Garcia v. Task Ventures, LLC*, settled for $822,856.50 on behalf of approximately 2,700 class members, and Judge Wohlfeil awarded 40% in fees.

- *Geilenfeldt v. EDF Renewable Energy, Inc.,* settled for $2,500,000 on behalf of approximately 144 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Huerta v. Venture Petroleum Company, Inc.*, settled for $300,000 on behalf of approximately 513 class members, and Judge Wohlfeil awarded 33.33% in fees.

- *Irmen v. Raphael's Party Rentals* settled for $1 million on behalf of approximately 845 class members, and Judge Lewis awarded 40% in fees.

- *Johnson v. The SoCo Group, Inc.*, settled for $895,000 on behalf of approximately 218 class members, and Judge Lewis awarded 33.33% in fees.

- *Julio v. L&M Tire Company, Inc.,* settled for $1.85 million on behalf of approximately 1,087 class members, and Judge Barton awarded 33% in fees.

- *Loveless v ASM Affiliates* settled for $750,000 on behalf of approximately 276 class members, and Judge Styn awarded 33.33% in fees.



- *Madriz v. North County Ford, Inc.,* settled for $188,000 on behalf of approximately 45 class members, and Judge Wohfeil awarded 33.33% in fees.

- *Martinez v. San Diego Auto Scrubber, Inc.,* settled for $500,000 on behalf of approximately 148 class members, and Judge Hayes awarded 33.33% in fees.

- *Morales v. Sony Electronics, Inc.,* settled for $450,100 on behalf of approximately 4,742 class members, and Judge Styn awarded $296,275 in fees.

- *Solis v. Check Agencies of California, Inc.,* settled for $475,000 on behalf of approximately 559 class members, and Judge Taylor awarded 35% in fees.

- *Thompson v. LawInfo.com, Inc.,* settled for $150,000 on behalf of approximately 115 class members, and Judge Enright awarded 33.33% in fees.

- *Well v. Hooters of America, Inc.,* settled for $1.35 million on behalf of approximately 2,300 class members, and Judge Wohfeil awarded 35% in fees.

**Superior Court for the County of San Francisco**:

- *Casas v. Pacific Bell Telephone Co.* settled for $6 million on behalf of approximately 464 class members, and Judge Goldsmith awarded 23% in fees.

- *Simpkins v. GPS Consumer Direct, Inc.*, is an ongoing case and has been conditionally approved by Judge Cheng.

**Superior Court for the County of Santa Barbara:**

- *Ramirez v Baker Hughes Oilfield Operations (Baker Hughes Wage and Hour Cases)* settled for $2,750,000 on behalf of 165 class members, and Judge Anderle awarded 33.33% in fees.

**Superior Court for the County of Santa Clara**:

- *Allison v. Super Zen, Inc.*, settled for $235,300 on behalf of approximately 26 class members, and Judge Lucas awarded 33.33% in fees.

- *Ledbetter v. Entrepreneurial Ventures, Inc.,* settled for $1.8 million on behalf of approximately 754 class members, and Judge Overton awarded 33.33% in fees.

- *Letuligasenoa v. International Paper Company* settled for $4,500,000 on behalf of approximately 3,786, and Judge Errand awarded 33.33% in fees with a 1.47 multiplier.

- *Suarez v. First Alarm Security & Patrol, Inc.*, settled for $7,250,000 on behalf of approximately 3,786, and Judge Walsh awarded 33.33% in fees.



- *Subia v. National Securities Industries, Inc.,* settled for $275,000 on behalf of approximately 187 class members, and Judge Lucas awarded 30% in fees.

**Superior Court for the County of Solano**:

- *Saechao v. Pla-Fit Franchise d.b.a. Planet Fitness* settled for $325,000 on behalf of approximately 149 class members, and Judge Mattice awarded 25% in fees.

- *Stafford v. Dollar Tree Stores, Inc.,* settled for $4,600,000 on behalf of approximately 7,737 class members, and Judge Beeman awarded 33.33% in fees.

