GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Nathan Reese (SBN 283150)
nreese@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff
CARTER POOL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER POOL, in a representative capacity, and on behalf of all similarly situated and aggrieved current and former employees of DEFENDANTS in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>AMERIPARK, LLC, a Georgia Limited Liability Company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:19-cv-01103-LAB-WVG<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date: July 26, 2021<br>Time: 11:30 a.m.<br>Courtroom: 14A<br>Judge: Hon. Larry A. Burns<br><br>Complaint Filed: May 6, 2019<br>Removal Date: June 12, 2019 |

I, Graham S.P. Hollis, declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California. I am a shareholder of the law firm GrahamHollis, APC in San Diego, California. Co-shareholder Vilmarie Cordero, associate Nathan Reese, and I are the primary attorneys from my firm handling this case, and are attorneys of record for Plaintiff Carter Pool

("Plaintiff"). I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein. If called as a witness, I could and would competently testify to the information set forth below.

2. I provide this declaration in support of Plaintiff Carter Pool's Motion for Approval of Attorney's Fees and Costs and Class Representative Service Award. I previously submitted a declaration in support of Plaintiff Carter Pool's Motion for Preliminary Approval of Class Action Settlement on February 10, 2021 (ECF Doc. No. 34-2). In the interest of efficiency and judicial economy, I will not repeat the information provided in that declaration and instead incorporate that information by reference here.

### I. DISTRIBUTION OF NOTICE AND CLASS RESPONSE TO DATE

3. On March 22, 2021, the Court granted preliminary approval of the Parties' proposed Settlement Agreement. (ECF Doc. No. 38.) In that order, the Court provisionally certified the Settlement Class; granted preliminary approval of the Settlement; appointed Plaintiff's Counsel as Class Counsel; appointed Plaintiff Carter Pool as Class Representative; approved the Class Notice and Notice Plan; appointed a settlement administrator; and set a final approval hearing.

4. I was informed by the Court-approved Settlement Administrator, ILYM Group, Inc., that the Court-approved Class Notice was mailed to all 1,024 Class Members on April 19, 2021. The Notice informed the Class about the Settlement terms, including the total amount of the settlement and that portions of the payments would be allocated to a class service award ($5,000.00), Labor Code §1102.5 award ($5,000.00), attorneys' fees ($583,333.33), and costs (up to $15,000.00).

5. It has now been over six weeks since the Class Notice was mailed, and I am informed that no Class Members have objected to the Settlement, the proposed attorneys' fees and costs, the class representative service award, or the Labor Code §1102.5 award. Further, no Class Members have requested exclusion from the Settlement. The deadline to object or request exclusion from the Settlement is June 18, 2021.

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

6. I am further informed that there are a reported 135,623 shifts worked by Class Members during the time period covered by this Settlement. Based on the estimated Net Settlement Fund, which is estimated to be approximately $1,060,041.67, Class Members will receive $7.82 per covered shift.

7. In my prior declaration in support of preliminary approval, attached hereto as **Exhibit A** (excluding exhibits), I described in detail the procedural history of this lawsuit and, in order to avoid unnecessary repetition, hereby incorporate that information by explicit reference.

8. My firm has been actively involved in every aspect of the litigation in this case from its initial investigation and filing through settlement and preliminary approval. A non-exhaustive list of the key tasks performed by my law firm include: (1) conducting pre-suit factual and legal investigation; (2) evaluating our client's class and Private Attorneys General Act ("PAGA") claims and providing advice and counsel to him about said claims; (3) drafting and sending the PAGA notice letter to the California Labor and Workforce Development Agency ("LWDA") and Defendant; (4) drafting the original Complaint entitled *Carter Pool v. Ameripark, LLC* and filing it in San Diego Superior Court on May 6, 2019; (5) filing a first amended complaint on May 15, 2019; (6) investigating additional facts and evidence and filing a second amended complaint on October 29, 2020; (7) preparing a discovery plan, meeting with counsel for Defendant pursuant to Federal Rules of Civil Procedure 26(f), and preparing a report related to said matters; (8) propounding written discovery, including Requests for Production of Documents and Interrogatories on Defendant Ameripark, LLC; (9) interviewing dozens of class members and aggrieved employees about their employment with Defendants; (10) reviewing and analyzing extensive documents produced by Defendants; (11) preparing a motion to remand the action to state court; (12) preparing detailed mediation briefs and damages analyses for a mediation; (13) attending a mediation session; (14) negotiating and finalizing the Settlement terms, including a memorandum of agreement followed by a long