- *Turnage v. Park Management Corporation* settled for $400,000 on behalf of approximately 214 class members, and Judge Daniels awarded 33.33% in fees.

**Superior Court for the County of Tulare**

- *Lopez v. Ruiz Food Products, Inc*., settled for $547,500 on behalf of approximately 2,233 class members, and Judge Hillman awarded 33% in fees.

**Superior Court for the County of Ventura**:

- *Jackson v. Vulcan Materials Co.* settled for $800,000 on behalf of approximately 103 class members, and Judge Bysshe awarded 37.5% in fees.

- *Laux v. Van Nuys Skyways, Inc.,* settled for $800,000 on behalf of approximately 70 class members, and Judge Riley awarded 35% in fees.

**Serving as Plaintiffs' Counsel in the following wage and hour employment law class/representative action cases:**

**United States District Court – Central District:**

- *Valentine v. Rehabilitation Center of Santa Monica Holding Company GP* before Judge Wu

**United States District Court – Eastern District**:

- *Rough v. Costco Wholesale Corporation* before Judge England

- *Stoddart v. Express Services, Inc.,* before Judge Mueller

**United States District Court – Southern District:**

- *Ceron de Orozco v. Flagship Facility Services, Inc.,* before Judge Sammartino

- *Maharaj v. Charter Communications, Inc.*, before Judge Bashant



- *Pool v. Ameripark, LLC*, before Judge Burns

- *Stewart v. Quest Diagnostics Clinical Laboratories, Inc.,* before Judge Sabraw

**Superior Court for the County of Alameda**:

- *Bechere v. Ralphs Grocery Company* (Representative Action) before Judge Smith

- *Lee v. Sutter Bay Medical Foundation* before Judge Petrou

- *Soderlund v. Jon K. Takata Corporation dba Restoration Management Company* before Judge Smith

**Superior Court for the County of Los Angeles**:

- *Escalante v. Urth Payroll Services, Inc.,* (Representative Action) (case not yet assigned)

- *Fernandez v. Prime Healthcare Services, Inc.,* (Representative Action) before Judge Keeny

- *Jackson v. Sourcecorp BPS, Inc.,* before Judge Nelson

- *Jones v. Cedars-Sinai Medical Center* (Representative Action) before Judge Mooney

- *Lopez v. Kazi Foods, Inc.*, before Judge Hogue

- *Quinones v. Atria Management Company, LLC*, before Judge Buckley

- *Ralda v. Smart & Final Stores, LLC*, before Judge Kuhl

- *Silva v LK&M Wall Corp.* before Judge Berle

- *Summa v. LF Sportswear, Inc.*, before Judge Berle

- *Valles v. Anthony, Inc.,* (Representative Action) before Judge Sadvig

- *Whittington v. Eureka* (Representative Action) before Judge Hill

**Superior Court for the County of Orange**:

- *Blackwood v. Solid Landings Behavioral Health, Inc.,* before Judge Sherman

- *Brodhagen v. Sequoia Management Services, LLC*, before Judge Claster

- *Chima v. Beckman Coulter, Inc.*, before Judge Wilson

- *Dilorenzo v. Healthy Healing Holistic Options dba Showgrow* before Judge Sherman



- *Lawson v. Executive Maintenance, Inc.,* before Judge Wilson

- *Valdez v. Lexington Home Mortgage Company* before Judge Wilson

**Superior Court for the County of Riverside:**

- *Steppe v. Responsible Medical Solutions Corp* before Judge Riemer

**Superior Court for the County of Sacramento**:

- *Johnson v. PMC Southwest, LLC,* before (case not yet assigned)

- *Mendez v. SSP America SMF, LLC,* before Judge Wood

- *Muniz v. Sutter Valley Hospitals* before Judge Perkins

- *Orosz v. Briarwood Post Acute, LLC,* (Representative Action) before Judge Earl