form settlement agreement; (15) preparing and filing Plaintiff Carter Pool's motion for preliminary approval and supporting papers; (16) preparing and negotiating the terms of the Class Notice with Defendant's counsel; (17) monitoring distribution of the Class Notice to Class Members; and (18) responding to numerous Class Member inquiries regarding the terms of the Settlement following the mailing of the Class Notice. Class Counsel will also have to draft and file a Motion for Final Approval of the Class Action Settlement, attend the Final Fairness hearing, and resolve any settlement administration matters.

## II.  NON-ECONOMIC SETTLEMENT VALUE

9. Although the Settlement Agreement provides for a Maximum Settlement Amount of $1,750,000, said amount does not take into account the total value of the benefit conferred to Class Members under the settlement. This is because, in addition to the monetary payout, Defendant agreed to change two of its policies, including a policy to provide Class Members with a stool for seating at each valet stand as well as a revision to Defendant's written policies stating that it will provide a one-hour premium for missed rest periods. See the Parties' Stipulation of Class Action and PAGA Representative Action Settlement Agreement ("Settlement Agreement" or "SA"), ECF Doc. No. 34-2, Ex. 1 at §5.3. These policy changes add significant value in addition to the monetary portion of the Settlement, because, I believe, they greatly increase the likelihood that employees will receive proper rest breaks and suitable seating as well as receive future payments for rest period premiums when required. Memorializing this relief in an enforceable Settlement Agreement was a great accomplishment and significantly increased the non-monetary value of the settlement.

10. Using conservative assumptions, Plaintiff contends the actual value of these non-monetary policy changes is $1,939,367. This amount is comprised of an estimate of the payment of future rest period premiums and the value derived for the provision of suitable seating over the next five years.

11. <u>Value of Rest Period Premium</u>. Using the information and documents

3

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD

exchanged during the course of the litigation, my firm determined that during the Class Period there was an average of 145 Class Members working for Defendant at any given time. If Plaintiff assumes that each Class Member will receive five rest period premiums each year for the next five years, the total value of the rest period premiums is equivalent to $54,367. I have determined this amount by multiplying the average number of employees at any given time (145) by the number of years (5) multiplied by the number of rest period premiums paid per Class Member per year (5) multiplied by the estimated average rate of pay over the next five years as wages increase ($15).

12. <u>Value of Suitable Seating Claims</u>. Although it is difficult to determine the exact money value of the benefit conferred by Defendant's creation of a seating policy, the state has provided guidance as to how it values this claim under the Private Attorneys General Act ("PAGA"), which sets the civil penalty at one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. Labor Code §1198, subd. (f). If Plaintiff assumes that each Class Member will receive one penalty for each pay period for the next five years using the penalty assessed for the first violation, the total value of the suitable seating claims is equivalent to $1,885,000. I have determined this amount by multiplying the average number of employees at any given time (145) by the number of years (5) multiplied by the number of pay periods per year (26) multiplied by the amount of the penalty per pay period for the first violation ($100).

13. As a result of the value of the non-monetary benefit conferred to Class Members, the Court should consider both the Maximum Settlement Amount ($1,750,000) as well as the value conferred by the non-monetary aspect of the settlement ($1,939,367), which show that a conversative estimate of the actual value conferred by the settlement is **$3,689,367**.