**Superior Court for the County of San Bernardino**:

- *Christensen v. Heartland Express, Inc.,* before Judge Cohn

- *Fosse v. Heartland Express, Inc. of Iowa* before Judge Cohn

- *Sala v. Personnel Staffing Group, LLC,* before Judge Cohn

- *Sala v. Radial South, L.P.,* before Judge McCarville

- *Salazar v. Pods Enterprises, LLC,* before Judge Cohn

**Superior Court for the County of San Diego**

- *Andrew v. Coronado Brewing Company, Inc.*, before Judge Trapp

- *Baker v. Select Comfort Retail Corporation dba Sleep Number* before Wohlfeil

- *Basile v. Aaron Brothers, Inc.*, before Judge Styn

- *Berry v. Sizzling Platter LLC* before Judge Frazier

- *Broadbent v. GHC of National City I, LLC,* before Judge Pollack

- *Broadnax v. Amazing Courier Express Services, LLC,*  before Judge Strauss

- *Camarena v. PAL General Engineering, Inc.*, before Judge Whitney

- *Carson v. Downtown San Diego Partnership Clean and Safe* before Judge Bacal



- *Dew v. Minegar Contracting, Inc.,* (Representative Action) before Judge Sturgeon

- *Edwards v. Xtermite, Inc.*, before Judge Strauss

- *Garceran v. Café Topes, Inc.,* before Judge Frazier

- *Gonzalez-Corona v. Coronado Yacht Club* before Judge Strauss

- *Headley v. Professional Maintenance Systems, Inc.*, before Judge Frazier

- *Humberto Gonzalez-Corona v. Coronado Yacht Club* (Representative Action) before Judge Strauss

- *Juliao v. Uniluv Marketing, Inc.,* (Representative Action) before Judge Wohlfeil

- *Maasrani v. International Hotel Associates No. 11 LLC* before Judge Sturgeon

- *McCray v. Wireless World LLC dba Experts Choice* (Representative Action) before Judge Frazier

- *Moreno v. Home Plate a Cafe Company* before Judge Frazier

- *Moreno v. Providence Group Inc.* before Judge Frazier

- *Nathan v. OS Restaurant Services, LLC,* before Judge Styn

- *Parvizi v. Classic Residence Management LP dba VI* before Judge Wohlfeil

- *Pham v. George's at the Cove, Inc. dba George's at the Cove #4032* before Judge Bacal

- *Pina v. Paradise Wings Enterprise* before Judge Taylor

- *Ramirez v. Automobile Club of Southern California* before Judge Taylor

- *Rivera v. WNT, Inc.,* before Judge Sturgeon

- *Sanchez v. Evans Tire and Service Centers, Inc.,* before Judge Sturgeon

- *Spriggs v. Ortiz Corporation* before Judge Styn

- *Struc Steel, Inc.*, before Judge Wohfeil

- *Waines v. Peopleready, Inc.,* (Representative Action) before Judge Whitney

- *Zamorano v. Piperin Corporation* before Judge Pollack



**Superior Court for the County of San Francisco**:

- *Alawamleh v. Ian Motos dba Baiano Pizzeria Hayes Valley* before Judge Massullo

**Superior Court for the County of San Luis Obispo**:

- *Hernandez v. All Ways Clean* (Representative Action) before Judge Coates

**Superior Court for the County of Santa Clara**:

- *Furlough v. Capstone Logistics, LLC,* before Judge Kuhnle

- *Jordan v. Arriaga & Associates, Inc.,* before Judge Lucas

**Superior Court for the County of Solano**

- *Apodaca v. Randstad US, LLC,* before Judge Getty

- *Maria v. Gourmet Demonstration Services, Inc.*, before Judge Getty

- *Roberson v. Ghiringhelli Specialty Foods, Inc.,* (Representative Action) before Judge Getty

- *Rough v. Costco Wholesale Corporation* (Representative Action) before Judge Carringer