/ / /

/ / /

4
DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD

### III. **PLAINTIFF'S REQUESTED ATTORNEYS' FEES AND COST AWARDS ARE REASONABLE AND SHOULD BE APPROVED**

14. Plaintiff seeks an award of $583,333.33 in attorneys' fees, which amounts to one-third of the common fund of $1,750,000.00 created by the Parties' fixed, non-reversionary Settlement or less than 16% of the total value of the benefit conferred by the Settlement ($3,689,367, as previously described). I believe that, under the circumstances, Class Counsel's requested amounts for attorney's fees and costs are appropriate, fall squarely within the range of reasonableness, and should be approved by the Court.

15. An award of attorney's fees as a percentage of the common fund is appropriate here because equity dictates that those Class Members who benefit from this Settlement should contribute a pro-rata share toward the payment of attorneys' fees that brought about the Settlement. It is also important that competent counsel are incentivized to bring complex contingency cases, such as this, by attorneys' fees that are commensurate with the fees they would have received had they negotiated a fee arrangement with the Class ex ante. Here, Class Counsel and Plaintiff agreed to a one-third attorneys' fee award as part of their retainer, which is typical to attract competent counsel for contingency, wage and hour representation, and the requested one-third fee award constitutes a fair market charge to the Class for the benefits conferred by the Settlement.

16. The requested fee award is fair and reasonable when compared against the benefits conferred to the Class and the risks incurred by Class Counsel. Plaintiff's theory of liability presented significant challenges and risks given the numerous and viable defenses asserted by Defendant. As described in greater detail in my previous declaration offered in support of preliminary approval and incorporated here by reference, Class Counsel expended substantial efforts in prosecuting this action despite the rigorous defense established by Defendant. See Exhibit A at ¶¶41-52. Although Plaintiff believes that the class claims against Ameripark, LLC ("Ameripark") are meritorious and that class certification is appropriate as to all of the claims alleged in the litigation against Ameripark,

Plaintiff acknowledges that he faces a significant battle in maintaining certification. As a result, there was a very real possibility that Class Members would recover nothing. Plaintiff also understands that it is difficult to prove cases of off-the-clock work because there are no time records showing the off-the-clock work. Further, the damages would have to be calculated based on Class Members' testimony or other alternative methods of common proof. Plaintiff would also bear the additional burden of disproving time records. Plaintiff would also need to prove his contention that Defendant did not provide adequate coverage to allow Class Members with compliant, off-duty meal and rest breaks. As such, Plaintiff would face challenges obtaining recovery on the derivative claims.

17. Despite these hurdles, Class Counsel was able to effectively demonstrate that Plaintiff would likely succeed in seeking class certification, overcome difficulties in proof as to monetary relief, and ultimately prevail at trial. The excellent result of this Settlement was, therefore, due to the commitment and skill of Class Counsel, and an award of one-third of the common fund (and approximately 16% of the value conferred by the Settlement) represents fair compensation for Class Counsel's significant efforts and high quality of work completed. Moreover, as set forth above, no objections to the Settlement have been received by the Settlement Administrator or Counsel for the Parties, and this positive reaction supports the reasonableness of the requested fee award.

18. It is unlikely that Class Members would obtain such awards on an individual basis. Individuals would face significant economic risk in pursuing claims which have the difficulties of proof as described above. Moreover, Plaintiff's suitable seating claim is an Industrial Welfare Commission Wage Order technical violation not likely to be pursued by an individual employee.

19. The reasonableness of the requested fee award is further supported by the lodestar crosscheck method, which compares the requested common fund percentage fee with Class Counsel's lodestar, which is the product of their hourly rates multiplied by their hours incurred in litigating and settling this case.

20. After exercising billing judgment, my law firm's current lodestar is $353,113.50. This lodestar amount also includes an estimate of hours of attorney time that will be spent preparing Plaintiff's motion for final approval, preparing for and attending the hearing on final approval on July 26, 2021, responding to class member questions, and assisting with the administration of the settlement. I estimate that this case will require a minimum of approximately 24.5 hours of additional work by attorneys at my firm, which includes an estimated 17.5 hours for preparing the motion for final approval, 2 hours for preparing for and attending the motion for final approval, and 5 hours for assisting with settlement administration. All of these tasks directly benefit the Class and thus the time spent performing these tasks is recoverable. In addition, while Class Counsel expects the lack of objections to continue through the close of the Notice period, Class Counsel also recognizes that they may be required to expend additional work beyond the tasks identified above should any objectors come forward.

21. My firm managed the case efficiently by assigning work according to the expertise and experience of the attorneys and other staff, thereby minimizing duplication of efforts. I assigned initial drafting projects, such as the Complaint, to associates with editing to myself. The time-intensive process of developing the factual record and reviewing the documents was performed almost exclusively by associates and paralegals.

22. The reasonableness of the requested fee award is also reinforced by my firm's timekeeping methods. All attorneys and legal staff at my firm are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. In all instances, the time keeper indicates the date and amount of time spent on a task in one-tenth of an hour increments, describes the work that was performed during the indicated time period, and identifies the case to which the time should be charged. If the Court finds it appropriate to review the complete billing report, a copy will be made available upon request. After exercising discretion in reducing some billed hours, the following summarizes the hours spent by the respective time keeper using my firm's 2021 rates:

7

DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD

| Timekeeper | Years | Hours | Billable Rate | Lodestar |
|---|---|---|---|---|
| Graham Hollis, Shareholder | 36 | 70.3 | $850 | $59,755 |
| Nathan Reese, Associate | 9 | 293.8 | $600 | $176,280 |
| Ridgeway Woulfe, Associate | 5 | 19.1 | $475 | $9,072.50 |
| Alex Kuner, Associate | 3 | 32 | $375 | $12,000 |
| Senior Paralegals | 6+ | 175 | $270 | $47,250 |
| Paralegals | - | 94.8 | $245 | $23,226 |
| Case Managers | - | 2.5 | $185 | $462.50 |
| Law Clerks | - | 135.5 | $185 | $25,067.50 |
| **Total** | - | 823.6 | - | $353,113.50 |

23. In setting these hourly rates, I consulted with attorneys with reputations, experience, and law practices similar to that of my firm. I believe that these rates are reasonable for attorneys of our experience, reputation, and expertise and are consistent with the prevailing market rates for attorneys and paralegals of comparable levels of experience and reputation from San Diego area law firms that practice complex wage and hour litigation.

24. My firm has decades of experience in prosecuting complex class actions - in particular class actions for violations of state and federal wage and hour laws - and has achieved settlements amounting to hundreds of millions of dollars on behalf of class members, has been lead or co-lead counsel in hundreds of class action and PAGA cases in California and throughout the United States, and was counsel of record in over thirty reported appellate cases. Thus, this factor supports the requested attorneys' fees.

25. As described in my declaration in support of for Preliminary Approval of Class Acton Settlement, my law firm has been appointed as class counsel and received

1. similar awards of attorney's fees in over one hundred other cases in the federal and state courts of California. A complete copy of that list is attached hereto as **Exhibit B**.

26. In my experience, the amount that Class Counsel is requesting here is far less than the range of multipliers awarded to attorneys in similar cases. Indeed, comparing my firm's current lodestar alone to the total requested $583,333.33 attorney's fee award yields a modest multiplier of 1.66, which is well within the range of multipliers applied in similar cases.

27. Class Counsel further asks the Court to approve a payment of $12,288.03 in reasonable litigation costs. Having undertaken this action on a contingency basis, my firm has had to turn down potentially profitable cases and work, and defer efforts in other cases, in order to prosecute this action to conclusion. Notably, this case will have been litigated for well over two years before Class Counsel sees any payment for its work performed or costs advanced. To date, my firm has advanced $12,288.03 in out-of-pocket costs in order to prosecute this case with absolutely no guarantee that any of these expenses would ever be recouped or reimbursed. These costs and expenses identified in my firms' costs summary are reflected in the accounting books and records that my law firm maintains in the ordinary course of business and are prepared from expense records, credit card receipts and statements, and check records. All costs incurred were necessary to the prosecution of this action and are routinely reimbursed litigation costs that are typically charged to fee-paying clients, including: filing fees; copying; delivery; postage; computerized legal research charges; telephone charges; travel to mediations and court appearances; and the cost of the mediator. The costs to date are summarized as follows:

| Attorney Service | $246.25 |
| --- | --- |
| DocuSign | $110.00 |
| Filing/Court Fees | $1,562.75 |
| Mediation | $6,470.64 |

| Online Research | $2,431.95 |
| --- | --- |
| Photocopies/Scanning | $189.94 |
| Postage | $41.10 |
| Telephone | $1,235.40 |
| **TOTAL** | $12,288.03 |

28. I have reviewed the billing and expenses described above and certify to the Court that these records accurately reflect work reasonably and necessarily performed and expenses reasonably incurred in connection with the litigation of this matter.

29. I expect my firm may incur additional costs preparing for and filing the final approval motion on July 26, 2021. Class Counsel will submit a declaration at the time of filing the motion for final approval that will detail any additional time Class Counsel spent working on the motion for final approval as well as any additional costs incurred in preparing and filing the final approval motion.

30. The requested class representative service award of $5,000.00 for Plaintiff Carter Pool is reasonable and warranted in light of his time and effort spent on this case and the benefit his efforts conferred upon the Class. Plaintiff Carter Pool spent significant time assisting counsel with its investigation, meeting with Class Counsel in person, and conferring by telephone on a regular basis. In agreeing to serve as Class Representative, Plaintiff Carter Pool formally agreed to accept the responsibilities of representing the interests of all Class Members, not just his own. Plaintiff Carter Pool also assisted in preparing and evaluating the case for mediation, attended the mediation and provided valuable information, and evaluated and approved the proposed Settlement on behalf of the Settlement Class. Plaintiff Carter Pool also assumed the risk and potential negative notoriety resulting from suing his former employer. In addition, Plaintiff Carter Pool signed a general release as to all potential claims he may have against Defendant Ameripark, LLC,

an expansive release that is not required for other Class Members. Plaintiff Carter Pool had to sacrifice the pursuit of his own individual wage and hour claims against Defendant Ameripark, LLC, which likely would have been resolved much faster, in order to advocate for the claims of the Class. Finally, I am informed that no Class Members have objected to the proposed class representative service award of $5,000.00.

31. The requested Labor Code §1102.5 award of $5,000.00 for Plaintiff Carter Pool is also reasonable. This amount is derived from California Labor Code §1102.5, which provides for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section. Plaintiff is the only employee alleged in the Complaint to have suffered a violation of Labor Code §1102.5, and thus an allocation of $5,000.00 from the settlement is fair and reasonable.

32. The requested service award and Labor Code §1102.5 award are fair when compared to the payments approved in similar cases with which I am familiar. *See*, e.g., *Howell v. Advantage RN, LLC*, 2020 WL 5847565, at *5 (S.D.Cal., 2020) (approving the requested service award of $10,000); *Ceron de Orozco v. Flagship Facility Services, Inc.*, 2020 WL 7426139, at *8 (S.D.Cal., 2020) (finding the requested service award of $10,000 to each named Plaintiff to be reasonable); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *9 (S.D.Cal.,2010) (approving the class representative enhancement award in the amount of $25,000).

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 28th day of May 2021, at San Diego, California.

_____
Graham S.P. Hollis
Attorney for Plaintiff Carter Pool

11
DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD